UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

In re:

MOSHE ENBAR,                                          Case No. 16-21262-AJC
                                                     Chapter 7

_____Debtor._____/

MOSHE ENBAR, LINDA ENBAR,
ADAM ENBAR, and MELISSA BENZEL,

                Plaintiffs,
vs.                                                  Adversary No.:

FRED GOODSTEIN and
    MICHELE GOODSTEIN,

                Defendants.
_____/

**COMPLAINT FOR DECLARATORY JUDGMENT,
INJUNCTIVE RELIEF, AND DAMAGES**

MOSHE ENBAR, LINDA ENBAR, ADAM ENBAR, and MELISSA BENZEL

(hereinafter "Settling Parties") hereby sue Defendants, FRED GOODSTEIN and

MICHELE GOODSTEIN (collectively "Defendants"), and say:

**<u>JURISDICTION AND VENUE</u>**

1.    This Court has sole and exclusive subject-matter jurisdiction over this proceeding,

      pursuant to: U.S. Const. Art. I, § 8, cl. 4.; 28 U.S.C. §1334(a); 28 U.S.C. §157(a);

      11 U.S.C. §§ 105(a), 524, 541, 544, and 550, New York Debtor and Creditor Law,

-1-

§§ 276, *et seq.*; Local Rule 87.2 of the United States District Court for the

Southern District of Florida; the General Order of Reference entered July 11,

1984, by the United States District Court for the Southern District of Florida;

Federal Rule of Bankruptcy Procedure 7001; and paragraph 18 of the Order

Granting Trustee's Motion to Approve Stipulation to Compromise Controversy,

Dated September 20, 2017 [ECF 173][1].

2.     The subjects of this proceeding are core matters as prescribed in 28 U.S.C.

§157(b)(2)(A), (B), (F), (H), (N), and (O).

3.     The Settling Parties consent to entry of final orders or judgments by the

Bankruptcy Court.

## **PARTIES**

4.     Moshe Enbar (a/k/a Maurice Enbar, hereinafter "Mr. Enbar") is an individual

residing in Miami-Dade County, is the Debtor, and is *sui juris.*

5.     Linda Enbar is an individual residing in Miami-Dade County, is the spouse of Mr.

Enbar, and is *sui juris.*

6.     Adam Enbar is the son of Mr. Enbar and Linda Enbar, and is *sui juris.*

7.     Melissa Benzel is the daughter of Mr. Enbar and Linda Enbar, and is *sui juris.*

8.     Fred Goodstein is an individual residing in Palm Beach County, Florida, and is *sui*

---

[1] ECF "x" refers to the electronic court filing number in the captioned Main Case.

*juris.*

9.  Michele Goodstein is an individual residing in Palm Beach County, Florida, and is *sui juris.*

10. In the main case, a proof of claim was filed on behalf of Fred Goodstein and Michele Goodstein on December 22, 2016, as an unsecured claim ("Defendants' Claim") in the sum of $281,270.22, based upon a default money judgment dated January 15, 2013 ("Defendants' Judgment").

11. The Defendants' Claim was allowed under 11 U.S.C. § 502, and Defendants received a distribution from the estate.  [ECF 236, p. 4/10].

## THE BANKRUPTCY CASE

12. The case was commenced on August 16, 2016, by the filing of a voluntary petition [ECF 1] under Chapter 7 of Title 11, United States Code.

13. Robert A. Angueira was appointed as the interim trustee on August 16, 2016 [ECF 2], and became the Trustee upon conclusion of the meeting of creditors on September 15, 2016.[2]  [ECF 18].

14. The initial deadline for filing complaints related to Mr. Enbar's discharge was November 14, 2016.

15. Mr. Enbar agreed to twenty-one (21) extensions of time for interested parties to

---

[2] 11 U.S.C. § 702(d).

pursue objections to exemptions and/or discharge [ECF 28, 48, 53, 59, 68, 94, 101, 119, 122, 126, 129, 134, 141, 148, 154, 161, 170, 179,  186, 203, 219].

16.    Mr. Enbar was scheduled for several days of examinations pursuant to Bankruptcy Rule 2004, including examinations by the Trustee [ECF 29, 43, 83, 118, 120], creditor Steven Legum [ECF 51], creditor EAMA Capital, LLC [ECF 45, 85, 123, 138, 144, 176, 189], and Defendants [ECF 67, 175, 176, 187, 197].

17.    The first examinations pursuant to Bankruptcy Rule 2004 were scheduled for, and held on November 14, 2016, at 9:30 a.m. and 1:00 p.m.

18.    Six (6) calendar days before the first scheduled examination, with just three (3) business days intervening, counsel for Defendants cross-noticed the examination of Mr. Enbar by a forty-nine (49) page cross-notice, including three hundred and four (304) categories of documents. [ECF 67].

19.    This Court has found that the cross-notice was not duly served. [ECF 182].

20.    Linda Enbar's 2004 examination was taken by the Trustee on or about February 8, 2017, on notice to all interested parties, including Defendants.  [ECF 99].

21.    By Notice of Abandonment, dated October 12, 2017, the Trustee expressed an intention to abandon the estate's interest in Magnum Real Estate Services, Inc. ("MRES"), and the real property located at 210 174th Street, #1716, Sunny Isles Beach, FL  33160. [ECF 181].  There having been no objection to the proposed

abandonment, the estate's interest in the above-described property was abandoned to Mr. Enbar by operation of law on October 27, 2017.[3]

22. Mr. Enbar's general discharge was entered on May 15, 2018.  [ECF 233].

23. Upon entry of his discharge, Defendants' Judgment was voided insofar as such judgment was "a determination of the personal liability of the debtor with respect to any debt discharged under section 727..."[4]

24. Mr. Enbar's discharge invoked an injunction prohibiting Defendants from "the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor..."[5]

25. The last date on which the Trustee could have filed complaints to avoid fraudulent transfers or preferences was August 15, 2018.[6]

26. Six (6) claims were timely filed, including that of the Defendants, of which five (5) claims were allowed as general unsecured claims.  [ECF 192].

## THE LEGUM COMPLAINT

27. On January 10, 2017, creditor Steven G. Legum ("Legum"), Mr. Enbar's former

---

[3]  11 U.S.C. § 554, Bankruptcy Rule 6007(a), Local Rule 6007(B)(1).

[4] 11 U.S.C. § 524(a)(1).

[5] 11 U.S.C. § 524(a)(2).

[6]  11 U.S.C. §546(a)(1)(A).

attorney, filed a nine-count (9), thirty-eight (38) paragraph Complaint[7] ("Legum

Complaint"), seeking denial of discharge.  [ECF 81].

28.    The Trustee and the Defendants' counsel received the Legum Complaint

electronically. [Service "button" beside ECF 81].

29.    The Legum Complaint was dismissed, in part, with leave to amend.  [LECF 21].

30.    Legum filed an Amended Complaint ("Legum Amended Complaint") on April 10,

2017.  [LECF 23].

31.    In paragraph 12 of the Legum Amended Complaint, Legum alleged, "The debtor

during the operations of his businesses received approximately $10 million from

various sources."

32.    In paragraph 13 of the Legum Amended Complaint, Legum alleged, "On or about

October 25, 2007, defendant received, via a check made payable to 23-123rd

Street LLC the sum of $242,387.92."

33.    In paragraph 20 of the Legum Amended Complaint, Legum alleged, "On or about

May 19, 2007, defendant received, via a check made payable to 60 West 124th

Street LLC the sum of $2,200,000.00."

34.    In paragraph 27 of the Legum Amended Complaint, Legum alleged, "On or about

September 18, 2006, defendant received, via a check made payable to 50 East

---

[7] Adv. No.: 17-01010-AJC.  Court papers in Legum's adversary proceedings will
be referred to as [LECF x].

119th Street LLC the sum of $600,000.00."

35. In paragraph 34 of the Legum Amended Complaint, Legum alleged, "On or about December 3, 2007, defendant received, via a check made payable to Beach 116-23 LLC the sum of $440,997.59."

36. In paragraphs 15, 22, 29, and 36 of the Legum Amended Complaint, Legum alleged that Mr. Enbar, "retained and converted to his own use, all of the funds" received from the specified entities.

37. In paragraphs 41 and 42 of the Legum Amended Complaint, Legum alleged, "Defendant and his wife Linda Enbar were owners in fee of the property known as 345 Broadway, Lawrence, New York. On or about February 1, 2006, defendant and his wife mortgaged such premises and received the sum of $495,144.63."

38. In paragraph 43 of the Legum Amended Complaint, Legum alleged that Mr. Enbar, "retained and converted to his own use, all of the funds ... received."

39. After trial on December 6, 2017, the Legum Amended Complaint was dismissed. [LECF 93].

## GOODSTEIN COMPLAINT

40. Defendants benefitted from one agreed extension of time to file a complaint objecting to or seeking exception from discharge, such deadline having been extended by agreement through January 13, 2017. [ECF 68].

41.    While Defendants' motion for an additional extension was pending [ECF 79], Defendants filed a Complaint[8] ("Goodstein Complaint") seeking exception from discharge and objecting to discharge on January 13, 2017. [ECF 87, GECF 1].

42.    The Trustee received a copy of the Complaint electronically. [Service "button" beside ECF 87].

43.    The Goodstein Complaint included twelve (12) counts, in one hundred eighty-two (182) paragraphs, incorporating exhibits A through U, such exhibits comprising two hundred and seventy (270) pages, bringing the total length of the Goodstein Complaint to three hundred and two pages. [Adv ECF 1].

44.    According to the allegations of the Goodstein Complaint, paragraph twelve (12), the following judgments were entered against Mr. Enbar prior to August 16, 2016[9]:

a.    Steven G. Legum, entered on February 17, 2015, in the amount of $20,216;

b.    Grand Palm, N.Y., entered on May 21, 2014, in the amount of $402,051;

c.    City National Bank, entered on February 14, 2014, in the amount of $2,574,494;

---

[8] Adv. No.: 17-01018-AJC.  Court papers in Goodsteins' adversary proceedings will be referred to as [GECF x].

[9] GECF 1, Exhibit A to the Goodstein Complaint lists the pre-bankruptcy judgments.  It is also attached as Exhibit A hereto.

d.   EAMA Capital, entered on January 13, 2013, in the amount of $ 633,834;

e.   Fred Goodstein, entered on January 5, 2013, in the amount of $169,500;

f.   Steven G.  Legum, entered on December 11, 2012, in the amount of $14,291;

g.   Richard A. Legum, entered on June 13, 2011, in the amount of $300,000;

h.   Marcus and Millichap, entered on June 12, 2012, in the amount of $123,716;

i.   City National Bank, entered on April 13, 2011, in the amount of $2,757,123; and

j.   Michael H. Markovitz, entered on December 30, 2009, in the amount of $11,161.

45.   In paragraph 15 of the Goodstein Complaint, Defendants alleged, "Moshe Enbar knew that the representations were false and that he was going to commingle the money loaned by Plaintiffs/Creditors with his own personal funds and/or the funds of other entities he owned and/or controlled and use the money for his own purposes unrelated to 2457 8th LLC."

46.   In paragraph 22 of the Goodstein Complaint, Defendants alleged, "On or about December 10, 2008, pursuant to the terms of the Promissory Note, Plaintiffs/Creditors issued a check in the amount of $150,000.00 payable to 2457

8th LLC."

47.  In paragraph 26 of the Goodstein Complaint, Defendants alleged, "On or about December 12, 2008, two days after Plaintiffs/Creditors' check was issued, Moshe Enbar and Linda Enbar opened a bank account for 2457 8th LLC, as the sole cosignatories, for the sole purpose of processing Plaintiffs/Creditors' check for $150,000.00."

48.  In paragraph 26 of the Goodstein Complaint, Defendants alleged, "On or about December 19, 2008, Moshe Enbar and Linda Enbar transferred $145,000.00 from 2457 8th LLC's bank account into the bank account of Flatiron Equities, LLC, which is owned and operated by its members Moshe Enbar and his son, Adam Enbar."

49.  In paragraph 28 of the Goodstein Complaint, Defendants alleged, "On or about December 22, 2008, Moshe Enbar and/or Adam Enbar transferred $135,000.00 from the bank account of Flatiron Equities, LLC into the bank account of 23-123rd Street LLC, a company owned and operated by Moshe Enbar."

50.  In paragraph 29 of the Goodstein Complaint, Defendants alleged, "On or about December 22, 2008, Moshe Enbar transferred $135,000.00 from the bank account of 23-123rd Street LLC into the bank account of Moshe Enbar and Linda Enbar's personal joint bank account."

51.     In paragraph 30 of the Goodstein Complaint, Defendants alleged, "On or about December 23-24, 2008, $135,000.00 was transferred from the bank account of Moshe Enbar and Linda Enbar in a series of transactions, and deposited into the account of MRES, which is also owned and operated by Moshe Enbar."

52.     In paragraph 31 of the Goodstein Complaint, Defendants alleged, "All of the above transfers were made without adequate consideration."

53.     In paragraph 34 of the Goodstein Complaint, Defendants alleged, "Instead of having 2457 8th LLC repay the loan, Moshe Enbar used the funds belonging to 2457 8th LLC for his own personal purposes unrelated to 2457 8th LLC or the Property."

54.     In paragraph 35 of the Goodstein Complaint, Defendants alleged, "Upon information and belief, Moshe Enbar thereafter used the money, which Plaintiffs/Creditors had loaned to 2457 8th LLC, for his own purposes unrelated to 2457 8th LLC."

55.     In paragraph 37 of the Goodstein Complaint, Defendants alleged, "Moshe Enbar has engaged in a series of transactions to render himself insolvent and unable to pay Plaintiffs/Creditors pursuant to the terms of the Promissory Note."

56.     In paragraph 40 of the Goodstein Complaint, Defendants alleged, "Moshe Enbar breached his fiduciary duty to Plaintiffs/Creditors by diverting the funds belonging

to 2457 8th LLC for his own personal use and/or the use of other entities that he

owned and controlled, including the money Plaintiffs/Creditors loaned to 2457 8th

LLC."

57.    In paragraph 41 of the Goodstein Complaint, Defendants alleged, "Moshe Enbar

did not inform Plaintiffs/Creditors that he was using 2457 8th LLC's funds for

purposes unrelated to the business of 2457 8th LLC nor did Plaintiffs/Creditors

consent to such use."

58.    In paragraph 42 of the Goodstein Complaint, Defendants alleged, "Upon

information and belief, Moshe Enbar spent the funds belonging to 2457 8th LLC

for himself and his accomplices, and/or for his and his accomplices' purposes

relating to other entities owned or controlled by him rather than for the supposed

purposes of 2457 8th LLC."

59.    In paragraph 48 of the Goodstein Complaint, Defendants alleged,

Plaintiffs/Creditors attempted to recover the monies rightfully due them
under the Promissory Note, including commencing a lawsuit in Nassau
County against Moshe Enbar entitled *Fred Goodstein and Michele
Goodstein v. Moshe Enbar a/k/a Moshe Enbar, Flatiron Equities LLC and
Magnum Real Estate Services, Inc.*, bearing Index No.: 16224/2011 (the
"Enbar Action" discussed *infra*) on or about November 16, 2011.

60.    In paragraph 49 of the Goodstein Complaint, Defendants alleged,

The Complaint filed in the Enbar Action alleged: (i) corporate veil piercing
against Moshe Enbar in relation to his activities with 2457 8th LLC, (ii)
corporate veil piercing against Moshe Enbar in relation to his activities with

Flatiron and Magnum; (iii) breach of fiduciary duty against Moshe Enbar for his failures as managing member of 2457 8th LLC; (iv) fraud by Moshe Enbar for both the statements of Steven Kamhi made on Moshe Enbar's behalf and for Moshe Enbar's knowing failure to inform Plaintiffs/Creditors of the true situation regarding the property; (v) civil conspiracy to commit fraud against Moshe Enbar; (vi) unjust enrichment; and (vii) accounting. *See id*.

61. In paragraph 58 of the Goodstein Complaint, Defendants alleged, "Thereafter, Moshe Enbar has engaged in a series of transactions and conveyances that were made with the intent presumed in law to hinder, delay or defraud Plaintiffs/Creditors at present and in the future and prevent them from recovering the monies rightfully due and owing to them."

62. In paragraph 83 of the Goodstein Complaint, Defendants alleged, "At all relevant times hereto, Moshe Enbar, in his respective capacities as managing member of 2457 8th LLC, had direction over and/or control of the money received by 2457 8th LLC from Plaintiffs/Creditors."

63. In paragraph 84 of the Goodstein Complaint, Defendants alleged, "Moshe Enbar, knowingly and intentionally, and in bad faith, retained and/or used the funds which were supposed to be paid to Plaintiffs/Creditors for his own personal use and benefit and for purposes other than to pay Plaintiffs/Creditors."

64. In paragraph 112, 124, and 134 of the Goodstein Complaint, Defendants alleged, "Moshe Enbar fraudulently retained and/or used the monies in the limited liability

company for his own personal use and benefit and/or used those funds for purposes other than to repay Plaintiffs/Creditors..."

65. In paragraph 180 of the Goodstein Complaint, Defendants alleged, "Defendant/Debtor has not explained or accounted for funds received by him and why such sums are not listed on his schedules."

66. In paragraph 181 of the Goodstein Complaint, Defendants alleged, "Defendant/Defendant [sic] has hidden and secreted funds including utilizing his wife, Linda Enbar, fraudulently in order to conceal commissions he received from the real estate brokerage and Defendant/Debtor failed to provide an accounting of and/or to otherwise explain the claimed loss and deficiency in assets to meet liabilities."

67. Counts VIII, IX, X, XI, and XII of the Goodstein Complaint were dismissed by Order entered on March 6, 2018.  [GECF 62].

68. Judgment was entered for Mr. Enbar on Count VII, assuring the issuance of this general discharge, and Counts I, II, III, and IV of the Goodstein Complaint were dismissed by Judgment/Order entered on May 8, 2018.  [GECF 75].

69. As of this date, the only remaining Counts of the Goodstein Complaint are Counts V and VI, seeking exception from discharge.

70. As of this date, the Defendants do not hold a debt excepted from discharge.

71.    Attached to the Goodstein Complaint as Exhibit K is the Verified Complaint in the

Nassau Court (defined below), which is also attached as Exhibit B hereto.

## THE SETTLEMENT

72.    On August 7, 2017, the Trustee filed his Motion to Approve Stipulation to

Compromise Controversy ("Motion to Compromise") [ECF 150], in which the

Trustee stated as follows.

> 7. The Trustee has investigated, among other things, the
> propriety of the Debtor's claimed exemptions, the Debtor's
> financial condition, and the Debtor's business transactions.
> 8. The Trustee has found no evidence that the Debtor has
> transferred, removed, destroyed, mutilated, or concealed, or
> permitted to be transferred, removed, destroyed, mutilated, or
> concealed property of the debtor, within one year before the
> date of the filing of the petition.
> 9. The Trustee has not found evidence that the Debtor has in or
> in connection with the case made a false oath or account.
> 10. The Trustee has not found evidence that the Debtor has
> withheld from the Trustee any recorded information, including
> books, documents, records, and papers, relating to the debtor's
> property or financial affairs.
> 11. The Debtor has not failed to explain satisfactorily any loss
> of assets or deficiency of assets to meet the Debtor's liabilities.
> 12. The Trustee has: investigated transactions related to- 210
> 17 4 St., # 1716 Sunny Isles Beach, FL 33160, 345 Broadway
> Lawrence, NY 11559, and 19355 Turnberry Way #26A
> Aventura, FL 33180; investigated any transactions regarding
> the following trusts, which may or may not exist- Lawrence
> Enbar Trust, Linda Enbar Asset Trust, Adam Enbar Trust,
> Melissa Benzel Trust; evaluated the Debtor's listed Household
> Goods and Furnishings, Electronics, Jewelry, Magnum Real
> Estate Services, Inc.; investigated the following entities-
> Magnum Realty Holdings LLC, Lawrence Moving and

> Storage, Inc., and 164 West 146 Street LLC, Enbar Investments
> LLC; and generally investigated the Debtor's financial
> condition and business transactions.

73. In his Motion to Compromise, the Trustee sought approval to accept a payment of $15,000 to confirm, *inter alia*, that "the Settling Parties shall be released of any and all causes of action vested in the estate by operation of State or federal law...."

74. The Settling Parties referred to in the Motion to Compromise are: Moshe Enbar, Linda Enbar, Adam Enbar, and Melissa Benzel, the very same Plaintiffs herein, also referred to as the Settling Parties herein.

75. On August 29, 2017, Defendants' counsel filed a Response to Trustee's Motion to Continue/Reschedule Hearing on Trustee's Unopposed Motion to Approve Stipulation to Compromise Controversy in which they acknowledged receipt of the Motion to Compromise, but raised no objection to the terms or conditions of the proposed stipulation.  [ECF 165, at paragraph 15].

76. On September 19, 2017, the Court heard the Trustee's Motion to Approve Stipulation to Compromise Controversy [ECF 150], and approved the Motion and Stipulation by its Order Granting Trustee's Motion to Approve Stipulation to Compromise Controversy of September 20, 2017, entered on the docket on September 21, 2017 ("Order Approving Stipulation").  [ECF 173].

77. The Order Approving Stipulation included the following provisions-

a.   "4. Upon payment of the sum of $15,000: a. the Settling Parties shall be released of any and all causes of action vested in the estate by operation of State or federal law..."

b.   "10. The Stipulation shall be binding only upon and inure to the benefit of the Parties hereto and their respective successors and assigns. However, the Stipulation shall not be binding on any creditors, or otherwise affect the rights of any creditors, of the Estate."

c.   "18. The Bankruptcy Court shall retain sole and exclusive personal and subject matter jurisdiction over the Parties and the subject matter, interpretation, effectuation, and enforcement of the terms of the Stipulation.

78.   As of September 21, 2017:

a.   The Goodstein Complaint was pending;

b.   The Legum Complaint was pending; and

c.   Creditor EAMA Capital, LLC had an extension of time to file a complaint seeking exception from discharge, or objecting to discharge, through October 28, 2017.  [ECF 161]. EAMA Capital, LLC subsequently obtained extensions of time to file a complaint seeking exception from discharge, or objecting to discharge, through April 30, 2018. [ECF 186, 203, 219].

79.   The Order Approving Stipulation became final and non-appealable on October 6,

2017.

80. By a Report filed on November 9, 2017, the Trustee acknowledged receipt of the sum of $15,000 in full satisfaction of the obligations of the Settling Parties under the approved stipulation.  [ECF194].

## THE NEW YORK LITIGATION

81. On November 16, 2011, the Defendants filed a Verified  Complaint in The Supreme Court of the State of New York, Nassau County ("Nassau Court") and were awarded money judgments by default against, *inter alia*, the Debtor.  A copy of the Verified Complaint is attached as Exhibit B.

82. After having obtained their default money judgment against the Debtor, the Defendants sued in the Nassau Court, *inter alia*, Linda Enbar and Adam Enbar to recover allegedly fraudulent transfers from the Debtor, and for alleged conversion of Defendants' funds.

83. The Nassau Court dismissed the suit as to Linda Enbar, Adam Enbar, and others by order of April 19, 2016, a copy of which is attached as Exhibit C hereto.

84. On August 4, 2016, the Defendants filed suit in The Supreme Court of the State of New York, New York County ("NY Court") seeking to recover alleged fraudulent transfers rooted in transfers allegedly made by the Debtor to his wife, Linda Enbar, his son, Adam Enbar, and to the entities Magnum Realty Holding, LLC and

Magnum Real Estate Services, LLC.

85.    In the NY Court, the Defendants have now added Mr. Enbar's daughter, Melissa

Benzel, as a defendant under a theory of fraudulent conveyance. All of the alleged

transfers which are the bases for the Defendants' fraudulent conveyance avoidance

actions occurred before August 16, 2016.  See Decision + Order on Motion,

attached hereto as Exhibit D.

86.    Settling Parties have hired counsel to defend them in the NY Court, and have

incurred, and continue to incur attorneys' fees and costs.

**COUNT I**
**<u>DECLARATORY JUDGMENT</u>**

Settling Parties incorporate into this Count I, preceding paragraphs 1 - 13, 23 - 28,

39, 41, 42, 44, 67, 68, and 70 - 85.

87.    Upon commencement of this case, an estate was created which included all assets

created or preserved by the Bankruptcy Code, including, but not limited to, all

causes of action and remedies described in, or incorporated by reference in 11

U.S.C. §§ 544, 547, 548, 549, 550, 551, and 558.

88.    Pursuant to 11 U.S.C. § 544, the Trustee, Robert Angueira, succeeded to "the

rights and powers of ... a creditor holding an unsecured claim that is allowable

under section 502 of" Title 11 of the United States Code.

89.    The Trustee, Robert Angueira  had, "as of the commencement of the case, and

-19-

without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by" the Defendants, or any of the judgment creditors listed on Exhibit A hereto, or any of the five (5) allowed unsecured creditors.

90.   Upon finality of the Order Approving Stipulation, on October 6, 2017, the Settling Parties were released of any and all causes of action vested in the estate by operation of State or federal law, including, but not limited to, New York Debtor and Creditor Law, §§ 276, *et seq.*

WHEREFORE, the Settling Parties respectfully request the Court enter a Judgment determining that:

1.   This Court has retained exclusive jurisdiction to interpret, effectuate, and enforce the terms of the Stipulation;

2.   The portion of the Order Approving Stipulation which provided, "the Stipulation shall not be binding on any creditors, or otherwise affect the rights of any creditors, of the Estate" was solely intended to avoid any issue-preclusive impact upon the pending Legum Complaint, the pending Goodstein Complaint, as well as any potential complaint which might have been pursued by EAMA Capital, LLC.;

3.   Defendants' judgments against Mr. Enbar are void;

4.      Defendants' continued attempt to collect on their claim against Mr. Enbar violates

the discharge injunction of 11 U.S.C. § 524(a)(2).

## COUNT II
## INJUNCTIVE RELIEF

Settling Parties incorporate into this Count II, preceding paragraphs 1 - 13, 22 -

24, 41 - 71, 79, 80, 84, 85, 87 - 90.

91.     The Order Approving Stipulation "released [the Settling Parties] of any and all

causes of action vested in the estate by operation of State or federal law",

including any pre-petition rights of Defendants to pursue collection of their claim.

92.     Defendants' continued attempt to collect on their claim against Mr. Enbar violates

the discharge injunction of 11 U.S.C. § 524(a)(2).

WHEREFORE, the Settling Parties respectfully request the Court enter a

permanent injunction prohibiting Defendants from continuing to attempt to collect on

their claim against Mr. Enbar, including, but not limited to, the pursuit of the Settling

Parties pursuant to New York Debtor and Creditor Law, §§ 276, *et seq.*, or any other

State or federal law.

## COUNT III
## DAMAGES

Settling Parties incorporate into this Count III, preceding paragraphs 1 - 13, 22 -

24, 72 - 77, 79, 80, 84 - 86, and 90-92.

93.    Settling Parties have been damaged by Defendants pursuit of collection of their

void judgment against Mr. Enbar by their attorneys fees and costs of defending

against the suit in the NY Court.

94.    Settling Parties have been further damaged by Defendants' refusal to desist and

discontinue the pursuit of collection of their void judgment against Mr. Enbar in

the NY Court, by the sum of attorneys fees and costs incurred in bringing this

action.

WHEREFORE, the Settling Parties respectfully request the Court enter a

Judgment in the amount of their attorneys fees and costs incurred in the NY Court and

this Court.

Dated: January 28, 2020                    Respectfully submitted,

**FLORIDA BANKRUPTCY GROUP, LLC**
Attorneys for Settling Parties
4121 N. 31st Avenue
Hollywood, FL 33021-2011
T: 954-966-6544/F: 954-252-2540

By: _s/ Kevin C Gleason_
Fla Bar No 369500
BankruptcyLawyer@aol.com (Direct Email)
KGPAECMF@gmail.com (Service Email)