UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

In re:

MOSHE ENBAR,

         Debtor.

CASE NO: 16-21262-AJC
Chapter 7

_____/

MOSHE ENBAR, LINDA ENBAR,
ADAM ENBAR, and MELISSA BENZEL,

         Plaintiffs,

vs.

Adversary No.: 20-01028-AJC

FRED GOODSTEIN and
MICHELE GOODSTEIN,

         Defendants.

_____/

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION AND PARTIAL SUMMARY JUDGMENT AND IN SUPPORT OF THEIR CROSS-MOTION FOR SANCTIONS

Defendants, Fred and Michelle Goodstein ("Defendants" or the "Goodsteins"), through undersigned counsel, as and for their opposition to Plaintiffs' Motions for Preliminary Injunction and Partial Summary Judgment and in support of their Cross-Motion for Sanctions, allege as follows:

## PRELIMINARY STATEMENT

Defendants Fred and Michele Goodstein ("Defendants") submit this response in opposition to the Motions for Preliminary Injunction and Partial Summary Judgment brought by

Plaintiffs, Moshe Enbar, Linda Enbar, Adam Enbar, and Melissa Enbar ("Plaintiffs"). Plaintiff's' motion is nothing more than a continuation of the ongoing dilatory tactics and gamesmanship in an effort to avoid the impending consequences of Defendants' meritorious claims that stem from a prior judgment in the Supreme Court of New York. Plaintiffs' instant motion seeking to enjoin Defendants from pursuing claims in New York against family members of Moshe Enbar who, as set forth in the Goodsteins' claim filed in this Court, were the beneficiaries of a series of fraudulent conveyances so as to make it difficult for the Goodsteins to recover their money—all this in violation of Fed.R.Bankr.P. 9011 in that the relief sought by Plaintiffs and the basis of said relief are in direct contradiction to the explicit language of the Stipulation Upon Order to which the Complaint and Motions refer. This Stipulation states: "The Stipulation shall be binding and upon and inure to the benefit of the Parties hereto and their respective successors and assigns. However, the Stipulation shall not be binding on any creditors, or otherwise affect the rights of any creditors, of the Estate." *See* Exhibit "B". The language in this Stipulation clearly does not bind or prevent any third-party creditors, including the Goodsteins, from enforcing their rights against others.

Moreover, as set forth below, these same legal contentions offered by the Plaintiffs herein were previously considered and rejected in an Order by a New York Court in the action entitled *FRED GOODSTEIN and MICHELE GOODSTEIN v. ADAM ENBAR, LINDA ENBAR, MAGNUM REALTY HOLDINGS LLC, and MAGNUM REAL ESTATE SERVICES, INC.,* Index No.: 654114/2016, currently pending in the Supreme Court of the State of New York, New York County (the "New York Action"). *See* Exhibit "A". In the New York Action, the Goodsteins, as Plaintiffs, moved to amend their pleadings to add fraudulent conveyance claims against Linda Enbar and Adam Enbar, and to add Melissa Benzel as a defendant. Adam Enbar opposed this

motion, arguing that the Bankruptcy Trustee had the exclusive right to pursue fraudulent conveyance claims to the exclusion of all creditors. The New York Court rejected this argument *See* Exhibit "A." Rather than accept that decision, the Plaintiffs herein have sought a second bite at the apple by way of the instant motion and Action. Although Defendants counsel wrote to counsel for Plaintiff and provided it with an opportunity to withdraw this action, for the reasons set forth above, he refused. Accordingly, not only do Defendants herein seek an Order denying the relief sought herein and a dismissal of the instant Adversary Proceeding, but it also seeks sanctions as provided for by Fed. Rule of Bankruptcy Proc. 9011.

## STATEMENT OF FACTS

On September 20, 2017, in In re: MOSHE ENBAR, Case No. 16-21262-AJC, in the United States Bankruptcy Court for the Southern District of Florida, Miami Division, Judge A. Jay Cristol issued an Order approving the trustee's Motion and Stipulation to Compromise Controversy (hereinafter the "Stipulation"). This Stipulation was entered into by and between the Settling Parties, Moshe Enbar, Linda Enbar, Adam Enbar and Melissa Benzel. *See* Exhibit "B"

The terms of the Stipulation were outlined in the September 19, 2017 Settlement Transcript for In re: MOSHE ENBAR Case No. 16-21262-AJC, in the United States Bankruptcy Court for the Southern District of Florida, Miami Division (hereinafter the "Settlement Transcript"). *See* Exhibit "C." Present at this hearing was Mr. Angueira, the Chapter 7 Trustee in that case, and the debtor, Mr. Enbar. The Settlement Transcript made clear that, "this is an agreement between the trustee and debtor, and would have no affect on other parties, creditors, or interested parties…" *See* Exhibit "C."

Following the Settlement, The New York Action was brought where the New York Court granted, *inter alia*, the Goodsteins' motion to amend their complaint to add various courses of action against the existing defendants and add Melissa Benzel as an additional defendant. *See* Exhibit "D."

Following the Order in Exhibit "D", the Enbars argued that the bankruptcy trustee had the exclusive right to pursue fraudulent conveyance claims to the exclusion of all creditors which was then rejected in the New York Action. *See* Exhibit "E"

The instant motions are a direct product of Plaintiffs' continued efforts to re-litigate, circumvent and disregard the New York Action.

Benzel, together with the New York Court defendants Adam Enbar and Linda Enbar and nonparty Moshe Enbar have now commenced the instant action in which they seek to enjoin and dismiss the New York Action based on their claim that a settlement with the Bankruptcy Trustee bars Plaintiffs herein from continuing to prosecute the New York action. This is strikingly similar to the claims made in the New York Action wherein Adam Enbar made this same argument in opposing Goodsteins' motion to amend, and the New York court rejected this argument. *See* Exhibits "A" and "E". Not satisfied with that decision, these now Plaintiffs have recycled their arguments by way of the instant action, arguing that the Bankruptcy Court has "exclusive" jurisdiction to interpret the Settlement Agreement.

The instant motions are simply yet another attempt in a long line of attempts to escape the New York Order and re-litigate the Goodsteins' judgments against Mr. Enbar as well as reinterpret the Settlement to be more favorable than what is dictated by reality.

## SUMMARY JUDGMENT STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, incorporated herein pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment is not proper if the pleadings, deposition, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is a genuine issue as to any material facts that the moving party is entitled to judgment as a matter of law. *In re SOL, LLC*, No. 09-12684-BKC-AJC, 2012 WL 2673254, at *6 (Bankr. S.D. Fla. July 5, 2012).

## ARGUMENT

### POINT I

### THE SETTLEMENT AGREEMENT ENTERED INTO IN THE BANKRUPTCY COURT DOES NOT BAR THE GOODSTEINS FROM PROSECUTING THE NEW YORK ACTION

The Settlement Agreement was outlined in the September 19, 2017 Settlement Transcript in front of Judge A. Jay Cristol. See Exhibit "C." Those present at the meeting were Mr. Angueira, the Chapter 7 Trustee in this case, Kevin Gleason, Esq., on behalf of Moshe Enbar and Amanda Peterson, Esq., on behalf of Michele Goodstein. The purpose of the hearing was to approve the "agreement between the trustee and the debtor." See Exhibit "C" at 3. This agreement, according to the Court transcript, "would have no affect on other parties, creditors, or interested parties in regard to Mr. Enbar." See Exhibit "C" at 3. At the time of the hearing, no one objected to the motion to approve the stipulation and it was made clear that only the "trustee would be bound by the terms of the stipulation as far as the debtor, related parties, interested parties..." See Exhibit "C" at 3. The Court went further to specify that, "if this order is granted it would have no affect on the rights of [Michele Goodstein]." See Exhibit "C" at 4. There were no

objections to the granting of this motion and Mr. Angueira was directed by the Court to draw the order, spelling out again that, "this is a settlement between the trustee and Mr. Enbar, and has no affect or impact upon any of the rights of any parties, interested parties, creditors, claimants, whatever." See Exhibit "C" at 5.

Plaintiffs' assertions that this Settlement barred the Goodsteins' right to seek to initiate and prosecute claims in the New York Action are misguided at best. It was made explicitly clear by Justice A. Jay Carol that the agreement "…would have no affect on other parties, creditors, or interested parties in regard to Mr. Enbar…" Settlement Transcript dated September 19, 2017, Exhibit "C". Additionally, the court explicitly stated in the settlement transcript "… if this order is granted it would have no affect on the rights of [Ms. Goodstein]." Exhibit "C" p. 4. Finally, in the settlement transcript, this Court made it abundantly and definitively clear that the settlement would have no effect on the rights of creditors such as the Goodsteins in the following excerpt: "…in the order please spell out that this is a settlement between the trustee and Mr. Enbar, and has no affect or impact upon any of the rights of any parties, interested parties, creditors, claimants, whatever… Exhibit "C" p. 5. The fact that Plaintiffs, and their counsel, who was present at the hearing, are now trying to manipulate the import of this Settlement is the ultimate of disingenuous conduct. This Court could not have provided more clarity than it did on this matter: the Settlement has no effect on the rights of the Goodsteins.

To start, the Goodsteins' cause of action belongs solely to them and, therefore, the trustee would not have even have had standing to assert or release this cause of action through the Settlement. See, In re Flagship Healthcare, Inc., 269 B.R. 721, 727 (Bankr. S.D. Fla. 2001) ("the only causes of action belonging to the debtor at the commencement of the case are property of

the estate that a trustee can pursue… thus, if a specific cause of action is not property of the estate, a trustee has no authority to bring such an action… there is no statutory authority [under which] a trustee may collect money not owed to the estate… a trustee ha[s] no standing to assert claims on behalf of specific creditors of a debtor.")

In order to determine whether or not a trustee has standing to sue, and therefore could seize control over a cause of action, a court can look to the complaint and the damages being alleged by the creditors. If, like here, the damages were incurred by the creditors and not the debtor, the trustee cannot pursue the cause of action. *See, Hirsch v. Arthur Anderson & Co.,* 178 B.R. 40, 44 (D. Conn. 1994) (ruling that the defendant's conduct in recommending the purchase of unworthy properties caused damage to the creditors, not the debtor… and therefore the trustee could not pursue a cause of action.) Another key to understanding whether or not the trustee has this standing is determining whether the creditor alleges a particularized injury which would not be a general one which could have been brought by any creditor. *Shafferman v. Queens Borough Pub. Library (In re JMK Constr. Grp., Ltd.),* 502 B.R. 396, 404 (Bankr. S.D.N.Y. 2013). A cause of action is "considered personal if there is injury to only one or a select group of specific creditors, and other creditors have no interest in the action." *In re Cabrini Med. Ctr.,* 2012 WL 2254386, at *7 (Bankr. S.D.N.Y. June 15, 2012). A court may consider multiple factors when deciding whether or not an injury was personal to a specific creditor, including:

> To whom any allegedly breached duty was owed; what was the injury underlying the claims; who suffered the injury; who would gain from the recovery, or lose out if the recovery were awarded to a different successful plaintiff; and, to the extent different from any of the foregoing, whether any creditor of the debtor could assert the claim… or just those creditors suffering a particularized injury.

*Buchwald v. The Renco Grp., Inc. (In re Magnesium Corp. of Am.)*, 399 B.R. 722, 758 (Bankr. S.D.N.Y. 2009).

Here, the cause of action belongs solely to the Goodsteins and has stood unaffected by the Settlement and never belonged to the Trustee to begin with, as was made explicitly clear by this Court. The fact that the Stipulation states that the Bankruptcy Court "shall retain sole and exclusive personal and subject matter jurisdiction over the Parties and the subject matter, interpretation, effectuation, and enforcement of the terms of the Stipulation" does not affect the Goodsteins' cause of action because that cause of action was never intended to be governed by or addressed by said Stipulation. Consequently, Plaintiffs' claim and the relief sought is made in complete disregard to the contours of the settlement that was approved by this Court, as reflected in the September 19, 2017 transcript.

Finally, and perhaps most telling, Plaintiffs have themselves sought relief in the New York Court regarding this matter. Not surprisingly, the only time Plaintiffs have sought to claim that the New York court was jurisdictionally inappropriate to resolve the Settlement Agreement's effect on the New York Action was when they received an unfavorable decision from said court. Such actions go beyond blatant forum shopping and borders on abuse of process.

## POINT II

## THE RELIEF SOUGHT BY PLAINTIFF IS

## BARRED BY THE DOCTINE OF RES JUDICATA

In 2017, the Supreme Court of the State of New York issued an Order which concluded that members of the Enbar family, "were shifting money between various entities in their control that resemble the business version of Russian nesting dolls…" (NYSCEF Doc. No. 64 at 4.) *See,*

Mallin Aff, Exh. "A" at 4. Following that Order, on November 7, 2019 the New York Supreme Court granted the Goodsteins' motion to amend the pleadings to add certain causes of actions against the Plaintiffs herein. Since the time that Order was issued, the Enbars have filed numerous meritless motions seeking to essentially re-litigate the November 7, 2019 Order. Part and parcel of these papers was the New York Action Defendants submission opposing the Goodsteins' motion to amend in the New York Action. In his opposition, Adam Enbar claimed that, pursuant to Bankruptcy Code § 544(b),

> "the bankruptcy trustee has the exclusive right to pursue claims to avoid or nullify allegedly fraudulent transfers…[and] because the trustee had the exclusive right to pursue fraudulent conveyance claims on behalf of Maurice Enbar's bankruptcy estate to the exclusion of all creditors, including plaintiffs [the Goodsteins], the Stipulation released all of the estate's causes of action against the children and wife of Maurice, thereby barring plaintiffs' [the Goodstein's] proposed causes of action."

See Exhibit "D" at 13.

In further support of that opposition, Adam Enbar emphasized that,

> "the Stipulation specifically states that the trustee 'investigated transactions related to Turnberry and 345 Broadway, as well as transactions concerning the Lawrence Enbar Trust and the Linda Enbar Trust, and settled any claims concerning them… [and that] [t]he Stipulation explicitly provides that the settling parties 'shall be released of any and all causes of action vested in the estate by operation of State or federal law'"

See Exhibit "D" at 13.

This argument was explicitly rejected by Justice Freed of the Supreme Court of New York, New York County. Justice Freed explained that "An action claiming breach of contract and conversion as against one party is quite different from a suit alleging the fraudulent transfer of assets to and among the settling parties of a bankruptcy proceeding and other nonparty entities." See Exhibit "D" at 20. Linda and Adam Enbar's liability for making fraudulent

conveyances "rests upon [their] own breach of duty" and can be separated from the claims encompassed by the Stipulation relating to Moshe Enbar's Bankruptcy Action. The Court further stated that "the trustee specifically stated that he had found no evidence that Maurice had transferred or concealed property 'within one year before the date of the filing of the petition'… and although the trustee investigated 'transactions' related to Turnberry and 345 Broadway, and the Laura (*sic*) Enbar Asset Trust and the 'Lawrence Enbar Trust', it is unclear whether the 'Lawrence Enbar Trust' examined by the trustee is the 'Enbar Lawrence Trust' identified throughout plaintiffs' papers as allegedly consisting of both pieces of real property". *See* Exhibit "D"

A final judgment on the merits bars future claims by the same parties based on the same cause of action. *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *Lane v. Peterson*, 899 F.2d 737 (8th Cir.1990) cert. denied, 498 U.S. 823, 111 S.Ct. 74, 112 L.Ed.2d 48 (1990). As discussed above, the same interested parties that are parties to this action were parties to the settlement agreement and the New York Action. As such, the "law of the case" in the New York Action is, per Justice Freed's Order, that the Stipulation entered into by the trustee had <u>no</u> preclusive effect on the fraudulent conveyance causes of action alleged by the Goodsteins against Linda and Adam Enbar in the New York Action. Despite Justice Freed's Order, Plaintiffs, in their instant Complaint and Motion, ask the Bankruptcy Court to blatantly ignore the New York Court's holding and preclude the Goodsteins from prosecuting their fraudulent conveyance actions against Linda and Adam Enbar by issuing temporary and permanent injunctions to that effect.

The arguments proffered by Plaintiffs in this Compliant and Motion are duplicative of the argument already rejected by Justice Freed in the New York action. Should Plaintiffs have issue with Justice Freed's Order, the proper procedure would be to appeal the Order—not to commence an action in a different forum and regurgitate the same rejected arguments.

### POINT III

### THE FLORIDA COURT IS WITHOUT

### JURISDICTION TO STAY THE NEW YORK ACTION

In an attempt to avoid the preclusive effect of the New York Decision and Order on this issue, Plaintiffs necessarily raise the issue as to  whether or not the Bankruptcy Court has exclusive jurisdiction to interpret the settlement agreement reached between themselves and the non-debtor Enbar entities and the Chapter 7 trustee with respect to ancillary claims. Notably, the trustee settlement expressly provided that creditors are not bound by the agreement. *See*, Exhibit "B". Enbar agreed to the removal from the trustee settlement of creditor claims that were contemplated against Enbar and the Enbar settling parties. Thus, the trustee settlement specifically released a preservation of rights to hear ancillary claims involving creditors; the bankruptcy court divested itself of jurisdiction over creditor claims, which should lead this Court to deny Enbar's latest attempt to stay the NY proceeding.

Bankruptcy courts, as courts of limited jurisdiction, may exercise subject matter jurisdiction on two grounds: i) ancillary jurisdiction, and ii) statutory jurisdiction under 28 U.S.C. Section 1334. Here, only the first basis is relevant.

In *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994), the Supreme Court held that federal courts may assert ancillary jurisdiction for two separate, though

sometimes related purposes: 1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent, and 2) to enable a court to function successfully, to manage its proceedings, vindicate its authority, and effectuate its decrees. Absent retention of jurisdiction over a settlement, "enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction." *Id.* The Order approving the settlement must either expressly retain jurisdiction over the agreement or incorporate the terms of the agreement in the order. *Id.* Here, while the Bankruptcy Court retained jurisdiction over the settling parties and interpretation of the trustee stipulation, the stipulation was specifically crafted so as not to be binding on any creditors or otherwise affect the rights of any creditors of the Estate. It therefore follows: 1) this Court has no independent basis to hear or otherwise stay the Goodsteins' New York action, 2) the stipulation did not incorporate or otherwise release claims between the Goodsteins and non-debtor entities, 3) the Court did not retain jurisdiction over claims between creditors of the Estate and non-debtor entities, 4) the resolution of the Goodsteins New York action will have no impact on the administration of the Estate or distribution to creditors of the Estate.

In *In re Valdez Fisheries Development Assoc., Inc.*, 439 F.3d 545 (9th Cir. 2006), in ruling that the dismissal order did not retain jurisdiction or incorporate the terms of the settlement agreement and the court lacked post-dismissal ancillary jurisdiction, the Court was asked to decide whether a bankruptcy court, which had approved a settlement agreement, had jurisdiction to interpret that agreement in an adversary proceeding between two creditors brought after the closing and dismissal of the underlying bankruptcy case. The 9th Circuit determined that the bankruptcy court's review of the release of a creditor's state court claims against another creditor could not "conceivably alter the debtor's rights, liabilities, options, or freedom of

actions, or in any way impact upon the handling of the administration of the bankruptcy estate"
and, therefore, the bankruptcy court lacked ancillary jurisdiction to enforce the agreement
(quoting *In re Hanks*, 182 B.R. 930 (Bankr. N.D. Ga. 1995) ((the enforcement of the settlement
agreement cannot have a conceivable effect on the bankruptcy case as no case is in existence at
that time)).

Here, Enbar received his discharge; claims of all creditors have been discharged, with the
determination of dischargeability as to the Goodsteins claims the only remaining issue in the
case. The administration of this case has long been completed. The Goodsteins prosecution of
their fraudulent transfer claims against the non-debtor Enbar entities has no impact on any
distribution to Enbar's creditors or the administration of the Estate; the outcome of the NY action
will have no bearing on distributions to creditors of this Estate. The Bankruptcy Court has no
role in the resolution of the Goodsteins fraudulent transfer claims against the non-debtor entities.
The stipulation with the trustee has been fully implemented; the stipulation specifically provides
that the claims of creditors and other parties are not impacted by the settlement. Had the non-
debtor entities removed the New York Action to the Bankruptcy Court prior to the discharge
being entered, then the Bankruptcy Court may have, in its discretion, taken jurisdiction of that
action. See, *Valdez Fisheries* at 549. Instead, the non-debtor Enbar entities chose to litigate the
New York action, the New York Court issued an extensive opinion that the action is not stayed
because of the Enbar bankruptcy; Enbar and his family members are now attempting an end-
around, forum shop to see if they can get this Court to stay the New York action.

Thus, the question of whether this Court's jurisdiction over the interpretation of the
trustee settlement agreement is necessary in order to maintain its authority is unnecessary. The

stipulation already carved out claims of creditors and specifically recites that the settlement has no effect on creditors. There is nothing left to administer in this bankruptcy case and the continued prosecution of the New York action against the non-debtor entities has no impact on Enbar, the Estate or other creditors of the Estate, all of whom are now discharged. *See, In re FedPak Sys., Inc.*, 80 F.3d 207 (7th Cir. 1995) (the bankruptcy court did not have jurisdiction to interpret its own order when resolution of the dispute would not affect the amount of assets available for distribution to creditors of the estate). *See, In re Conseco, Inc.*, 305 B.R. 281 (Bankr. N.D. Ill. 2004) (court could not assert 'related to' jurisdiction as this was a dispute between creditors brought three months after almost all of the assets of the estate were distributed; resolution of the case will not affect the amount of assets for distribution from the estate or the allocation of estate assets between the plaintiffs and defendants-it will have no tangible impact on the estate and is precisely the type of "internecine conflict" which the court does not have jurisdiction); *see, also, Zerand-Bernal Group, Inc. v. Cox*, 158 B.R. 459 (Bankr. N.D. Ill. 1993) (ancillary jurisdiction applied only in unusual circumstances and is strictly limited to cases in which the non-bankruptcy forum cannot provide adequate relief). ). Here, in a lengthy opinion, the New York Court has determined that the automatic stay does not prevent the Goodsteins from proceeding against the non-debtor Enbar entities. In *Conseco*, the Court found that the release issued was a contractual provision which provided a defense that could be asserted; the moving party had not violated any court order, ancillary jurisdiction was not appropriate, and the other court addressing the issue was competent to do so. The non-debtor Enbar entities are free to assert release as a defense in the New York action, but such a defense does not give rise to this Court exercising jurisdiction to stay the New York action. *See, Kokkonen.*

Jurisdiction over the New York fraudulent transfer action lies in New York not only because the trustee settlement carved out the rights of creditors, but because the non-debtor Enbar parties have asserted defenses in New York which the state court has ruled upon, the bankruptcy court has no independent jurisdiction over the non-debtor parties, the New York action is not interdependent upon any issue in this bankruptcy case, and the New York state court should be deferred to because it has ruled that the stay does not impact the Goodstein claims in that court, especially given the extensive litigation that has already taken place. *See, In re Toussaint*, 259 B.R. 96 (Bankr. E.D. N.C. 2000); In re Jeffries, 191 B.R. 861 (Bankr. D. Or. 1995)(in which both courts held that federal court jurisdiction was vitiated because the debtors, in challenging a post-discharge claim by a creditor, chose to raise their discharge as an affirmative defense in state court and failed to remove their cases in time.)

## POINT IV

## THE GOODSTEINS MAKE A STRONG CASE FOR VOLUNTARY ABSTENTION OF THE BANKRUPTCY COURT

*Sua sponte* abstention is warranted-permissive abstention over Title 11 proceedings arises under 28 U.S.C. Section 1334(c)(1), which provides a district court may abstain from hearing a particular Title 11 proceeding or a proceeding arising in a related case in the interest of justice or in the interest of comity with state courts. In fact, discretionary abstention applies in both core and non-core proceedings. *In re Ascher*, 126 B.R. 639 (Bankr. N.D. Ill. 1991). Factors guiding voluntary abstention are: i) the effect on the administration of the case, ii) the extent to which state law issues predominate over bankruptcy issues, iii) the difficulty or unsettled nature of the applicable law, iv) the presence of a related proceeding commenced in state court, v) the jurisdictional basis, if any, other than 28 U.S.C. Section 1334, vi) the degree of relatedness or

remoteness of the proceeding to the main bankruptcy case, vii) the substance rather than form of the asserted core proceeding, viii) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, ix) the burden of the bankruptcy court's docket, x) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, xi) the existence of a right to a jury trial, and xii) the presence in the proceeding of non-debtor parties. *See, Matter of Chicago, Milwaukee, St. Paul & Pacific Railroad Co.*, 6 F.3d 1184, 1189 (7th Cir. 1993).

Acknowledging that 28 U.S.C. Sections 1334 and 1452 provide that bankruptcy courts have exclusive jurisdiction over bankruptcy cases, bankruptcy courts have comprehensive power to deal with cases under Title 11. Section 1452(a) expressly provides that either a debtor or creditor may opt to have concurrent proceedings under Title 11 pend in both state and federal court because removal is optional. The distinguishing feature here is that the NY litigation is against non-debtor entities independent of the Goodsteins claim against Enbar, the outcome of which will have no impact on the administration of Enbar's estate, which case has been fully administered by the trustee and the outcome of the New York action will not impact Enbar's estate or other creditors.

Here, the Bankruptcy Court retained jurisdiction over the settling parties and the claims and causes of action that were or could have been asserted by the trustee. However, because the settlement does not bind other creditors or affect claims of other creditors, this Court does not have jurisdiction of the Goodsteins' independent action against non-debtor entities which does not impact the administration of this Estate.

## POINT V

## PLAINTIFFS' REPEATED FILINGS FOR FRIVOLOUS MERITLESS MOTIONS WARRANT THIS COURT ISSUING SANCTIONS AGAINST THEM

Rule 9011(b) of the Fed. R. Bank. P. is the bankruptcy counterpart to Rule 11 of the Fed. R. Civ. P. Pursuant to Fed. R. Bank. P. 9011(b), an attorney is subject to sanctions for presenting pleadings, motions, and other papers for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation, or when the claims, defenses, and 9 other legal contentions are not warranted by existing law or for establishing new law. *See* Fed.R.Bank. P. 9011(b)(1) and (2). The person presenting the paper also certifies that "the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." *See* Fed. R. Bank. P. 9011(b)(2). An attorney or unrepresented party in violation of those certifications is subject to sanction and authorizes the Court to impose sanctions upon an attorney who violates its terms. See Fed. R. Bank. P 9011(c)(1).

In determining whether a Rule 9011 violation has occurred, the established standard for imposing sanctions is an objective one. "The standard for testing conduct under amended Rule 11 is 'reasonableness under the circumstances,' a standard 'more stringent than the original good-faith formula.'" Donaldson v. Clark, 819 F.2d 1551, 1556 (11th Cir. 1987); (quoting *Hashemi v. Campaigner Publications, Inc.,* 784 F.2d 1584 (11th Cir. 1986)). In making said objective determination, the court is expected to "avoid using the wisdom of hindsight" and "should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted." *Id; See also Souran v. Travelers Ins. Co.,* 982 F.2d 1497, 1506 (11th Cir. 1993); Fed. R. Civ. P. 11, Advisory Committee Note.

Sanctions under Bankruptcy Rule 9011 are warranted when the papers are frivolous, legally unreasonable, or without foundation and also where the papers are filed in bad faith or for improper purpose. *In re Johnson*, 336 B.R. 568 (Bankr. S.D. Fla. 2006)).

As discussed above, Plaintiffs present Motion is frivolous and duplicative and therefore in direct violation of Fed. R. Bankr. P. 9011. Plaintiffs' positions have already been argued and rejected in New York by Justice Freed and has proven to harass the Goodsteins both financially and emotionally. On February 11, 2020, this office, on behalf of Fred Goodstein and Michele Goodstein, contacted Kevin C. Gleason, Esq., on behalf of Plaintiffs in order to request that this Bankruptcy Action be formally withdrawn on the grounds that such applications, as made here, violate Fed.R.Bankr.P. 9011 ("Rule 9011"). See Exhibit "F" at 1.

In this letter, Defendants gave clear notice to Plaintiffs that should Plaintiffs choose not to withdraw the Complaint and Motion, Defendants intend to move for sanctions pursuant to Rule 9011. See Exhibit "F" at 1. In this letter, Defendants laid out the requirements of Rule 9011 and pointed out the specific portions of Plaintiffs Motion and Complaint which violate Rule 9011. See Exhibit "F" at 2. As it was laid out in that letter, and will be further iterated below, the relief sought by Plaintiffs and its basis are in direct contradiction to the explicit language of the Stipulation Upon Order. See Exhibit "F" at 1; See Exhibit "C." As has been shown throughout this Opposition, the Stipulation to which Plaintiffs refer is explicitly not binding upon "other parties, creditors, or interested parties in regard to Mr. Enbar." See Exhibit "C" at 3. Moreover, this letter reviews the Order from Justice Freed of the Supreme Court of New York, New York County, where Plaintiffs argument that the trustee had the exclusive right to pursue all fraudulent conveyance claims, was rejected outright. .) See, Exhibit "A" at 4. Finally, this letter pointed out that Plaintiffs' argument as proffered here is duplicative of the argument rejected in the New

York Court and has only served to harass the Goodsteins and cause them to needlessly undergo increased costs of litigation. See Exhibit "F" at 4. In response to this letter, counsel for Plaintiffs sent a short response on February 12, 2020, stating simply that "the Complaint to which you refer, being fully supported by the facts and the law, we have no intention of withdrawing same." See Exhibit "G" at 1. The motion should be denied in its entirety and sanctions should be granted against Plaintiffs.

## CONCLUSION

Defendants respectfully request that the Court summarily reject Plaintiffs' Motions for Preliminary Judgment, Declaratory Judgment, and Injunctive Relief in their entirety because it is an invalid attempt to re-litigate and supersede the New York Court's Order dated November 7, 2019. As a result, in addition to denying the relief sought, it is respectfully requested that the Court dismiss the Enbar Plaintiffs' Adversary Proceeding and grant the Goodstein Defendants' motion for sanctions.

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(a).

Dated: April 29, 2020.

**WEG & MYERS, P.C.**
52 Duane Street, 2nd Floor
New York, New York 10128
Tel: (212) 227-4210
E-mail: jmallin@wegandmyers.com
BY: /s/ Joshua L. Mallin, Esq.
     Joshua L. Mallin, Esq.
     (*pro hac vice*)


*and local counsel*

Siegfried Rivera

201 Alhambra Circle, 11th Floor

Coral Gables, FL 33134

Telephone: 305-442-3334

Fax: 305-443-3292

jberlowitz@siegfriedrivera.com


BY:/s/ Jeffrey S. Berlowitz, Esq.

Jeffrey S. Berlowitz, Esq.
Florida Bar No. 963739

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 29, 2020, a true and correct copy of the foregoing Ex-Parte Agreed Motion was served upon all registered users via the Court's CM/ECF notification, Electronic Mail to: Kevin C. Gleason, Esq., 4121 N. 31st Avenue, Hollywood, Florida 33021; Office of the U.S. Trustee, 51 SW 1st Avenue, Suite 1204, Miami, Florida 33130; and to all other parties subject to receiving service by the Court's CM/ECF notifications procedures.


BY:  /s/ Joshua L. Mallin
Joshua L. Mallin, Esq.

# EXHIBIT A

NYSCEF DOC. NO. 64

INDEX NO. 654114/2016

RECEIVED NYSCEF: 03/17/2017

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT: _____*Freed*_____        PART __2__

_____
                              *Justice*

Goodstein, Fred, et al.

          -v-

Adam Enbar, et al.

INDEX NO. _654114/16_

MOTION DATE _____

MOTION SEQ. NO. ___01___

_____

The following papers, numbered 1 to _____, were read on this motion to/for _____

| | |
|---|---|
| Notice of Motion/Order to Show Cause — Affidavits — Exhibits _____ | No(s)._____ |
| Answering Affidavits — Exhibits _____ | No(s)._____ |
| Replying Affidavits _____ | No(s)._____ |

Upon the foregoing papers, it is ordered that this motion is

Decided per order
ATTACHED

FOR THE FOLLOWING REASON(S):

HON. KATHRYN FREED
JUSTICE OF SUPREME COURT

Dated: __MARCH 16 2-17__                                              , J.S.C.

1. CHECK ONE: .............................................. ☐ CASE DISPOSED        ☐ NON-FINAL DISPOSITION

2. CHECK AS APPROPRIATE: ...........................MOTION IS: ☐ GRANTED  ☐ DENIED  ☐ GRANTED IN PART  ☐ OTHER

3. CHECK IF APPROPRIATE: ................................................ ☐ SETTLE ORDER        ☐ SUBMIT ORDER

☐ DO NOT POST    ☐ FIDUCIARY APPOINTMENT    ☐ REFERENCE

INDEX NO. 654114/2016
NYSCEF DOC. NO. 64
RECEIVED NYSCEF: 03/17/2017

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 2
-------------------------------------------------------------------------X
FRED GOODSTEIN and MICHELLE GOODSTEIN,

                                        Plaintiff,

                        -against-

ADAM ENBAR, LINDA ENBAR, MAGNUM REALTY
HOLDINGS, LLC and MAGNUM REAL ESTATE
SERVICES, INC.,

                        Defendants.
-------------------------------------------------------------------------X

**DECISION AND ORDER**

Index №.: 654114/16
Motion Seq. Nos.
001 and 002

**KATHRYN E. FREED, J.S.C.:**

RECITATION, AS REQUIRED BY CPLR 2219 (a), OF THE PAPERS CONSIDERED IN
REVIEW OF THIS MOTION

| PAPERS | NUMBERED |
|---|---|
| SEQ. 001 | |
| ORDER TO SHOW CAUSE AND ANNEXED AFFIRMATION | 1-2 (Exs 1-3) |
| ANSWERING AFFIDAVITS | 2-4 (Exs A-E) |
| MEMORANDUM OF LAW IN OPPOSITION | 5 |
| SEQ. 002 | |
| ORDER TO SHOW CAUSE AND AFFIRMATIONS IN SUPPORT | 1-3 (Exs A-B) |
| AFFIRMATION IN OPPOSITION | 4 (Exs A-E) |

UPON THE FOREGOING CITED PAPERS, THIS DECISION/ORDER ON THE MOTION IS
AS FOLLOWS:

In a fraudulent conveyance action, plaintiffs Fred and Michelle Goodstein (the Goodsteins)

move, by order to show cause (Mot. Seq. 001), for an order of attachment, pursuant to CPLR 6201

(3), for a sum of $281,375.09 on defendant Magnum Realty Holdings LLC's (Magnum Holdings)

Page 1 of 14

bank account, as well as a preliminary injunction, pursuant to article 63 of the CPLR, preventing Magnum Holdings from: (1) withdrawing money from the subject bank account, or any other, as well as any safety deposit boxes; (2) assigning any assets, including stock certificates, bonds or other certificates; (3) creating -- through its members, partners, agents, or employees -- a new entity or entities to operate its business. Defendant Magnum Holdings moves (Mot. Seq. 002) to remove any restraint on its escrow account (acct. no. 4267053232). After oral argument, and after a review of the parties' papers and the relevant statutes and case law, the motions are decided as follows.

## BACKGROUND

In December 2008, the Goodsteins loaned $150,000 to nonparty 2457 8th LLC. The promissory note memorializing this loan was executed on December 10, 2008, and it was signed for 2457 8th LLC by Maurice Enbar and nonpartry Steven Kamhi (Kamhi), who were each identified as managing members of the entity. In addition to the promissory note, Kamhi personally guaranteed the loan to the Goodsteins in a separate guarantee executed on December 10, 2008.

The promissory note structured repayment to the Goodsteins in eighteen payments: seventeen interest only monthly installments of $1,500 and a balloon payment of $166,500, a figure comprised of the principal and the remaining interest (*see* Mallin Aff, Ex 1[C]). The promissory note also provided that, in the case of default, interest would accrue at the lower of 24% per annum or the highest rate allowable by law (*id.*). 2457 8th LLC made the first fifteen payments, then defaulted by failing to make the last two interest-only payments, as well as the balloon payment.

The Goodsteins, in an effort to redress the default, brought two actions in Nassau County: *Goodstein v Kamhi*, index No. 20279/10 and *Goodstein v Enbar,* index No. 16224/2011. In the first action, *Goodstein v Kamhi*, the Goodsteins sued Kamhi as well as 2457 8th LLC. In the second

Page 2 of 14

RECEIVED NYSCEF: 03/17/2017

action, *Goodstein v Enbar*, index No. 16224/11, the Goodsteins sued Maurice Enbar, as well as nonparties Flatiron Equities, LLC (Flatiron Equities) and Magnum Real Estate Services, Inc. (MRES). In both actions, the Goodsteins obtained default judgments against all defendants for the amount outstanding under the promissory note, as well as interest (*see* Mallin Aff, Exs 1[K] and 1[L]). In the case involving Maurice Enbar, the Nassau County court found that Enbar and his co-defendants owed the Goodsteins $212,637.75 (*see* Mallin Aff, Ex 1 [K]).

Meanwhile, the Goodsteins allege that nonparty Maurice Enbar and his wife and son, defendants Linda Enbar and Adam Enbar, were shifting money between various entities that are all within their control and that resemble the business version of Russian nesting dolls. First, the Goodsteins allege that, on December 12, 2008, two days after the Goodsteins check for $150,000 was issued, Maurice and Linda Enbar opened a bank account, for the purpose of processing the check, in the name of 2457 8th LLC. The Goodsteins submit bank documents that substantiate this allegation (Mallin aff, Ex 1 [F]). The Goodsteins allege that, a week later, on December 19, 2008, Maurice Enbar and Linda Enbar defunded 2457 8th LLC, by transferring $145,000 from its freshly opened bank account into an account for nonparty Flatiron Equities, which is owned and operated by Maurice and Adam Enbar. This allegation is also substantiated by bank records submitted with the Goodsteins' moving papers (*id.*).

The Goodsteins allege that the Enbars next, on December 22, 2008, shifted $135,000 from the Flatiron Equities account to an account for nonparty 23-123rd Street LLC (Street LLC), an entity owned and operated by Maurice Enbar. This alleged transaction, like the others, is substantiated by bank records submitted by the Goodsteins (Mallin aff, Ex 1 [G]). Later the same day, Maurice Enbar then transferred $135,000 from the Street LLC account into his and his wife's joint account (*see id.*,

Page 3 of 14

Ex 1 [I]).  Next, the Goodsteins allege that $135,000 was transferred from Maurice and Linda

Enbars' joint account to an account for MRES, another company owned and operated by Maurice

Enbar, in a series of transactions taking place between December 23, 2008 and December 24, 2008

(*see id.*, Ex 1 [J]).

The Goodsteins allege that the outcome of all of these transfers was to render 2457 8th LLC,

Maurice Enbar, and Steven Kamhi insolvent and unable to pay the money due under the promissory

note.  On March 13, 2012 -- after the Goodsteins had commenced both actions for breach of the

promissory note, and after they had been granted a default judgment in *Goodstein v Kamhi*, but

before they had been granted a default judgment in *Goodstein v Enbar* -- Magnum Holdings

registered with New York's Department of State as a domestic limited liability company.  The

Goodsteins allege that MRES then transferred all of its assets to Magnum Holdings.

The Goodsteins submit a LexisNexis public records search that shows that MRES and

Magnum Holdings share a business address (*id.*, Ex 1 [P]).  Moreover, the Goodsteins allege that the

transfers between MRES and Magnum Holdings were made without consideration, and for the

purpose of frustrating the Goodsteins' attempts to recover the money owed to them under the

promissory note.  The Goodsteins note that, in addition to their own claims, MRES has 16 other

outstanding judgments and/or liens against it (*id.*, Ex 1 [R]), while Maurice Enbar, personally, has

19 outstanding judgments and/or liens against him (*id.*, Ex 1 [A]).

The Goodsteins filed the complaint in this action on August 4, 2016, alleging eight causes

of action, all of them for fraudulent conveyance.  The Goodsteins brought this motion as an order

to show cause (OTSC), which Judge Jaffe signed on August 25, 2016.  The OTSC directed "that,

pending a hearing of this motion, Defendant Magnum Holding and its members, agents, employees,

NYSCEF DOC. NO. 64

attorneys, or other professionals, acting on behalf of Magnum Holding are temporarily restrained and enjoined from:

> (1) withdrawing any monies from the TD Bank Account No.: 426-7053240 or any other bank account belonging to Magnum Holdings or any safe deposit boxes belonging to Magnum Holdings; (2) assigning any assets of Magnum Holdings, including stock certificates, bonds or other securities; and (3) creating or forming any new entity or entities so as to operate the business of Magnum Holdings to the extent of $281,375.09"

(OTSC at 3).

In her affidavit opposing this motion, Linda Enbar states that, as a result of the OTSC, "Magnum Holding's escrow account, TD Bank Account No. 4267053232 has been frozen" (L. Enbar aff, ¶ 5). Thus, from a pragmatic view, a temporary restraining order (TRO) is already in place and the court's role here, aside from deciding the appropriateness of an order of attachment, is to determine whether the TRO should be converted into a preliminary injunction.

## DISCUSSION

### I. Order of Attachment

"An order of attachment directs the sheriff to take constructive and sometimes actual hold of a defendant's property, so that it can be applied to the plaintiff's judgment in the action, should the plaintiff prevail" (*VisionChina Media Inc. v Shareholder Representative Servs., LLC*, 109 AD3d 49, 59 [1st Dept 2013] [internal citation omitted]). This provisional remedy, "which is governed by CPLR article 62, operates only against the property of the defendant, not on his/her person" (*Hotel 71 Mezz Lender LLC v Falor*, 14 NY3d 303, 310).

Page 5 of 14

INDEX NO. 654114/2016
RECEIVED NYSCEF: 03/17/2017
NYSCEF DOC. NO. 64

CPLR 6201, "Grounds for attachment," provides, at its fourth subparagraph, that:

"An order of attachment may be granted in any action, except a matrimonial action, where the plaintiff has demanded and would be entitled, in whole or part, or in the alternative to a money judgment against one or more of the defendants, when . . . the defendant, with intent to defraud his creditors or frustrate enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts"

(CPLR 6201 [3]).

As to the technical requirements faced by a party moving for an order of attachment, CPLR

6212 provides that:

"On a motion for an order of attachment, or for an order to confirm an order of attachment, the plaintiff shall show, by affidavit and such other written evidence as may be submitted, that there is a cause of action, that it is probable that the plaintiff will succeed on the merits, that one or more of grounds for attachment provided in section 6201 exist, and that the amount demanded from the defendant exceeds all counterclaims know to the plaintiff"

(CPLR 6212 [a]).

Additionally, CPLR 6212 requires that a plaintiff seeking an order of attachment

"shall give an undertaking" to provide for the possibility that the defendant obtains a

favorable judgment, or it is "finally decided that plaintiff was not entitled to an attachment

of the defendant's property" (CPLR 6212 [b]).[1] If either of the two things occur, upending

---

[1] More specifically, CPLR 6212 (b) provides that the undertaking should be:

"in a total amount fixed by the court, but not less than five hundred dollars, a specified part thereof conditioned that the plaintiff shall pay to the defendant all costs and damages, including reasonable attorney's fees, which may be sustained by reason of the attachment if the defendant recovers judgment or if it is finally decided that the plaintiff was not entitled to an attachment of the defendant's property, and the balance conditioned that the plaintiff shall pay to the sheriff all of his allowable fees. The attorney for the plaintiff shall not be liable to the sheriff for such fees. The surety on the undertaking shall not be discharged except upon notice to the sheriff."

INDEX NO. 654114/2016
NYSCEF DOC. NO. 64
RECEIVED NYSCEF: 03/17/2017

the order of attachment, CPLR 6212 provides that "[t]he plaintiff shall be liable to the defendant for all costs and damages, including reasonable attorney's fees, which may be sustained by reason of the attachment," and that such liability is "not limited by the amount of the undertaking" (CPLR 6212 [e]).  Finally, CPLR 6212 (c) provides that a plaintiff must file an order of attachment within 10 days of its being granted.

Attachment is a "harsh" remedy, and courts have long construed it "strictly in favor of those against whom it may be employed" (*Penoyar v Kelsey*, 150 NY 77, 80 [1896]). Thus, "[t]here must be more than a showing that the attachment would, in essence, be 'helpful'" (*VisionChina Media*, 109 AD3d at 61, quoting *Founders Ins. Co. Ltd. v Everest Natl. Ins. Co.*, 41 AD3d 350, 351 [1st Dept 2007]).  Instead, "the party seeking attachment must demonstrate an identifiable risk that the defendant will not be able to satisfy the judgment" (*id.* at 60).

This "risk should be real, whether it is a defendant's financial position or past and present conduct" (*id.* [internal quotation marks and citation omitted]).  More specifically, courts "may consider the defendant's history of paying creditors, or a defendant's stated or indicated intent to dispose of assets" (*id.* citation omitted).  Courts also consider whether the party against whom the attachment is sought "conducted business in a less than exemplary manner" (*ITC Entertainment, LTD. v Nelson Film Partners*, 714 F2d 217, 219 [2d Cir 1983] [considering an order of attachment under New York law] [internal quotation marks omitted]).  Finally, "[w]hether to grant a motion for an order of attachment rests with the discretion of the court" (*Vision China Media*, 109 AD3d at 59, citing *Morgenthau v Avion Resources Ltd.*, 11 NY3d 383, 387 [2008]).

Page 7 of 14

The Goodsteins argue that they have a high probability of success in their fraudulent conveyance claims against defendants. More specifically, the Goodsteins argue that Maurice Enbar and MRES transferred funds to Magnum Holdings to avoid paying the judgment they obtained against him in *Goodstein v Enbar*.

Section 276 of New York's Debtor and Creditor Law (DCL) provides that "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." The burden of showing actual intent under this provision of the DC L is on the party alleging a fraudulent transfer (*In re: Sharp International Corp.* [403 F3d 43, 56 [2d Cir 2005] [applying section 276 in the context of a bankruptcy proceeding]).

However, "[d]ue to the difficulty of proving actual intent to hinder, delay, or defraud creditors, the pleader is allowed to rely on badges of fraud to support his case, i.e., circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent" (*Wall St. Assoc. v Brodsky*, 257 AD2d 526, 529 [1st Dept 1999] [internal quotation marks and citation omitted]). The First Department in *Brodsky* provided an illustrative, non-exhaustive list of such badges of fraud:

> "a close relationship between the parties to the alleged fraudulent transaction; a questionable transfer not in the usual course of business; inadequacy of the consideration; the transferor's knowledge of the creditor's claim and the inability to pay it; and retention of control of the property by the transferor after the conveyance"

(*id.*).

Recently, the First Department, applying the principles of *Brodsky*, held that the transfer of a commercial condominium for $0 was a sufficient badge of fraud to sustain a

Page 8 of 14

INDEX NO. 654114/2016
RECEIVED NYSCEF: 03/17/2017

NYSCEF DOC. NO. 64

fraudulent conveyance claim under DCL § 276 (*Board of Mgrs. of Loft Space Condominium v SDS Leonard, LLC*, 142 AD3d 881, 883 [1st Dept 2016]). Moreover, "in cases where a conveyance has been made from one family member to another and the facts relating to the type of consideration are within their exclusive control, the defendant has the burden of proving the adequacy of the consideration" (*Sardis v Frankel*, 113 AD3d 135, 145 [1st Dept 2014] [internal quotation marks and citation omitted]).

Here, defendants have made no showing that Magnum Holdings paid any consideration for the money MRES conveyed to its bank account. Moreover, both MRES and Magnum Holdings appear to be controlled by Maurice Enbar. Finally, the Goodsteins had filed suit against Maurice Enbar on the promissory note prior to the transfer. Thus, fraudulent intent may be inferred and plaintiffs have shown a likelihood of success on their underlying claim.

Moreover, there is an identifiable risk that Maurice Enbar and Magnum Holdings will not be able to satisfy any judgment against them. The Goodsteins have made an overwhelming showing that Maurice Enbar and companies that he controls have a history of not paying debts or judgments. This is exactly the kind of showing that warrants an order of attachment.

Defendants argue, among other things, that the Goodsteins' application for an order of attachment is defective because it lacks an affidavit. While this application for an order of attachment is meritorious in substance, defendants are correct that it is defective in form, since the Goodsteins fail to submit an affidavit in support of their application, in contravention of CPLR 6212 (a). Thus, the Goodsteins application for an order of

attachment is denied without prejudice and the Goodsteins have leave to bring another, properly supported, application for this relief.

## II. Preliminary Injunction

CPLR 6301, "Grounds for preliminary injunction and temporary restraining order" provides that:

> "A preliminary injunction may be granted in any action where it appears that the defendant threatens or is about to do, or is doing or procuring or suffering to be done, an act in violation of the plaintiff's rights respecting the subject of the action, and tending to render the judgment ineffectual, or in any action where the plaintiff has demanded and would be entitled to a judgment restraining the defendant from the commission or continuance of an act, which, if committed or continued during the pendency of the action, would produce injury to the plaintiff. A temporary restraining order may be granted pending a hearing for a preliminary injunction where it appears that immediate and irreparable injury, loss or damage will result unless the defendant is restrained before the hearing can be had."

As noted above, the August 25, 2016 OTSC effectively granted the Goodsteins a TRO. Thus, this Court must determine whether the TRO should be converted into a preliminary injunction. The Court of Appeals has distilled the standard for a preliminary injunction to a showing of: "(1) a likelihood of success on the merits, (2) irreparable injury if provisional relief is not granted, and (3) that the equities" weigh in favor of the moving party (*J.A. Preston Corp. v Fabrication Enters.*, 68 NY2d 397, 406 [1986]).

There is a great deal of overlap in the showing required for an order of attachment and a preliminary injunction under article 63 of the CPLR. The court, for example, has, above -- in its analysis of whether an order of attachment is appropriate -- considered whether the Goodsteins are likely to succeed on their fraudulent conveyance claims and found that they are.

Page 10 of 14

NYSCEF DOC. NO. 64

INDEX NO. 654114/2016
RECEIVED NYSCEF: 03/17/2017

Second, if Magnum Holdings transfers money from its accounts and renders itself insolvent and unable to satisfy an adverse judgment, then the Goodsteins will be irreparably harmed. Typically, "[e]conomic loss, which is compensable by money damages, does not constitute irreparable harm" (*Di Fabio v Omnipoint Communications, Inc.*, 66 AD3d 635, 637 [2d Dept 2009] [internal quotation marks and citations omitted]). That is, if an injury can "be fully compensated by a monetary award" it is not irreparable (*Bashian & Farber, LLP v Syms*, 46 NYS3d 202, 205 [2d Dept 2017]). However, it is self-evident that if a party renders itself insolvent for the purpose of evading judgment, the plaintiff will not be fully compensated by a monetary award. Thus, the Goodsteins have made a showing of irreparable harm.

Finally, the equities favor the granting a preliminary injunction because, as the Goodsteins have shown, Maurice Enbar and the companies he controls have a history of evading judgments. Thus, it is equitable for the court to take steps to ensure that, if the Goodsteins succeed on their fraudulent conveyance claims, Magnum Holdings is solvent and can pay a judgment to them.

In opposition, defendants argue that the court should exercise its discretion to deny the preliminary injunction since Magnum Holdings cannot operate its business without the use of its bank accounts. In support, defendants submit an affidavit from Linda Enbar, in which she describes Magnum Holdings' business as "aiding landlords and property managers, and working with real estate brokers, in finding tenants for vacant apartments" (¶ 3).

Page 11 of 14

Linda Enbar claims that the TRO imposed by Judge Jaffe's OTSC has frozen not only Magnum Holdings' operating account (426-7053240), but also its escrow account (426-7053240), which is "used to deposit collected rents (the first months and security deposit) and remit rents to landlords" (*id.*, ¶ 5). She further maintains that the escrow account has $93,779.30 in it (*id.*, ¶ 7), that Magnum Holdings has written $98,550 in dishonored checks to various landlords (*id.* ¶ 6), and that it owes one particular landlord that same amount, $98,550 (*id.*, ¶ 8). Defendants also submit an affidavit from that landlord, Parvinder Obrhai, who stated that a company he owns, Casa Property Management LLC, is owed $98,550 by Magnum Holdings (Obhrai aff, ¶ 4).

However, neither of these affidavits persuade this Court to exercise its discretion to release the attachment effected by the OTSC. Essentially, defendants are asking this Court to prioritize their debt to Obrhai over their debt to the Goodsteins. If defendants wish to obtain a judicial prioritizing of their debts, a bankruptcy court is the proper venue in which to seek such relief. However, in the present motion, the Goodsteins have made a showing of entitlement to a preliminary injunction and the fact that Magnum Holdings has other creditors does not affect that entitlement.

## CONCLUSION

In light of the foregoing, it is therefore:

ORDERED that the plaintiffs' motion for an order of attachment is denied without prejudice, and it is further

Page 12 of 14

NYSCEF DOC. NO. 64

ORDERED that plaintiffs' application for preliminary injunction is granted; and it is further

ORDERED that Magnum Holdings, its agents, servants, employees and all other persons acting under the jurisdiction, supervision and/or direction of defendant, are enjoined and restrained, during the pendency of this action, from doing or suffering to be done, directly or through any attorney, agent, servant, employee or other person under the supervision or control of Magnum Holdings, any of the following acts:

> (1) withdrawing any monies from TD Bank Account No.: 426-7053240 or any other bank account belonging to Magnum Holdings or any safe deposit boxes belonging to Magnum Holdings; (2) assigning any assets of Magnum Holdings, including stock certificates, bonds or other securities; and (3) prohibiting Magnum Holdings, its members, partners, agents, employees, attorneys, or other professionals acting on behalf of Magnum Holdings from creating or forming any new entity or other entities so as to operate the business of Magnum Holdings.

and it is further

ORDERED that, in light of the foregoing, defendant Magnum Holdings' motion pursuant to Mot. Seq. 002 is denied as moot; and it is further

ORDERED that counsel are directed to appear for a compliance conference on May 9, 2017, at 2:30 p.m., at 80 Centre Street, Room 280, as directed by the preliminary conference order dated January 31, 2017; and it is further

INDEX NO. 654114/2016

NYSCEF DOC. NO. 64

RECEIVED NYSCEF: 03/17/2017

ORDERED that this constitutes the decision and order of the court.

Dated: March 13, 2017                    ENTER:

KATHRYN E. FREED, J.S.C.

HON. KATHRYN FREED
JUSTICE OF SUPREME COURT

Page 14 of 14

# EXHIBIT B



**ORDERED in the Southern District of Florida on September 20, 2017.**

A. Jay Cristol, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
(MIAMI, DIVISION)

| | | |
|---|---|---|
| In re: | : | CASE NO.: 16-21262-AJC |
| | : | |
| MOSHE ENBAR, | : | CHAPTER 7 |
| | : | |
| Debtor. | : | |
| _____/ | | |

### ORDER GRANTING TRUSTEE'S MOTION TO APPROVE STIPULATION TO COMPROMISE CONTROVERSY

THIS MATTER came before the Court on September 19, 2017 at 11:30 A.M. to consider the Chapter 7 Trustee's Motion to Approve Stipulation to Compromise Controversy [D.E. #150] (the "*Motion*"). The Motion has been served on all interested parties and creditors, pursuant to the Federal Rules of Bankruptcy Procedure and the Local Rules of this Court. The Court, having reviewed the file, the Motion, the Stipulation attached as Exhibit "1" to the Motion, and record herein, good cause having been shown, and being otherwise duly advised in the premises. It is therefore,

**ORDERED AND ADJUDGED** that:

1.    The Motion is **GRANTED** and the Settlement is **APPROVED** on the terms and

conditions set forth in the Motion and the Stipulation to Compromise Controversy attached as Exhibit "1" to the Motion (the "*Stipulation*").

2.      The Debtor will pay the Trustee a total sum of $15,000.00 the total sum of Fifteen Thousand and 0/100 dollars ($15,000.00) in cleared funds (the "*Settlement Amount*"), to be paid within 5 days after this order becomes final and non-appealable.

3.      The Settlement Payment shall be made via cashier's check or money orders made payable to "Robert Angueira, Trustee," shall clearly state the name of the Debtor and the case number, and shall be delivered to Robert Angueira at 16 SW 1st Avenue, Miami, Florida 33130.

4.      Upon payment of the sum of $15,000:

    a.  the Settling Parties shall be released of any and all causes of action vested in the estate by operation of State or federal law; and

    b.  the Trustee shall forego objecting to the Debtor's exemptions, the value of non-exempt property, and the Debtor's discharge.

5.      Enforceability of the Stipulation is subject only to entry of a final, non-appealable order of the Bankruptcy Court approving this Stipulation.

6.      Under the terms of the Settlement, none of the Parties shall take any action to intentionally frustrate the purpose of the Stipulation.

7.      Under the terms of the Settlement, each of the Parties agrees to bear their own attorneys' fees and costs with respect to the Bankruptcy Case and with respect to the Stipulation.

8.      As a material inducement to the Trustee's entry into the Stipulation, the Debtor represents and warrants that: (a) all information contained in his Petition, Schedules, SOFA, and all amendments thereto (collectively, the "Pleadings"), is true, correct and accurate; (b) the Pleadings contain no material errors, omissions or misrepresentations; (c) all information and

documentation provided by, or on behalf of the Debtor to the Trustee (collectively, the "Documents") are true, correct and accurate; (d) the Documents contain no material errors, omissions or misrepresentations.

9.     Under the term of the Settlement, in the event that the Settling Parties fail to comply with the terms of the Stipulation, including making any agreed-upon payment on a timely basis, or should the Trustee discover that any of the Debtor's representations or warranties contained therein are untrue, the Trustee shall have the right to proceed against any and all assets of the Debtor including, but not limited to, the property the Debtor has claimed as exempt, for the remainder of the amount due and owing as set forth in the Settlement. In addition, the Trustee shall be entitled to interest, which shall accrue at the statutory rate, attorneys' fees and costs. Further, the Trustee may file a Notice of Default and submit an Order to the Court revoking the Debtor's discharge. Pursuant to the terms stated in the Settlement, and the provisions of 11 U.S.C. §727(a)(l0), the Debtor has agreed to waive any procedural requirements prior to the entry of an order revoking his discharge. However, no discharge shall be revoked without a hearing.

10.     The Stipulation shall be binding only upon and inure to the benefit of the Parties hereto and their respective successors and assigns. However, the Stipulation shall not be binding on any creditors, or otherwise affect the rights of any creditors, of the Estate.

11.     The Stipulation constitutes the entire agreement of the Parties hereto as to the subject matter hereof. The undersigned acknowledge that there are no communications or oral understandings contrary, different, or that in any way restrict the Stipulation, and that all prior agreements or understandings within the scope of the subject matter of the Stipulation are superseded, null and void.

12.     No waiver, modification or amendment of the terms of the Stipulation shall be valid or binding unless made in writing, signed by the Party to be charged and then only to the extent as set forth in such written waiver, modification, or amendment.

13.     The Stipulation shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without regard to its conflict of law principles.

14.     Under the term of the Settlement, in the event any dispute arises among the Parties with regard to the interpretation of any term of the Stipulation, all of the Parties shall be considered collectively to be the drafting Party, and any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall be inapplicable.

15.     Under the terms of the Settlement, each Party to the Stipulation warrants and represents that the person signing the Stipulation on its behalf is duly authorized to enter into the Stipulation on behalf of such Party. As provided in the Stipulation, each Party signing the Stipulation separately has acknowledges and represents that this representation and warranty is an essential and material provision of this Stipulation and shall survive execution of this Stipulation.

16.     If any clause, provision, or paragraph of the Stipulation shall, for any reason, be held illegal, invalid, or unenforceable, such illegality, invalidity, or enforceability shall not affect any other clause, provision, or paragraph of the Stipulation, and the Stipulation shall be construed and enforced as if such illegal, invalid, or unenforceable clause, paragraph, or other provision had not been contained in the Stipulation.

17.     The settlement proceeds of $15,000.00 are allocated to the Estate's possible causes of action and or objections regarding the Debtor's Homestead Property.

18.     The Bankruptcy Court shall retain sole and exclusive personal and subject matter

jurisdiction over the Parties and the subject matter, interpretation, effectuation, and enforcement of the terms of the Stipulation.

###

Submitted by

ROBERT A. ANGUEIRA, P.A.
16 S.W. 1st Avenue
Miami, FL 33130
Tel. 305-263-3328
Fax 305-263-6335
e-mail: yanay@rabankruptcy.com

Copies furnished to:
Yanay Galban, Esq.

*(Attorney Yanay Galban is directed to serve copies of this Order upon the Debtor, the Trustee, the Attorney for the Debtor, the U.S. Trustee, and all parties who have entered an appearance in this case, upon receipt thereof, and to file a Certificate of Service with the Court confirming such service.)*

# EXHIBIT C

Page 1

1                UNITED STATES BANKRUPTCY COURT
                 SOUTHERN DISTRICT OF FLORIDA
2

3                    Judge A. Jay Cristol

4

5
    In Re:
6
                            Case No. 16-21262-AJC
7

8   MOSHE ENBAR,

9           Debtor.

10  _____

11

12                    ECF #150, 165

13

14

15                  September 19, 2017

16

17

18  The above entitled cause came on for hearing before
    the HONORABLE A. JAY CRISTOL, one of the Judges in the
19  UNITED STATES BANKRUPTCY COURT, in and for the
    SOUTHERN DISTRICT OF FLORIDA, at 301 N. Miami Avenue,
20  Miami, Miami-Dade County, Florida, on September 19th,
    2017, commencing on or about 11:30 a.m., and the
21  following proceedings were had:

22

23

24           Transcribed from a digital recording by:
              Jacquelyn Ann Jones, Court Reporter
25

OUELLETTE & MAULDIN  COURT REPORTERS, INC.
(305) 358-8875

Page 2

1
    **APPEARANCES:**

2

3

    **FLORIDA BANKRUPTCY GROUP, LLC**
4    **By: KEVIN GLEASON, ESQUIRE**
    **On behalf of Moshe Enbar in**
5    **adversary proceeding**

6

    **ROBERT ANGUEIRA, PA**
7    **By: ROBERT ANGUEIRA, ESQUIRE**
    **Chapter 7 Trustee**

8

9    **WEG & MYERS, PC**
    **By: AMANDA PETERSON, ESQUIRE**
10    **On behalf of Michele Goodstein**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 3

1            THE COURT:  Moshe Enbar.

2            MR. ANGUEIRA:  Good morning, Your Honor.

3   Robert Angueira, A-n-g-u-e-i-r-a.  I am the Chapter 7

4   Trustee in this case.

5            THE COURT:  All right.  The Court is

6   familiar with the -- with the compromise.  And it

7   would appear appropriate to approve it, with the

8   understanding that this is an agreement between the

9   trustee and the debtor, and would have no affect on

10  other parties, creditors, or interested parties in

11  regard to Mr. Enbar.  Does that create any problem for

12  you?

13           MR. ANGUEIRA:  No.  I would like to say

14  something that's obvious is, no one has objected to

15  the motion to approve the settlement.  There hasn't

16  been a pleading filed in court.  There hasn't been an

17  email.  There hasn't been a phone call.  No one has

18  objected to the motion to approve the stipulation.

19           Now, the trustee would be bound by the terms

20  of the stipulation as far as the debtor, related

21  parties, interested parties, but this stipulation is

22  not intended to in any way deal with the 727 Adversary

23  Case No. 17-1010, or the 523 matter, Adversary Case

24  No. 17-1018.

25           THE COURT:  All right.  Let's find out who

Page 4

1    else is here.  Is Amanda Peterson out in telephone
2    land?
3              MS. PETERSON:  Yes, Your Honor.
4              THE COURT:  And your last name is spelled
5    P-e-t-e-r-s-o-n?
6              MS. PETERSON:  Yes, Your Honor.
7              THE COURT:  And you represent Michele
8    Goodstein.  And apparently if this order is granted it
9    would have no affect on the rights of your client.
10   Any problem?
11             MS. PETERSON:  No, Your Honor.
12             THE COURT:  And in the courtroom, do I see
13   Mr. --
14             MR. GLEASON:  Good morning, Your Honor.  May
15   it please the Court.  Kevin Gleason, G-l-e-a-s-o-n,
16   Florida Bankruptcy Group.
17             We represent Mr. Enbar in the noted
18   adversary proceedings, both of which include counts
19   seeking to deny discharge for failure to cooperate
20   with the trustee.
21             We will be filing a motion in the Legum
22   matter, the lower number, to dismiss those counts
23   which are entirely dependent upon allegations that Mr.
24   Enbar has failed to cooperate with the trustee.
25             THE COURT:  All right.  So anyone else wish

Page 5

1    to be heard or raise any objection?  If not, then the
2    motion is granted.
3             Mr. Angueira, you may draw the order, but in
4    the order please spell out in simple language the fact
5    that this is a settlement between the trustee and Mr.
6    Enbar, and has no affect or impact upon any of the
7    rights of any parties, interested parties, creditors,
8    claimants, whatever.
9             And if Mr. Gleason has a matter to bring
10   before the Court, we'll hear it at that time.  Thank
11   you all.
12             (The proceedings were concluded.)
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 6

1      .

2                    C E R T I F I C A T E

3

4           I, JACQUELYN ANN JONES, Court Reporter and

5    Notary Public in and for the State of Florida at

6    Large, do hereby certify that the foregoing

7    proceedings were transcribed by me from a digital

8    recording held on the date and from the place as

9    stated in the caption hereto on page 1, to the best of

10   my ability.

11

12           In witness whereof I have hereunto set my

13   hand and seal this  30th  day of  January, 2020.

14

15

16                          _____

17                          JACQUELYN ANN JONES

18                          Commission GG062804

19                          Expires Feb. 18, 2021

20

21

22

23

24

25

OUELLETTE & MAULDIN  COURT REPORTERS, INC.
(305) 358-8875

# EXHIBIT D

NYSCEF DOC. NO. 160

RECEIVED NYSCEF: 11/07/2019

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | |
|---|---|
| PRESENT:    **HON. KATHRYN E. FREED** | PART         **IAS MOTION 2EFM** |
| _Justice_ | |

-------------------------------------------------------X

FRED GOODSTEIN and MICHELE GOODSTEIN,

        Plaintiffs,

  - v -

ADAM ENBAR, LINDA ENBAR, MAGNUM REALTY
HOLDINGS, LLC, and MAGNUM REAL ESTATE
SERVICES, INC.,

        Defendants.

-------------------------------------------------------X

INDEX NO.        654114/2016

MOTION SEQ. NO.    003 004 008

**DECISION + ORDER ON
MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 003) 55, 56, 57, 58, 59, 60, 61, 62, 63, 66

were read on this motion to/for             DISMISS .

The following e-filed documents, listed by NYSCEF document number (Motion 004) 69, 70, 71, 72, 73, 74, 75, 144

were read on this motion to/for       ORDER OF ATTACHMENT .

The following e-filed documents, listed by NYSCEF document number (Motion 008) 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 146, 147, 148, 149, 150, 151, 152, 153, 154, 155, 156, 157, 158, 159

were read on this motion to/for     AMEND CAPTION/PLEADINGS .

This is a fraudulent conveyance action.[1]  Fred Goodstein and Michelle Goodstein

(plaintiffs) were previously awarded two money judgments on default in 2011 and 2013 in

Supreme Court, Nassau County, against nonparties Maurice Enbar (Maurice, also known as

Moshe) and Steven Kamhi, the latter also as guarantor, based on breach of contract (_see_ NY St

---

[1] This Court refers to its full recitation of the alleged facts and procedural background, set forth in its decision and order dated March 16, 2017 (_see_ NYSCEF Doc No. 64, _Fred Goodstein et al. v Adam Enbar, et al.,_ Sup Ct, NY County, Mar. 16, 2017, Freed, J., Index No. 654114/2016 [decision and order of March 2017], at 9-10).

**654114/2016  GOODSTEIN, FRED vs. ENBAR, ADAM**
Motion No.  003 004 008

**Page 1 of 28**

1 of 28

RECEIVED NYSCEF: 11/07/2019

Cts Elec Filing [NYSCEF] Doc No. 135, judgments). The 2013 default judgment,[2] which pierced the corporate veil, was based on claims that Maurice, father of defendant Adam Enbar (Adam) and husband of defendant Linda Enbar (Linda), deposited plaintiffs' $150,000 loan and then transferred most of that amount into accounts of certain other businesses owned and controlled by him, including defendant Magnum Real Estate Services, Inc. (MRES), commingled the loaned monies with other monies and used them for personal purposes (see NYSCEF Doc No. 23, *Fred Goodstein and Michele Goodstein v Moshe Enbar a/k/a Maurice Enbar, Flatiron Equities, LLC and Magnum Real Estate Servs., Inc.*, Supreme Court, Nassau County, Index No. 16224/2011, summons and complaint, ¶¶ 37-38, 54-63). Although plaintiffs successfully won judgments in both actions, they have been unable to collect on either the 2011 or 2013 judgment.

In 2013, plaintiffs commenced an action in Supreme Court, Nassau County, alleging fraud, conversion and unjust enrichment against defendants Adam, Linda and MRES, as well as certain nonparties (see NYSCEF Doc No. 60, summons and complaint, *Fred Goodstein and Michele Goodstein v Adam Enbar, Linda Enbar, Rebecca Enbar, Steven Kamhi, Flatiron Equities LLC, Magnum Real Estate Servs. Inc., 2457 8th LLC, and 23-123rd St. LLC*, Sup Ct, Nassau County, Index No. 601224/2013 [the 2013 complaint]). The 2013 complaint alleged that the $150,000 loan made by plaintiffs to fund a particular project was transferred into the accounts of entities controlled by Maurice, including MRES, and then into accounts used by Adam, Linda, MRES, and the other entities and persons named in that action for their personal uses unrelated to the project (see NYSCEF Doc No. 60, 2013 complaint, ¶¶ 25, 39-40). In June, 2016, the Supreme Court, Nassau County dismissed the action as against Adam and Linda for

---

[2] See NYSCEF Doc No. 135, *Fred Goodstein and Michele Goodstein v Moshe Enbar a/k/a Maurice Enbar, Flatiron Equities LLC and Magnum Real Estate Services, Inc.*, Sup Ct, Nassau County, Jan. 15, 2013, Index No. 16224/2011 (2013 Maurice Enbar default judgment).

654114/2016  GOODSTEIN, FRED vs. ENBAR, ADAM
Motion No. 003 004 008

2 of 28

failure to state a cause of action and based on the running of the statute of limitations, and as against MRES and the other defendants based on res judicata (*see* NYSCEF Doc No. 61, *Fred Goodstein et al. v Adam Enbar, et al.*, Sup Ct, Nassau County, April 19, 2016, Galasso, J., Index No. 601224/2013, decision and order).

Plaintiffs commenced the instant action on August 4, 2016, alleging eight causes of action sounding in fraudulent conveyance brought under various sections of New York's Debtor and Creditor Law (*see* NYSCEF Doc No. 136, summons and complaint). The complaint alleges that defendants were aware "at all relevant times" that plaintiffs have a money judgment against Maurice, MRES, and other nonparty entities owned or controlled by Maurice, but intentionally caused the monies due and owing to plaintiffs under the terms of the promissory note to be shifted among various family members and entities within Maurice's control, so as to render the judgment debtors insolvent and the funds out of the control of Maurice and other judgment debtors (*see* NYSCEF Doc No. 136, summons and complaint, ¶¶ 37, 39). As part of this scheme, after plaintiffs commenced their earlier actions, Maurice had, unbeknownst to plaintiffs, created defendant Magnum Realty Holdings, LLC (Magnum Holdings), and, at or about the time a judgment was entered against Maurice and MRES in January 2013, Maurice and MRES had transferred most of the corporation's assets into Magnum Holdings, effectively rendering MRES insolvent (*see* NYSCEF Doc No. 136, summons and complaint, ¶¶ 44-45, 50; 89-90). Plaintiffs now seek to have the fraudulent transfers voided and to collect $ 212,637.75, representing the judgment awarded on default, plus interest, paid by defendants jointly and severally.

654114/2016  GOODSTEIN, FRED vs. ENBAR, ADAM
Motion No. 003 004 008

Page 3 of 28

3 of 28

INDEX NO. 654114/2016
RECEIVED NYSCEF: 11/07/2019

### *The Bankruptcy Proceeding*

On August 16, 2016, 12 days after the commencement of this action, Maurice filed for chapter 7 bankruptcy in U.S. Bankruptcy Court for the Southern District of Florida under the name Moshe Enbar (*see* NYSCEF Doc No. 149, *Matter of Moshe Enbar*, US BR Ct, SD FL, 16-21262-BKC-AJC, Cristol, J., 2017 [hereinafter Bankruptcy Proceeding]). Plaintiffs filed an adversary proceeding as creditors of Maurice/Moshe Enbar (*see* NYSCEF Doc No. 142, memorandum of law in support at 6).

On August 3, 2017, Maurice entered into a stipulation settling the proceeding (the Stipulation) along with Linda, Adam and the daughter of Linda and Maurice, Melissa Benzel (Melissa), as settling parties, and the trustee of the bankruptcy estate (*see* NYSCEF Doc No. 150, Bankruptcy Proceeding, motion to approve stipulation to compromise controversy, appended Stipulation at court-stamped pages 1 of 21; 9 of 21). As relevant here, the Stipulation specifically indicated that the trustee "found no evidence that … [Maurice] had transferred . . . or concealed, or permitted to be transferred . . . or concealed property …, *within one year before the date of the filing of the petition*" (NYSCEF Doc No. 150, Bankruptcy Proceeding, Stipulation at court-stamped page 9 of 21 [emphasis added]). The trustee had "investigated transactions related to" three particular residential properties owned by Maurice and Linda, and "investigated any transactions regarding the following trusts, which may or may not exist – Lawrence Enbar Trust, Linda Enbar Trust, Adam Enbar Trust, Melissa Benzel Trust" (*see* NYSCEF Doc No. 150, Bankruptcy Proceeding, Stipulation at court-stamped page 10 of 21). The trustee also "evaluated" MRES, among other entities, and "investigated" Magnum Holdings (NYSCEF Doc No. 150, Bankruptcy Proceeding, Stipulation at court-stamped page 2 of 21). The trustee found that Maurice "ha[d] not failed to explain satisfactorily any loss of assets or deficiency of assets to

654114/2016  GOODSTEIN, FRED vs. ENBAR, ADAM
Motion No. 003 004 008

Page 4 of 28

4 of 28

meet [his] liabilities" (see NYSCEF Doc. No. 150, Bankruptcy Proceeding, Stipulation at court-stamped page 10 of 21). The trustee agreed to accept $15,000 from the settling parties in "full satisfaction" of all "fully disclosed claims and assets in the bankruptcy case" and the settling parties were, upon payment, to be released "of any and all causes of action vested in the estate by operation of State or federal law" (NYSCEF Doc No. 150, Bankruptcy Proceeding, Stipulation at court-stamped page 10 of 21, ¶¶ 2, 3 [a]).

The Bankruptcy Court's order granting the trustee's motion, dated September 20, 2017, incorporated the Stipulation (see NYSCEF Doc No. 154, Bankruptcy Proceeding, order granting trustee's motion). The order required Maurice to pay $15,000 to the trustee, at which point "the Settling Parties shall be released of any and all causes of action vested in the estate by operation of State or federal law" (NYSCEF Doc No. 154, Bankruptcy Proceeding, order granting trustee's motion, ¶¶ 2, 4). [3] The Bankruptcy Court specifically provided that "[t]he Stipulation shall be binding only upon and inure to the benefit of the Parties hereto and their respective successors and assigns . . . *[and] shall not be binding on any creditors, or otherwise affect the rights of any creditors, of the Estate*" (NYSCEF Doc No. 154, Bankruptcy Proceeding, order granting trustee's motion, ¶ 10 [emphasis added]).

On January 31, 2019, the Bankruptcy Court's final decree was vacated and the proceeding reopened based on the existence of a complaint "currently pending resolution" (*see* NYSCEF Doc No. 152, Bankruptcy Proceeding, order vacating final decree and reopening case). It appears the proceeding remains open. As set forth below, defendants maintain that the

---

[3] Plaintiffs had asserted a claim of $ 281,270.22 against Maurice Enbar in the Bankruptcy Proceeding; they were awarded $ 829.53 from the bankruptcy estate (*see* NYSCEF Doc No. 151, Bankruptcy Proceeding, Chapter 7 Trustee's final account and distribution report certification, court-stamped page 4 of 10; *see also* court-stamped pages 8 of 10, 9 of 10).

**654114/2016   GOODSTEIN, FRED vs. ENBAR, ADAM**
**Motion No.  003 004 008**

**Page 5 of 28**

5 of 28

INDEX NO. 654114/2016
NYSCEF DOC. NO. 160                                                    RECEIVED NYSCEF: 11/07/2019

motions, and this action, must be stayed in their entirety until the Bankruptcy Proceeding is resolved, whereas plaintiffs argue that the bankruptcy stay has no relevance to their claims.

### ***Procedural History***

This Court previously granted plaintiffs' motion seeking a preliminary injunction to prevent Magnum Holdings from in any manner withdrawing or transferring funds, or from creating any new entity to operate its business, but denied, without prejudice, plaintiffs' motion seeking an order of attachment on Magnum Holdings' bank accounts (*see* NYSCEF Doc No. 64, decision and order of March 2017). Magnum Holdings' motion to remove the restraint on its escrow account was denied as moot (*see* Doc No. 64, decision and order of March 2017). More recently, this Court granted Casa Property Management LLC (Casa) leave to intervene as a third-party plaintiff but denied its request to remove the freeze on Magnum Holdings' escrow account to the extent that the funds owed to Casa be released (see NYSCEF Doc No. 122, *Fred Goodstein et al. v Adam Enbar, et al.,* Sup. Court, NY County, Nov. 5, 2018, Freed, J, Index No. 654114/2016, decision and order). However, as Casa has never purchased a third-party index number as directed by this Court, it has never properly instituted its third-party action (see NYSCEF Doc No. 122, decision at 4-6).

Defendants Adam, Linda and MRES now move (motion sequence 003) to dismiss the complaint as against them. In motion sequence 004, plaintiffs move for an order of attachment on two bank accounts belonging to defendant Magnum Holdings. In motion sequence 008, plaintiffs move for leave to amend their complaint to add Melissa as a defendant, as well as four additional causes of action sounding in fraudulent conveyance and one claim of conspiracy to commit fraud. For the reasons set forth below, plaintiffs' motion to amend the complaint is

**654114/2016  GOODSTEIN, FRED vs. ENBAR, ADAM**                              **Page 6 of 28**
**Motion No.  003 004 008**

6 of 28

NYSCEF DOC. NO. 160

granted to the extent indicated; defendants' motion to dismiss is denied, and the motion for attachment is granted.

### *Defendants' Motion to Dismiss (Motion Sequence No. 003)*

Defendants move to dismiss the complaint as against MRES based on the doctrine of res judicata (CPLR 3211 [a] [5]). They argue that this is the fourth litigation related to the same loan transaction, and the third against MRES (*see* NYSCEF Doc No. 62, memorandum of law in support at 6). They contend that plaintiffs are merely offering "alternative theories" and attempting to "recover the same relief arising out of the same loan transactions as detailed in the 2010 and 2011 actions against [MRES,] against whom they have a judgment" (NYSCEF Doc No. 62, memorandum of law in support at 5-6, citing *Pauk v Board of Trustees of City Univ. of N.Y.*, 111 AD2d 17, 19 [1st Dept 1985], *affd* 68 NY2d 702 [1986]).

As to defendants Adam and Linda, defendants argue that the first, third, and fifth causes of action, alleging fraudulent conveyance under Debtor and Creditor Law §§ 276, 276-a, 277, 278 and/or 279, fail to state a cause of action (*see* NYSCEF Doc No. 62, memorandum of law in support at 6-7). They argue that the complaint does not sufficiently allege the particulars of what was conveyed and when, and that a claim of fraudulent conveyance brought under Debtor and Creditor Law § 276 requires specificity and proof that the conveyance was made with intent to defraud (*see* NYSCEF Doc No. 62 at 7, 8). In particular, they contend there are no allegations that Adam or Linda were the transferees of the transfers, given that the funds were transferred into the corporate accounts of entities against whom plaintiffs already have judgments (*see* NYSCEF Doc No. 62 at 9-10, citing *Gallant v Kanterman*, 198 AD2d 76, 80 [1st Dept 1993]), and the complaint does not allege that either Adam or Linda had dominion and control over the

654114/2016  GOODSTEIN, FRED vs. ENBAR, ADAM
Motion No.  003 004 008

Page 7 of 28

INDEX NO. 654114/2016
NYSCEF DOC. NO. 160                                    RECEIVED NYSCEF: 11/07/2019

funds or that they benefitted from the conveyances (*see* NYSCEF Doc No. 62 at 10, citing *Federal Deposit Ins. Corp. v Porco*, 75 NY2d 840, 842 [1990]; *Estate of Shefner v De La Beraudiere*, 127 AD3d 442 [1st Dept 2015]). They further maintain that there is no cause of action for aiding and abetting a fraudulent conveyance and that merely providing assistance to an alleged transferee does not give rise to such a claim (*see* NYSCEF Doc No. 62 at 10, citing *Federal Deposit Ins. Corp. v Porco*, 75 NY2d 840).

Defendants also argue that the second and fourth causes of action against Adam and Linda, alleging "undiscovered fraudulent transactions" do not and cannot allege particularized facts to support a claim of fraud (*see* NYSCEF Doc No. 62 at 10-11). They also argue that the other sections of the Debtor and Creditor Law cited in the complaint are inapplicable: section 276-a merely provides for attorneys' fees; section 277 pertains to fraudulent conveyance of partnership property "which appears to be wholly inapplicable here," and sections 278 and 279 address rights of creditors whose claims have either matured or not matured which, they maintain, are also of no relevance (*see* NYSCEF Doc No. 62 at 7 and n 1).

In opposition, plaintiffs first argue that the doctrine of res judicata is not implicated because they are not relitigating the issue of the loan itself or MRES's liability for the loan, which were established by the previous judgment (*see* NYSCEF Doc No. 66, memorandum of law in opposition at 5-6). They seek to hold MRES liable for fraudulently conveying funds that it knew were transferred into and from its account "for the sole purpose of avoiding liability on the loan and subsequently on the debts and judgments due to [p]laintiffs" (NYSCEF Doc No. 66 at 5-6). Additionally, res judicata does not apply when, as here, a complaint alleges fraudulent acts that occurred subsequent to the commencement of a plaintiff's original claim (*see* NYSCEF Doc No. 66 at 6, citing *Maharaj v Bankamerica Corp.*, 128 F3d 94, 97 [2d Cir 1997] [res

654114/2016  GOODSTEIN, FRED vs. ENBAR, ADAM
Motion No.  003 004 008

Page 8 of 28

8 of 28

NYSCEF DOC. NO. 160

INDEX NO. 654114/2016
RECEIVED NYSCEF: 11/07/2019

judicata "generally does not come into play" where the second action concerns a transaction that occurred after commencement of the prior litigation]).

Plaintiffs also argue that the claims against Adam and Linda adequately pleaded violations of the Debtor and Creditor Law (see NYSCEF Doc No. 66 at 7). The complaint alleges that the series of transactions made by defendants after plaintiffs commenced their original action against Maurice resulted in the insolvency of Maurice and other entities controlled by him (see NYSCEF Doc No. 66 at 9; Doc No. 136, summons and complaint, ¶¶ 37-39). They further assert that the complaint alleges sufficient facts – "badges of fraud" – to demonstrate fraudulent intent, including a close relationship among the parties to the alleged fraudulent transactions; a questionable transfer not in the usual course of business; inadequacy of consideration; the transferor's knowledge of the creditors' claim; and retention of control of the property by the transferor after the conveyance (see NYSCEF Doc No. 66, memorandum of law in opposition at 8-9, citing *Wall St. Assoc. v Brodsky*, 257 AD2d 526, 529 [1st Dept 1999]). They have shown through bank records, a series of individual transactions by and among defendants, made without consideration, within days of each other, which were allegedly made for the purpose of assisting Maurice and his entities to evade enforcement of the judgment against them. They point out that their evidence was sufficient for this court to have issued a preliminary injunction based on a finding that they were likely to succeed on the merits of their claims that the transfers were fraudulent (see NYSCEF Doc No. 66, memorandum of law in opposition at 9, citing Doc No. 64, decision and order of March 2017 at 3-4).

**654114/2016  GOODSTEIN, FRED vs. ENBAR, ADAM**
**Motion No.  003 004 008**

**Page 9 of 28**

9 of 28

## *Motion for an Attachment (Motion Sequence No. 004)*

Plaintiffs now move, pursuant to CPLR 6201 (motion sequence 004), for an order of

attachment on two bank accounts belonging to Magnum Holdings. As noted above, this Court

previously denied, without prejudice, plaintiffs' motion for an order of attachment because,

while their application "[was] meritorious in substance, ... it [was] defective in form, since

[plaintiffs] fail[ed] to submit an affidavit in support of their application, in contravention of

CPLR 6212 (a)" (NYSCEF Doc No. 64, decision and order of March 2107 at 9-10).

Plaintiffs' motion papers now include an affidavit by plaintiff Fred Goodstein (*see*

NYSCEF Doc No. 144, corrected affidavit of Fred Goodstein [Goodstein affidavit]),[4] in addition

to the bank records and other documentation previously provided to establish their need for, and

entitlement to, an attachment. The Goodstein affidavit recites the alleged facts as contained in

plaintiffs' complaint, including that only after plaintiffs attempted to enforce the default

judgments did they learn that Maurice had created Magnum Holdings and that MRES had

"started slowly draining the funds out of its ... [b]ank [a]ccount" and into Magnum Holdings,

resulting in MRES no longer having adequate funds by the time the Nassau County judgment

was entered (NYSCEF Doc No. 144, Goodstein affidavit, ¶¶ 30-32). Plaintiffs learned that

Magnum Holdings shares the same New York State Department of State address and business

office as those of MRES, operates the same type of business as MRES, that both Magnum

Holdings and MRES share the same residence address for their bank accounts, and that both

Maurice and Linda are signatories on Magnum Holdings' bank account (*see* NYSCEF Doc No.

144, ¶ 29). Goodstein avers that plaintiffs' claims of fraudulent conveyance made in an attempt

---

[4] The Goodstein affidavit was initially filed as NYSCEF Doc No. 74, and refiled as Doc No. 144, apparently in order to correct the omission of page 4 from the initial filing, and to redact bank account numbers in adherence with current court rules.

**654114/2016 GOODSTEIN, FRED vs. ENBAR, ADAM**
**Motion No. 003 004 008**

**Page 10 of 28**

NYSCEF DOC. NO. 160

to thwart enforcement of the judgments against Maurice Enbar, will likely succeed on the merits, and that to his knowledge, defendants have no counterclaims and that "[t]he amount demanded from the defendants therefore exceeds all counterclaims known to us" (*see* NYSCEF Doc No. 144, ¶ 41; CPLR 6212 [a]). Defendants do not oppose the motion.

### *Motion to Amend (Motion Sequence No. 008)*

Plaintiffs also seek leave to amend their complaint (motion sequence 008) to add Melissa, daughter of Linda and Maurice, as a necessary party (*see* NYSCEF Doc No. 142, memorandum of law in support at 11-13; *see* CPLR 3025 [b]; 1003), as well as four causes of action sounding in fraudulent conveyance of two pieces of real property as against Linda, Adam and Melissa individually and as co-trustees of the Linda Enbar Asset Trust and Enbar Lawrence Trust, and one cause of action of conspiracy to defraud as against all defendants (*see* NYSCEF Doc No. 155, proposed amended complaint, ¶¶ 125-182). These claims arise from Linda's 2017 testimony before the bankruptcy trustee in the Bankruptcy Proceeding (*see* NYSCEF Doc No. 142, memorandum of law in support at 6-7; Doc No. 139, Bankruptcy Proceeding, Rule 2004 Examination of Linda Enbar, 02/28/2017 [Linda Enbar Examination]).

Plaintiffs note that Linda testified that she and her husband Maurice "quitclaimed: (a) the property they live in in Florida, (b) an apartment in New York and (c) a house in New York to a Trust for the benefit of Linda" and later "quitclaimed the deeds from Linda's Trust into a Trust for the benefit of Adam and Melissa," and that tenants living in the New York home pay rent to the trust benefitting Adam and Melissa (NYSCEF Doc No. 142, memorandum of law in support at 6-7, citing NYSCEF Doc No. 139, Linda Enbar Examination at 28-37).

**654114/2016  GOODSTEIN, FRED vs. ENBAR, ADAM**
**Motion No.  003 004 008**

**Page 11 of 28**

11 of 28

The proposed amended complaint alleges that the Florida property (Turnberry), originally owned by Maurice and Linda, was conveyed solely to Linda in June 2009 (*see* NYSCEF Doc No. 155, proposed amended complaint, ¶ 62). After judgment was entered against Maurice and MRES in Supreme Court, Nassau County on January 15, 2013, but before plaintiffs asserted a lien against the judgment, Linda formed the Linda Enbar Asset Trust, naming Adam and Melissa as co-trustees, and, on June 11, 2013, she transferred Turnberry to the trust by quitclaim deed for consideration of $10.00 (*see* NYSCEF Doc No. 155, ¶¶ 63-64; 150-151). The proposed amended complaint further alleges that Maurice owned 345 Broadway from May 29, 1998 until February 21, 2014, on which date he and Linda executed a quitclaim deed transferring 345 Broadway to the Linda Enbar Asset Trust (*see* NYSCEF Doc No. 155, ¶¶ 164, 167). Subsequently, Adam and Melissa formed the Enbar Lawrence Trust on April 27, 2015, and on or about May 20, 2015, the Linda Enbar Asset Trust conveyed 345 Broadway to the Enbar Lawrence Trust by quitclaim deed for consideration of $10.00 (*see* Doc No. 155, ¶¶ 60-61; 168-169). The proposed amended complaint alleges that the transfers were made with the knowledge of all defendants of the pending actions and judgments against Maurice, and made with actual intent to hinder, evade or defraud plaintiffs so that they could not collect their judgment, knowing that the transfers would leave Maurice and the other judgment debtors with insufficient assets to satisfy plaintiffs' judgment (*see* NYSCEF Doc No. 155, ¶¶ 154-156, 170-172). Further, alleged plaintiffs, "[a]t all relevant times," Maurice, Linda, Adam and Melissa "have continued to enjoy the use of [Turnberry] and [345 Broadway]; residing from time-to-time at [Turnberry], and collecting rents from 345 Broadway" (NYSCEF Doc No. 155, ¶ 65).

Only Adam opposes the motion (*see* NYSCEF Doc No. 147, memorandum in opposition). He argues, *inter alia*, that plaintiffs' claims are barred because, under Bankruptcy

INDEX NO. 654114/2016
NYSCEF DOC. NO. 160
RECEIVED NYSCEF: 11/07/2019

Code § 544 (b), the bankruptcy trustee has the exclusive right to pursue claims to avoid or nullify allegedly fraudulent transfers (*see* NYSCEF Doc No. 147 at 5, citing among others, *Matter of Berg*, 376 BR 303, 312 [D Kan 2007] ["It is well-established that creditors may not vie with the bankruptcy trustee for the right to pursue fraudulent conveyance actions … [and] commencement of bankruptcy gives the trustee the right to pursue fraudulently conveyed assets *to the exclusion of all creditors*" [internal quotation marks and citation omitted]).  He emphasizes that the Stipulation specifically states that the trustee "investigated transactions related to" Turnberry and 345 Broadway, as well as transactions concerning the Lawrence Enbar Trust and the Linda Enbar Asset Trust, and settled any claims concerning them, and strenuously argues that the transfers of these properties are "precisely the subjects of Plaintiffs' proposed new causes of action" (NYSCEF Doc No. 147 at 2, 5-6, citing Doc No. 150, Bankruptcy Proceeding, motion to approve Stipulation, ¶ 12).  The Stipulation explicitly provides that the settling parties "shall be released of any and all causes of action vested in the estate by operation of State or federal law" (NYSCEF Doc No. 147, memorandum in opposition at 6, quoting Stipulation, ¶ 3).  Thus, Adam argues, because the trustee had the exclusive right to pursue fraudulent conveyance claims on behalf of Maurice Enbar's bankruptcy estate to the exclusion of all creditors, including plaintiffs, the Stipulation released all of the estate's causes of action against the children and wife of Maurice, thereby barring plaintiffs' proposed causes of action (*see* NYSCEF Doc No. 147 at 3, 6, citing *Centro Empresarial Cempresa S.A. v América Móvil, S.A.B. de C.V.* (17 NY3d 269, 276 [2011]).  Further, maintains Adam, the allegations concerning fraudulent transfers of residential real property, "have nothing to do with the subject matter of [p]laintiffs' original lawsuit against Maurice" (NYSCEF Doc No. 147 at 2).

**654114/2016  GOODSTEIN, FRED vs. ENBAR, ADAM**
**Motion No.  003 004 008**

**Page 13 of 28**

13 of 28

INDEX NO. 654114/2016
NYSCEF DOC. NO. 160                                              RECEIVED NYSCEF: 11/07/2019

Adam also argues that leave to amend must be denied because the automatic bankruptcy stay provision continues while Maurice's Bankruptcy Proceeding remains pending (*see* NYSCEF Doc No. 147, memorandum in opposition at 8, 9, quoting *Matter of Tribune Co. Fraudulent Conveyance Litigation*, 818 F3d 98, 108 [2d Cir 2016] ["When a bankruptcy action is filed, any 'action or proceeding against the debtor' is automatically stayed by Section 362 (a)"]). The stay, Adam contends, extends to third parties who are alleged to have received the fraudulent conveyance (*see* NYSCEF Doc No. 147 at 8, quoting *Matter of Tribune Co. Fraudulent Conveyance Litigation*, 818 F2d at 108 ["Although fraudulent conveyance actions are against third parties rather than a debtor, there is caselaw … stating that the automatic stay applies to such actions"]). In particular, *Matter of Colonial Realty Co.* (980 F2d 125 [2d Cir 1992]), states that a "third-party action to recover fraudulently transferred property is properly regarded as undertaken to recover a claim against the debtor and [therefore] subject to the automatic stay provision pursuant to § 362 (a) (1)" (NYSCEF Doc No. 147 at 8, 9, quoting *Matter of Colonial Realty*, 980 F2d at 131-132 [internal quotation marks and citation omitted]).

Further, Adam contends that plaintiffs' motion must be denied because plaintiffs did not provide a redlined version of the proposed amended complaint, thereby failing to comply with CPLR 3025 (b), which requires that a motion to amend a pleading must include a copy of the proposed amended pleading and "clearly show[ ] the changes or additions to be made in the pleading" (*see* NYSCEF Doc No. 147, memorandum in opposition at 9-10 citing *Dragon Head, LLC v Elkman*, 102 AD3d 552, 553 [1st Dept 2013]).

In reply, plaintiffs argue that Adam ignores the language of the Bankruptcy's Court's final order, which states that the "Stipulation of Settlement *shall not be binding on any creditors, or otherwise affect the rights of any creditors, of the Estate*" (*see* NYSCEF Doc No. 157, reply

654114/2016  GOODSTEIN, FRED vs. ENBAR, ADAM                          Page 14 of 28
Motion No. 003 004 008

14 of 28

INDEX NO. 654114/2016
RECEIVED NYSCEF: 11/07/2019

memorandum at 1, 3, quoting Doc No. 154, Bankruptcy Proceeding, order granting trustee's motion to approve, ¶ 10 [emphasis added]).  Plaintiffs maintain that, given this language, neither they nor other creditors are bound by the terms of the Stipulation between Maurice, the trustee, and non-debtor-settling parties Linda, Adam and Melissa (*see* NYSCEF Doc No. 157, reply memorandum at 3).  They further assert that their proposed amended pleadings add additional independent causes of action against the non-debtors as participants and beneficiaries of the alleged fraudulent transfers (*see* NYSCEF Doc No. 157 at 5), and that "[u]nder New York law, a creditor may recover money damages against parties who participate in the fraudulent transfer and are either transferees of the assets or beneficiaries of the conveyance" (NYSCEF Doc No. 157 at 5, quoting *RTC Mortgage Trust 1995-S/N1 v Sopher*, 171 F Supp 2d 192, 201-202 [SD NY 2001] [citations omitted]).

Plaintiffs maintain that defendants lack standing to seek the protections of the bankruptcy stay accorded to the subject debtor, i.e., Maurice (*see* NYSCEF Doc No. 157 at 4, citing *Matter of Siskin*, 231 BR 514, 517 [ED NY 1999]).  They insist that non-debtors who may be subject to litigation for transactions or events involving the debtor are not protected (*see* NYSCEF Doc No. 157 at 6, citing *Wedgeworth v Fireboard Corp.*, 706 F2d 541, 544 [5th Cir 1983]).  With respect to *Matter of Colonial Realty* (980 F2d 125), relied upon by defendants because it disallowed claims brought against third parties to the bankruptcy, plaintiffs assert that it is not relevant, citing the discussion about that case in *Securities Inv. Protection Corp. v Bernard L. Madoff Inv. Sec. LLC* (490 BR 59 [SD NY 2013], *aff'd sub nom. Picard v Fairfield Greenwich Ltd.*, 762 F3d 199 [2d Cir 2014]) (hereinafter *Madoff*) (*see* NYSCEF Doc No. 157 at 7).  *Madoff* explained that the decision in *Matter of Colonial Realty*, disallowing fraudulent conveyance claims brought against third parties to the bankruptcy action, was explicitly predicated on the derivative nature

654114/2016  GOODSTEIN, FRED vs. ENBAR, ADAM
Motion No. 003 004 008

Page 15 of 28

15 of 28

INDEX NO. 654114/2016
RECEIVED NYSCEF: 11/07/2019

of those particular claims (*see* NYSCEF Doc 157 at 7, citing *Madoff* at 67). The fraudulent conveyance action in *Madoff* was not subject to the stay because independent third-party claims against non-debtor parties are generally not subject to the automatic stay, and, as in that case, "wholly independent" of the bankrupt's estate (*see* NYSCEF Doc No. 157 at 7, quoting *Madoff* at 66-67). Plaintiffs assert that the same situation exists here and that courts are empowered to extend the automatic stay to non-debtor co-defendants only in "unusual situations" where a non-bankrupt co-defendant is not independently liable to the creditor (NYSCEF Doc No. 157 at 7-8, citing *Variable-Parameter Fixture Dev. Corp. v Morpheus Lights, Inc.*, 945 F Supp 603, 608 [SD NY 1996]).

Finally, plaintiffs argue that there is no rule requiring that a proposed amended pleading include a redlined version so as to show the changes and, in *Dragon Head, LLC v Elkman* (102 AD3d 552), cited by Adam, the Court denied a motion to amend because the movant failed to attach *any sort of amended pleading* to its motion (*see* NYSCEF Doc No. 157 at 8-9).

## LEGAL CONCLUSIONS

### Plaintiffs' Motion to Amend (Motion Sequence 008)

Courts have wide discretion in granting or denying leave to amend pleadings pursuant to CPLR 3025 (b) when there is no actual surprise or prejudice to the other side (*see Murray v City of New York*, 43 NY2d 400, 405 [1977], *lv dismissed* 12 NY3d 880 [2009]). Where there is prejudice or surprise, or where the proposed amendment is "palpably improper or insufficient as a matter of law," the motion must be denied (*see LDIR, LLC v DB Structured Prods., Inc.*, 172 AD3d 1, 4 [1st Dept 2019], internal quotation marks and citation omitted]). To conserve judicial resources, an examination of the underlying merits of the proposed causes of action is

654114/2016   GOODSTEIN, FRED vs. ENBAR, ADAM                                    Page 16 of 28
Motion No. 003 004 008

16 of 28

warranted (*see Eighth Ave. Garage Corp. v H.K.L. Realty Corp.*, 60 AD3d 404, 405 [1st Dept 2009] [citing *Murray v City of New York*, 43 NY2d 400 [1977], *lv dismissed* 12 NY3d 880 [2009]). The court should determine whether the facts as alleged in the proposed complaint "reasonably infer" the elements of the proposed causes of action (*see McGhee v Odell*, 96 AD3d 449, 450 [1st Dept 2012]). An amended complaint, when served, takes the place of the original complaint (*see Hudson Tenants Corp. v Laber*, 98 AD2d 692 [1st Dept 1983]; *see also Golia v Vieira*, 162 AD3d 864 [2d Dept 2018]).

### *Bankruptcy Stay*

Section 362 (a) (1) of the Bankruptcy Code provides, in relevant part, that upon the filing of a bankruptcy petition, any actions or proceedings that could have been, or were commenced against the debtor before the commencement of the bankruptcy proceeding, are stayed, including actions to recover a claim against the debtor that arose before the commencement of the bankruptcy proceeding (*see* 11 USC § 362 [a] [1]). The stay pertains to the debtor and concerns property of interest to the debtor's estate (*see* 11 USC § 541 [a] [1]). "'Property of the estate' is broadly defined as 'all legal or equitable interests of the debtor in property as of the commencement of the case'" (*Madoff* at 69, quoting 11 USC § 541 [a] [1]). "'In the case of both Chapter 7 and Chapter 11 petitions, [t]he purposes of the bankruptcy stay under 11 USC § 362 'are to protect the debtor's assets, provide temporary relief from creditors, and further equity of distribution among the creditors by forestalling a race to the courthouse'" (*Deutsch v Liquid Holdings Group, Inc.*, 2016 NY Slip Op 30966, 2016 WL 3917757 at *3, 2016 NY Misc LEXIS 1949 at *2-3 [Sup Ct, New York County 2016], quoting *Catholic Order of Foresters v U.S. Bancorp Piper Jaffray, Inc.*, 337 F Supp 3d 1148, 1161 [ND Iowa 2004]).

654114/2016  GOODSTEIN, FRED vs. ENBAR, ADAM
Motion No.  003 004 008

Page 17 of 28

17 of 28

INDEX NO. 654114/2016
NYSCEF DOC. NO. 160                                RECEIVED NYSCEF: 11/07/2019

In general, independent third-party claims brought against nondebtor parties are not

subject to the automatic stay (*see Madoff*, 490 BR at 66-67).  Similarly, if during a litigation

brought against two or more defendants, one of them seeks bankruptcy protection, the plaintiff

may proceed as against the nonbankrupt codefendants on claims that do not involve the

bankrupt's property; the automatic stay is not available to such parties, "'even if they are in a

similar legal or factual nexus with the debtor'" (*Croyden Assoc. v Alleco, Inc.*, 969 F2d 675, 677

[8th Cir 1992], quoting *Maritime Elec. Co. Inc. v United Jersey Bank,* 959 F2d 1194, 1205 [3d

Cir 1992]; *see also GATX Aircraft Corp. v M/V Courtney Leigh,* 768 F2d 711, 716 [5th Cir 1985]

[holding that "[b]y its terms the automatic stay applies only to the debtor, not to co-debtors under

Chapter 7 ... of the Bankruptcy Code nor to co-tort-feasors"]).

A bankruptcy court will stay proceedings against non-bankrupt co-defendants in the

"unusual situation" where "there is such identity between the debtor and the third-party

defendant that the debtor may be said to be the real party defendant and that a judgment against

the third-party defendant will in effect be a judgment or finding against the debtor" (*A.H. Robins*

*Co., Inc. v Piccinin*, 788 F2d 994, 999 [4th Cir 1986]; see *Queenie, Ltd. v Nygard Intl.*, 321 F3d

282, 287 [2d Cir 2003] ["The automatic stay can apply to non-debtors, but normally does so only

when a claim against the non-debtor will have an immediate adverse economic consequence for

the debtor's estate"]).

*Matter of Colonial Realty*, relied upon by defendants, involved involuntary bankruptcy

proceedings brought against two general partners and their partnership (the debtors) (*see Matter*

*of Colonial Realty*, 980 F2d at 127).  The partnership's failure caused thousands of investors, as

well as certain banks that had loaned money to the partners, to suffer losses (*id.*).  Sisti, one of

the partners who had defaulted on obligations he owed the banks, allegedly transferred funds to

654114/2016  GOODSTEIN, FRED vs. ENBAR, ADAM                                    Page 18 of 28
Motion No.  003 004 008

18 of 28

INDEX NO. 654114/2016
RECEIVED NYSCEF: 11/07/2019

NYSCEF DOC. NO. 160

his wife and a separate corporation (*id.*). The Federal Deposit Insurance Corporation (FDIC), appointed as the receiver of five of the former banks, brought an action against the transferees of those funds, although not against the debtors or the bankruptcy trustee, seeking to recover the funds for the benefit of the estates of the failed banks (*id.*). The FDIC's complaint alleged that Sisti was liable to it because of the loans made by the banks, and the defendants were liable as fraudulent transferees of Sisti but, because the FDIC was attempting in fact to recover a claim against Sisti, its claim against the third-party defendants was not "independent" of the claims of the bankruptcy trustee. Thus, held the court, the action had to be stayed (*id.*).

In contrast, the action at issue in the *Madoff* case was found to be wholly independent of the estate and not subject to the bankruptcy stay (*see Madoff*, 490 BR at 67). The bankruptcy trustee had claimed that the plaintiffs, who had brought suit against four investment funds created and operated by the defendants which, in turn, had invested most of the plaintiffs' money in Bernard Madoff's infamous company (BLMIS), were subject to the automatic bankruptcy stay, citing *Matter of Colonial Realty* (980 F2d 125 at 131-32). The trustee sought "the return of certain fraudulent conveyances allegedly transferred from BLMIS" to the defendants (*id.* at 64-65) and argued that "a third-party action to recover fraudulently transferred property is properly regarded as undertaken 'to recover a claim against the debtor'" (*Madoff* at 67 [internal quotation marks and citation omitted]). The *Madoff* court ruled that the proposed settlement between the plaintiffs and the defendants-funds did not violate the automatic stay; plaintiffs' claims, including breaches of fiduciary duty, and the Martin Act, were "separate and distinct" from the claims of the BLMIS estate and not the property of the BLMIS estate (*Madoff* at 66). Nor were the plaintiffs "direct 'customers'" of BLMIS and thus creditors of the BLMIS estate who could recover through the trustee's action (*Madoff* at 65-66). *Madoff* explained that where, as here "the

**654114/2016  GOODSTEIN, FRED vs. ENBAR, ADAM**
**Motion No. 003 004 008**

**Page 19 of 28**

19 of 28

non-debtor's liability rests upon his own breach of duty, a stay clearly cannot be extended to the non-debtor" (*id.* at 68, quoting *Variable-Parameter Fixture Dev. Corp.*, 945 F Supp at 608 [internal quotation marks omitted] [holding that even where the debtor and non-debtors are joint tortfeasors, § 362 (a) (1) does not bar claims where "the non-debtor's liability rests upon his own breach of duty"]).

This Court is not persuaded that plaintiffs' original claims against Maurice are so intertwined with the current claims that the automatic stay in the Bankruptcy Proceeding encompasses this action.[5] An action claiming breach of contract and conversion as against one party is quite different from a suit alleging the fraudulent transfer of assets to and among the settling parties of a bankruptcy proceeding and other nonparty entities. Here, as in *Madoff*, "the non-debtor's liability rests upon [their] own breach of duty," namely the alleged fraudulent transfers of funds now held in the bank accounts of Magnum Realty, and by Linda to family trusts for the benefit of the family, and the bankruptcy stay is not at issue (*Madoff* at 68). Notably, the trustee specifically stated that he had found no evidence that Maurice had transferred or concealed property *"within one year* before the date of the filing of the petition" (NYSCEF Doc No. 150, Bankruptcy Proceeding, motion to approve Stipulation, ¶ 8 [emphasis added]), and although the trustee investigated "transactions" related to Turnberry and 345 Broadway, and the Laura Enbar Asset Trust and the "Lawrence Enbar Trust" (see NYSCEF Doc No. 150, Bankruptcy Proceeding, motion to approve Stipulation, ¶ 12), it is unclear whether the "Lawrence Enbar Trust" examined by the trustee is the "Enbar Lawrence Trust," identified throughout plaintiffs' papers as allegedly consisting of both pieces of real property.

---

[5] Defendants never previously sought a stay, and this Court has entertained and decided several motions during the time the Bankruptcy Proceeding has been pending without such a request.

654114/2016  GOODSTEIN, FRED vs. ENBAR, ADAM
Motion No.  003 004 008

Page 20 of 28

20 of 28

NYSCEF DOC. NO. 160

INDEX NO. 654114/2016

RECEIVED NYSCEF: 11/07/2019

### *Debtor-Creditor Law*

In the complaint and amended complaint, plaintiffs set forth causes of action under New York's Debtor and Creditor Law. Section 276 provides that "[e]very conveyance made and every obligation incurred with *actual intent* … , to hinder, delay or defraud either present or future creditors, is fraudulent as to both present and future creditors" (Debtor and Creditor Law § 276 [emphasis added]). Section 276-a provides an award of reasonable attorneys' fees where the creditor successfully recovers a judgment from the debtor. Section 277 addresses fraudulent conveyances of partnership property that render the partnership insolvent (Debtor and Creditor Law § 277 [a], [b]). Section 278 of the Debtor and Creditor Law provides that a creditor whose rights have matured may set aside a fraudulent conveyance as to the creditor (Debtor and Creditor Law § 278), and section 279 addresses relief for creditors whose claims have not matured (Debtor and Creditor Law § 279).

"The elements of a cause of action for fraud require a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages" (*Eurycleia Partners, LP v Seward & Kissel, LLP*, 12 NY3d 553, 559 [2009]). "A claim rooted in fraud must be pleaded with the requisite particularity under CPLR 3016 (b)" (*id.*). The complaint must "allege the basic facts to establish the elements of the cause of action" (*id.*, internal quotation marks and citation omitted). A claim is sufficiently pleaded under CPLR 3016 (b), "when the facts suffice to permit a 'reasonable inference' of the alleged misconduct" (*id.* at 559, quoting *Pludeman v Northern Leasing Sys., Inc.*, 10 NY3d 486, 492 [2008]). "'[I]n certain cases, less than plainly observable facts may be supplemented by the circumstances surrounding the alleged fraud'" (*Eurycleia* at 559, quoting *Pludeman* at 493).

**654114/2016  GOODSTEIN, FRED vs. ENBAR, ADAM**
**Motion No. 003 004 008**

**Page 21 of 28**

21 of 28

NYSCEF DOC. NO. 160

INDEX NO. 654114/2016
RECEIVED NYSCEF: 11/07/2019

This Court finds that the proposed amendments to the first and third causes of action alleging fraudulent conveyance as against Adam and Linda, sufficiently satisfy the pleading requirements of CPLR 3016 (b), as do the proposed ninth, tenth, eleventh and twelfth causes of action concerning the separate conveyances of Turnberry and 345 Broadway, originally owned by Linda and Maurice, and then by Linda alone.  The causes of action sufficiently allege that the transfers were made with the ongoing knowledge of the judgment owed to plaintiffs, and made in order to hide the assets of the properties, for the benefit of defendants, with the intent to defraud plaintiffs.  The particulars of the fraudulent conveyance claims – from the cycling of the original loan monies through various accounts without consideration and their placement in a new and seemingly identical entity to the one known by plaintiffs to have housed the monies, to the transfer of ownership interests in two real properties from Maurice and Linda, to Linda and then into various trusts and now as property of the Enbar Lawrence Trust – are pleaded in sufficient detail to satisfy the heightened particularity requirement of CPLR 3016 (b) (*see Marine Midland Bank v Zurich Ins. Co.*, 263 AD2d 382, 382-383 [1st Dept 1999] [finding the complaint complied with CPLR 3016 (b) where it alleged the overall fraudulent scheme in detail, and stating that "fraudulent intent is fairly inferred from such details"]).

The amended complaint alleges the dates or timeframe when the transactions occurred with sufficient specificity.  The proposed complaint details the property's transfer from one defendant to another, with the knowledge that plaintiffs were attempting to enforce their judgment, and the intent to protect and hide these assets.

As this Court discussed in its previous decision addressing plaintiffs' motion for an attachment, the complaint, and now the proposed amended complaint, allege sufficient "badges of fraud" that strongly suggest that the conveyances were made with intent to defraud, and

**654114/2016  GOODSTEIN, FRED vs. ENBAR, ADAM**
**Motion No.  003 004 008**

**Page 22 of 28**

22 of 28

INDEX NO. 654114/2016
RECEIVED NYSCEF: 11/07/2019

NYSCEF DOC. NO. 160

satisfy the requirements under Debtor and Creditor Law § 276 for specificity and proof that the conveyance was made with intent to defraud (*see* NYSCEF Doc No. 64, decision and order of March 2017 at 8-9). The claims allege not only that Adam, Linda and Melissa, were transferees of certain assets, but that they benefitted from the conveyances because of their ability to live in and use, or collect rents from, the properties (*see Wall St. Assoc. v Brodsky*, 257 AD2d 526, 529 [1st Dept 1999]).

However, the proposed amended complaint does not sufficiently allege "undiscovered fraudulent transactions" as against Adam and Linda because there are no particularized facts alleged to support these claims. Accordingly, the second and fourth causes of action are dismissed in their entirety, because while the standard of review is "much less exacting" than that applied on a motion seeking summary judgment (*see James v R & G Hacking Corp.*, 39 AD3d 385, 386 [1st Dept 2007]), where the court finds that a proposed claim or claims are not viable, it may properly deny leave to amend (*see Lau v Human Resources Admin.*, 168 AD3d 565, 566 [1st Dept 2019]).

Similarly, there are no factual allegations to support the claim that plaintiffs have unmatured claims, unsecured or otherwise, pursuant to Debtor and Creditor Law § 279. Therefore, the claims based on section 279 in the 1st through 5th, 7th, and 9th through 12th causes of action in the proposed amended complaint are dismissed without prejudice.

The proposed amended complaint asserts a new cause of action of conspiracy against all defendants. "'[A]llegations of conspiracy are permitted only to connect the actions of separate defendants with an otherwise actionable tort'" (*Abacus Fed. Sav. Bank v Lim*, 75 AD3d 472, 474 [1st Dept 2010], quoting *Alexander & Alexander of N.Y. v Fritzen*, 68 NY2d 968, 969 [1986]). A claim of conspiracy "stands or falls with the underlying tort" (*Abacus* at 474, quoting *Romano*

654114/2016  GOODSTEIN, FRED vs. ENBAR, ADAM
Motion No. 003 004 008

Page 23 of 28

23 of 28

INDEX NO. 654114/2016
NYSCEF DOC. NO. 160                                                    RECEIVED NYSCEF: 11/07/2019

v *Romano*, 2 AD3d 430, 432 [2d Dept 2003]).  In order to establish a claim of civil conspiracy, the plaintiff "must demonstrate the primary tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury" (*Abacus Fed. Sav. Bank,* 75 AD3d at 474, internal quotation marks and citation omitted]).   The proposed amended complaint sufficiently alleges all four elements of a claim of conspiracy and, thus, sufficiently alleges a claim of conspiracy against defendants to engage in fraudulent conveyance of monies owed to plaintiffs.

Finally, the proposed amended complaint is based on facts and documents within the defendants' knowledge and possession, and this Court finds that granting the amendment does not prejudice defendants (*see Jacobson v Croman*, 107 AD3d 644, 646 [1st Dept 2013]).  The motion papers are not defective.  Plaintiffs included a copy of the proposed amended pleading as part of their motion and their attorney showed proof that copies, including a redlined version of the proposed amended complaint, were sent to defendants in July 2018, prior to the filing of the motion. Further, the proposed amendments are meritorious to the extent stated above (*compare Drice v Queens County Dist. Attorney*, 136 AD3d 665, 666 [2d Dept 2016] [motion denied where the plaintiff failed to provide a copy of its proposed amended complaint and the proposed amendments were "palpably insufficient or patently devoid of merit"]).

Given that this Court grants plaintiffs' motion to amend their complaint, there is no need to directly address defendants' motion to dismiss the original complaint (motion sequence 003).

**654114/2016  GOODSTEIN, FRED vs. ENBAR, ADAM**
**Motion No.  003 004 008**                                                    **Page 24 of 28**

24 of 28

INDEX NO. 654114/2016
NYSCEF DOC. NO. 160                                              RECEIVED NYSCEF: 11/07/2019

### *Res Judicata*

"The doctrine of res judicata, frequently referred to as 'claim preclusion', provides that 'as to the parties in a litigation and those in privity with them, a judgment on the merits by a court of competent jurisdiction is conclusive of the issues of fact and questions of law necessarily decided therein in any subsequent action'"

(*Singleton Mgt. v Compere*, 243 AD2d 213, 215 [1st Dept 1998], quoting *Gramatan Home Invs. Corp. v Lopez*, 46 NY2d 481, 485 [1979]).

Plaintiffs persuasively argue that the doctrine is not applicable, because the allegations in their complaint, as well as in the proposed amended complaint, concern the transfer and intentional hiding of funds by defendants that were either unknown to plaintiffs at the time they filed their original action, or had not yet occurred.

### **Plaintiffs' Motion for an Attachment (Motion Sequence 004)**

Attachment is a provisional remedy that gives a pre-judgment creditor the ability to secure a defendant's property pending the entry of a judgment (*see Hotel 71 Mezz Lender LLC v Falor*, 14 NY3d 303, 310 [2010]; *see* CPLR art. 62). The decision to grant a motion for attachment rests within the discretion of the court (*see Morgenthau v Avion Resources Ltd.,* 11 NY3d 383, 387 [2008]). A plaintiff must establish that it has stated a claim for a money judgment; has a probability of success on the merits; satisfies one of the five attachment grounds listed in CPLR 6201; and that the amount demanded is greater than the amount of all counterclaims known to the plaintiff (*see Ford Motor Credit Co. v Hickey Ford Sales*, 62 NY2d 291, 301 [1984]). The right to attach fraudulently transferred property is codified in Debtor and Creditor Law § 278 [1] [ b]).

Plaintiffs seek to attach the contents of two specific New York bank accounts belonging to Magnum Holdings (*see* NYSCEF Doc No. 70, Peterson affirmation in support of motion).

**654114/2016  GOODSTEIN, FRED vs. ENBAR, ADAM**                                    **Page 25 of 28**
**Motion No.  003 004 008**

25 of 28

NYSCEF DOC. NO. 160

INDEX NO. 654114/2016
RECEIVED NYSCEF: 11/07/2019

They contend that attachment is needed because defendants, "with intent to defraud" or to "frustrate the enforcement of a judgment [ ] rendered in the plaintiff[s'] favor … [have] assigned, disposed of, encumbered, or secreted property … or [are] about to do any of those acts" (*see* CPLR 6201 [3]).  They demonstrate that there is a real risk, based on the financial position and past conduct of Magnum Holdings and of Maurice, as well as Linda, Adam and Melissa, that defendants "will not be able to satisfy the judgment" (*see VisionChina Media Inc. v Shareholder Representative Servs., LLC*, 109 AD3d 49, 60 [1st Dept 2013]).  Also relevant here is plaintiffs' showing that most of the defendants have numerous judgment liens against them for failure to pay creditors, that Maurice filed for bankruptcy, and that defendants have demonstrated a history of attempts to hide financial assets.

This Court has previously addressed the merits of plaintiffs' motion for an attachment, which was denied for procedural reasons (*see* NYSCEF Doc No. 64, decision and order of March 2017).  Plaintiffs now provide an affidavit by Fred Goodstein, as required by CPLR 6212 (a), in which he sets forth the factual allegations and "badges of fraud" that, together with the documents included with the motion, sufficiently demonstrate that plaintiffs have a viable cause of action, that it is probable they will succeed on the merits, and that one or more grounds exist for attachment (*see* Doc No. 144, Fred Goodstein affidavit).

Defendants have not opposed the motion. Where a party fails to controvert a material fact, that fact may be deemed admitted (*see Kuehne & Nagel v Baiden*, 36 NY2d 539, 544 [1975]; *Madeline D'Anthony Enters., Inc. v Sokolowsky*, 101 AD3d 606, 609 [1st Dept 2012]).  Thus, plaintiffs have demonstrated their entitlement to an attachment.

Therefore, in light of the foregoing, it is hereby:

**654114/2016  GOODSTEIN, FRED vs. ENBAR, ADAM**
**Motion No. 003 004 008**

**Page 26 of 28**

26 of 28

INDEX NO. 654114/2016
NYSCEF DOC. NO. 160                                    RECEIVED NYSCEF: 11/07/2019

ORDERED that plaintiffs' motion to amend their complaint (motion sequence 008) is granted to the extent indicated above, and plaintiffs are to file and serve a second amended complaint to conform with this decision within 20 days after service on plaintiffs' attorney of a copy of this order with notice of entry; and it is further

ORDERED that upon the filing of the second amended complaint, defendant will submit an answer or file a motion to dismiss, in conformance with the CPLR; and it is further

ORDERED that defendants' motion to dismiss the complaint (motion sequence 003) is denied as academic; and it is further

ORDERED that Casa Property Management LLC, previously given permission to join as a third-party plaintiff, shall purchase a third-party index number within 10 days of entry of this decision and order; and it is further

ORDERED that the plaintiffs' motion for an order of attachment (motion sequence 004) is granted; and it is further

ORDERED that the amount to be secured by this order of attachment, inclusive of probable interest, costs and Sheriff's fees and expenses, shall be $ 242,407.02,[6] and it is further

ORDERED that the plaintiffs' undertaking is fixed in the sum of $12,120.35 for each of the five defendants, for a total of $ 72,722.11, plus $12,120.35 for the Sheriff's fee, to be paid equally by each defendant, on the condition that the plaintiffs shall pay to the defendants an amount not exceeding $10,000.00 for legal costs and damages which may be sustained by reason of the attachment, and up to and not exceeding $12,120.35 to the Sheriff for allowable fees, if the defendant recovers judgment or if it is decided that the plaintiff is not entitled to an attachment of the property of the defendant; and it is further

---

[6] This figure was calculated by taking the amount of the judgment, adding 9% estimated interest; a 5% estimated sheriff poundage fee, $300 in court fees, and $100 as a sheriff levy fee.

**654114/2016  GOODSTEIN, FRED vs. ENBAR, ADAM**                              **Page 27 of 28**
**Motion No. 003 004 008**

INDEX NO. 654114/2016
NYSCEF DOC. NO. 160                                               RECEIVED NYSCEF: 11/07/2019

ORDERED that the Sheriff of the City of New York, or the Sheriff of any County of the State of New York, shall levy within his jurisdiction, at any time before final judgment, upon such real and personal property in which the defendants have an interest and upon such debts owing to the defendants as will satisfy $ 242,407.02, the amount of plaintiffs' demand, together with probable interest, costs, and the Sheriff's fees and expenses, including the following property: any bank account of Magnum Realty Holdings LLC located in TD Bank, Westbury, Long Island, New York and, in particular, the accounts ending in 3240 and 3232, and that the Sheriff proceed herein in the manner and make his return within the time prescribed by law; and it is further

ORDERED that this constitutes the decision and order of this Court.

| 11/1/2019 | | | | | | |
|---|---|---|---|---|---|---|
| DATE | | | | KATHRYN E. FREED, J.S.C. | | |

| CHECK ONE: | | CASE DISPOSED | | [X] | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | | GRANTED | [ ] DENIED | | GRANTED IN PART | [X] | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | [ ] | REFERENCE |

654114/2016  GOODSTEIN, FRED vs. ENBAR, ADAM                              Page 28 of 28
Motion No.  003 004 008

# EXHIBIT E

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

FRED GOODSTEIN AND MICHELE GOODSTEIN,          | Index No. 654114/2016

             Plaintiffs,

    -against-

ADAM ENBAR, LINDA ENBAR, MELISSA BENZEL,
MAGNUM REALTY HOLDINGS, LLC, and MAGNUM
REAL ESTATE SERVICES, INC.,

          Defendants.

## MEMORANDUM OF LAW OF DEFENDANT MELISSA BENZEL
## IN SUPPORT OF MOTION TO DISMISS

SASSON LAW PLLC

Moshe Sasson, Esq.
1350 Broadway, Suite 212
New York, New York 10018
(212) 949-7501

*Attorneys for Defendants*
*Adam Enbar and Melissa Benzel*

Defendant Melissa Benzel respectfully submits this memorandum of law in support of her motion for an Order: (i) dismissing Plaintiffs' Second Amended Complaint in its entirety as against her pursuant to CPLR 3211(a)(1), (2), (3), (5), (7) and (8), and for failure to comply with CPLR 305(a) and 1003; (ii) dismissing the second cause of action in Plaintiffs' Second Amended Complaint in its entirety pursuant to CPLR 3211(a)(7); (iii) dismissing the claims based on Debtor and Creditor Law § 279 in the first, second, third, eighth and ninth causes of action in Plaintiffs' Second Amended Complaint pursuant to CPLR 3211(a)(7); and (iv) awarding such other and further relief as the Court deems just and proper.

## PRELIMINARY STATEMENT

Dismissal of the Second Amended Complaint as against Defendant Melissa Benzel is appropriate on a number of grounds.

First, Plaintiffs have failed to comply with the CPLR's requirements for adding a new party as a defendant and therefore the Second Amended Complaint must be dismissed against Melissa Benzel for lack of personal jurisdiction. Although Plaintiffs were granted leave to file an amended complaint pursuant to CPLR 3025, they failed to obtain the Court's permission to add Ms. Benzel as a defendant pursuant to CPLR 1003, which in itself constitutes a jurisdictional defect requiring dismissal. In addition, Plaintiffs failed to file a supplemental summons specifying the Second Amended Complaint and failed to serve such supplemental summons upon Ms. Benzel as required by CPLR 305(a), and the Court therefore lacks personal jurisdiction over her for that reason as well.

Second, the Second Amended Complaint should be dismissed with prejudice as against Melissa Benzel because the claims asserted against her are barred by the applicable statute of limitations. By Plaintiffs' own admission, the statute of limitations on their claims against Ms. Benzel expired on March 13, 2019. Because Plaintiffs failed to include a copy of a proposed

supplemental summons with their motion for leave to amend their original complaint and for leave to join Ms. Benzel as a defendant, which was filed on March 13, 2019, the filing of that motion did not toll the statute of limitations. Therefore, Plaintiffs' claims against Ms. Benzel are untimely and should be dismissed with prejudice.

Third, the Second Amended Complaint should be dismissed as against Melissa Benzel because Plaintiffs lack standing to assert the fraudulent conveyance claims contained therein. Once Maurice Enbar filed a Chapter 7 petition in bankruptcy court on August 16, 2016, standing to pursue fraudulent transfer claims against third parties as a means to recover claims against Mr. Enbar was vested solely in the bankruptcy trustee for the benefit of the bankruptcy estate as a whole, and accordingly deprived Mr. Enbar's creditors, including Plaintiffs, of standing to pursue such claims for their own individual benefit.

Fourth, the Second Amended Complaint should be dismissed as against Melissa Benzel on the further ground that the claims therein were settled by a Stipulation For Settlement entered into in Maurice Enbar's bankruptcy case.

Fifth, the second cause of action in the Second Amended Complaint, for "Undiscovered Fraudulent Conveyances," fails to state a cause of action against Melissa Benzel because (1) the second cause of action does not contain any factual allegations that support a claim against Ms. Benzel, and indeed Ms. Benzel is not even mentioned in any of the paragraphs that comprise this cause of action, and (2) the second cause is materially indistinguishable from causes of action in Plaintiffs' proposed amended complaint that the Court held were not viable and subject to dismissal for failure to state a cause of action.

Sixth, the claims in the first, second, third, eighth and ninth causes of action fail to state a cause of action to the extent they are based on Debtor and Creditor Law § 279, because there are

2

no factual allegations to support the claim that Plaintiffs have unmatured claims pursuant to § 279.

## **PROCEDURAL BACKGROUND**

On March 13, 2019, Plaintiffs filed a motion for leave to amend their original complaint pursuant to CPLR 3025(b) and for leave to add Melissa Benzel as a defendant pursuant to CPLR 1003.  (Motion Sequence 008) (NYSCEF Doc. Nos. 130-43).  Notably, Plaintiffs did <u>not</u> file a copy of a proposed supplemental summons for Melissa Benzel with their motion.  Plaintiffs' motion for leave to amend was filed while Defendants' motion to dismiss Plaintiffs' original complaint (Motion Sequence 003) was pending before the Court.

On November 7, 2019, the Court filed a decision and order addressing, <u>inter alia</u>, Motion Sequences 003 and 008 (the "November 7, 2019 Decision and Order") (NYSCEF Doc. No. 160, attached as Exhibit B to the Affirmation of Moshe Sasson, dated January 6, 2020 ("Sasson Aff.")).

In the November 7, 2019 Decision and Order, the Court, after considering the proposed amended complaint attached to Plaintiffs' motion papers, granted Plaintiffs' motion for leave to amend only in part.  The Court denied Plaintiffs leave to include claims based on "undiscovered fraudulent transactions":

> However, the proposed amended complaint does not sufficiently allege "undiscovered fraudulent transactions" as against Adam and Linda because there are no particularized facts alleged to support these claims. Accordingly, the second and fourth causes of action are dismissed in their entirety, because while the standard of review is "much less exacting" than that applied on a motion seeking summary judgment (*see James v R & G Hacking Corp.*, 39 AD3d 385, 386 [1st Dept 2007]), where the court finds that a proposed claim or claims are not viable, it may properly deny leave to amend (*see Lau v Human Resources Admin.*, 168 AD3d 565, 566 [1st Dept 2019]).

(NYSCEF Doc. No. 160 at 23).

RECEIVED NYSCEF: 01/06/202
YSCEF DOC. NO. 246

The Court also denied Plaintiffs leave to include claims based on alleged status as "a creditor whose claim has not matured" pursuant to Debtor and Creditor Law § 279:

> Similarly, there are no factual allegations to support the claim that plaintiffs have unmatured claims, unsecured or otherwise, pursuant to Debtor and Creditor Law § 279. Therefore, the claims based on section 279 in the 1st through 5th, 7th and 9th through 12th causes of action in the proposed amended complaint are dismissed without prejudice.

(Id. at 23).

In the November 7, 2019 Decision and Order, the Court did not explicitly rule on Plaintiffs' request for leave to add Melissa Benzel as a defendant, nor did the Court grant Plaintiffs leave to serve a supplemental summons on Ms. Benzel. Rather, the Court ordered that Plaintiffs "are to file and serve a second amended complaint to conform with this decision within 20 days after service on plaintiffs attorney of a copy of this order with notice of entry" and that "upon the filing of the second amended complaint, defendant will submit an answer or file a motion to dismiss, in conformance with the CPLR." (Id. at 27 (emphasis added)).

On November 26, 2019, Plaintiffs filed their Second Amended Complaint. (NYSCEF Doc. No. 172, attached as Exhibit A to Sasson Aff.). However, in blatant violation of the November 7, 2019 Decision and Order, Plaintiffs' Second Amended Complaint included (1) a cause of action for "Undiscovered Fraudulent Conveyances" (the second cause of action) that is materially indistinguishable from claims in the proposed amended complaint that the Court held were subject to dismissal in their entirety for lack of sufficient factual support, and (2) five causes of action against Melissa Benzel (and others) that include claims based on Debtor and Creditor Law § 279 (the first, second, third, eight and ninth causes of action) which are materially indistinguishable from claims that the court held were subject to dismissal for lack of sufficient factual support.

Notably, the Second Amended Complaint appeared to be identical to the 9-claim version of the proposed amended complaint filed with Plaintiffs' initial motion papers (NYSCEF Doc. No. 133), and does not correspond to the 12-claim version filed with Plaintiffs' reply papers (NYSCEF Doc. No. 155) which the Court evaluated in deciding Plaintiffs' motion to amend. (See Sasson Aff. ¶¶ 12, 15). This, even though Plaintiffs represented to the Court in their reply papers that the 9-claim version had been submitted with their original papers in "obvious" error, which Plaintiffs argued obviated their failure to provide a redline showing the differences between the 9-claim version of the proposed amended complaint and the Original Complaint. (See NYSCEF Doc. No. 157). The Court appears to have relied on Plaintiffs' representation that the 12-claim version rather than the 9-claim version was the actual operative proposed amended complaint in concluding that Plaintiffs sufficiently complied with their obligation under CPLR 3025(b) to clearly "show[] the changes or additions to be made to the pleading" despite their failure to provide a redline of the 9-claim version (See NYSCEF Doc. No. 160 at 24).

On November 26, 2019 Plaintiffs filed an attorney's affirmation of service stating that Plaintiffs' attorney mailed a copy of the Second Amended Complaint to Melissa Benzel at an address in New Jersey. (NYSCEF Doc. No. 197). Notably, the attorney's affirmation of service does not claim that any Summons was mailed to Melissa Benzel.

On December 9, 2019, Plaintiffs filed an affidavit of service stating that on December 5, 2019, Melissa Benzel was personally served in New Jersey with the Second Amended Complaint, exhibits and notice of electronic filing. (NYSCEF Doc. No. 198). Again, notably, the affidavit of service does not claim that any Summons was personally served on Melissa Benzel.

The undisputed facts demonstrate that Plaintiffs have <u>not</u> filed a supplemental summons to Melissa Benzel nor has she been served with any supplemental summons. (Affidavit of Melissa Benzel, sworn to on January 5, 2020 ("Benzel Aff.") ¶ 3).

## LEGAL STANDARD

When considering a motion to dismiss pursuant to CPLR 3211, the court must "accept the facts as alleged in the complaint as true, afford a plaintiff the benefit of every possible favorable inference, and determine only whether the facts alleged fit into any cognizable legal theory." <u>Leon v. Martinez</u>, 84 N.Y.2d 83, 87-88 (1994). Pursuant to CPLR 3211(a)(7), a defendant may move to dismiss one or more causes of action against it for failure to state a cause of action. In deciding such a motion, the court must determine whether the factual allegations "taken together manifest any cause of action cognizable at law." <u>Ackerman v. 305 East 40th Owners Corp.</u>, 189 A.D.2d 665, 666 (1st Dept. 1993) (citation omitted).

## ARGUMENT

### POINT I.

**BECAUSE PLAINTIFFS FAILED TO OBTAIN THE COURT'S PERMISSION TO JOIN MELISSA BENZEL AS A DEFENDANT, AND FAILED TO FILE AND SERVE HER WITH A SUPPLEMENTAL SUMMONS, THE SECOND AMENDED COMPLAINT MUST BE DISMISSED AS AGAINST HER FOR LACK OF PERSONAL JURISDICTION**

Plaintiffs have failed to comply with the CPLR's requirements for adding a new party as a defendant and therefore the Second Amended Complaint must be dismissed against Melissa Benzel for lack of personal jurisdiction.

CPLR 1003 provides in relevant part: "Parties may be added at any stage of the action by leave of court or by stipulation of all parties who have appeared, or once without leave of court within twenty days after service of the original summons or at anytime before the period for responding to that summons expires or within twenty days after service of a pleading responding

to it." Because the time for parties to be added without leave of the Court expired 20 days after October 27, 2016, the date on which Defendants served their answer to the original summons and complaint (NYSCEF Doc. No. 51), Plaintiffs required leave of the Court in order to add Melissa Benzel as a defendant.

CPLR 305(a) provides in relevant part: "Where, upon order of the court or by stipulation of all parties or as of right pursuant to section 1003, a new party is joined in the action and the joinder is not made upon the new party's motion, a supplemental summons specifying the pleading which the new party must answer shall be filed with the clerk of the court and served upon such party."

"The joinder of an additional defendant by the filing of a supplemental summons and amended complaint may be accomplished only with prior judicial permission, and noncompliance renders the pleadings jurisdictionally defective." Perez v. Paramount Communications, Inc., 92 N.Y.2d 749, 753 (1999) (emphasis added).

In the present case, Plaintiffs' attempt to add Melissa Benzel as a defendant is jurisdictionally defective in at least two respects. First, although Plaintiffs were granted leave in the November 7, 2019 Decision and Order to file an amended complaint pursuant to CPLR 3025, they failed to obtain the Court's permission to add Ms. Benzel as a defendant pursuant to CPLR 1003. See Crook v. E.I. du Pont de Nemours Co., 181 A.D.2d 1039, 1040 (4th Dep't 1992) ("the failure to obtain leave of court constitutes a jurisdictional defect requiring dismissal of the action" against the parties purportedly joined as defendants), aff'd, 81 N.Y.2d 807 (1993); Yonker v. Amol Motorcycles, Inc., 161 A.D.2d 638, 638 (2d Dep't 1990) ("the failure to obtain leave of the court constitutes a jurisdictional defect requiring dismissal of the action against the party so joined").

Second, Plaintiffs failed to file a supplemental summons specifying the Second Amended Complaint (Sasson Aff. ¶ 16) and to serve such supplemental summons upon Melissa Benzel as required by CPLR 305(a) (Benzel Aff. ¶ 3), and the Court therefore lacks personal jurisdiction over her.  See Cooper v. Thao, 162 A.D.3d 980, 981 (2d Dep't 2018) (motion to dismiss for personal jurisdiction properly granted where defendant was never served with process); Gerschel v. Christensen, 128 A.D.3d 455, 456 (1st Dep't 2015) ("Before the court can exercise its discretion to correct an irregularity it must have personal jurisdiction over the parties.").

Accordingly, the Second Amended Complaint must be dismissed as against Melissa Benzel for lack of personal jurisdiction.

## POINT II.

### PLAINTIFFS' SECOND AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE AS AGAINST MELISSA BENZEL BECAUSE THE CLAIMS AGAINST HER ARE BARRED BY THE STATUTE OF LIMITATIONS

In moving for leave to amend their original complaint and add Melissa Benzel as a Defendant, Plaintiffs asserted that the claims they wished to assert against her were not barred by the applicable statute of limitations, CPLR 213(8), on the basis that Plaintiffs "did not learn of the fraudulent conveyance perpetrated by or beneficial to Melissa until March 13, 2017,"[1] and "[a]s such the Statute of Limitations will not expire until March 13, 2019, two years from the time Plaintiffs discovered the fraudulent conveyance." (NYSCEF Doc. No. 142 at 12-13). Plaintiffs further invoked Perez v. Paramount Communications, Inc., 92 N.Y.2d 749, 754-56 (1999), for the proposition that Plaintiffs' filing of their motion for leave to amend and join Ms.

---

[1] March 13, 2017 is the date on which Plaintiffs' attorneys claim to have received the transcript of an examination of Linda Enbar in Maurice Enbar's bankruptcy case in Florida. (See NYSCEF Doc. No. 142 at 6-7; NYSCEF Doc. No. 139). March 13, 2019 is date on which Plaintiffs filed their motion for leave to amend the complaint and add Melissa Benzel as a defendant. (See NYSCEF Doc. No. 130).

Benzel would toll the statute of limitations until entry of the order deciding the motion. (NYSCEF Doc. No. 142 at 11-12).

However, Plaintiffs' motion was not effective to toll the statute of limitations because unlike the plaintiff in <u>Perez</u>, Plaintiffs did not file a copy of a proposed supplemental summons with their motion. <u>See</u> <u>Perez</u>, 92 N.Y.2d at 755-56 (the "filing of plaintiff's motion for leave to amend to add MSG as a defendant was sufficient to toll the Statute of Limitations <u>because it included a copy of the proposed supplemental summons</u> and amended complaint") (emphasis added); <u>compare</u> <u>Battle v. Brookhaven Nursing Home</u>, 7 A.D.3d 553, 554 (2d Dep't 2004) ("<u>The plaintiff's motion did not toll the statute of limitations as the plaintiff did not file a copy of the proposed supplemental summons</u> and amended complaint with the Supreme Court when she filed her motion.") (emphasis added); <u>see also</u> CPLR 304(a) ("[a]n action is commenced by filing a <u>summons and complaint</u> or summons with notice") (emphasis added).

Accordingly, because (1) by Plaintiffs' own admission the statute of limitations on their claims against Melissa Benzel expired on March 13, 2019, and (2) Plaintiffs' filing on that date of their motion for leave to amend the complaint and add Ms. Benzel as a defendant did not toll the statute of limitations as a result of their failure to file a proposed supplemental summons with the motion, Plaintiffs' Second Amended Complaint should be dismissed with prejudice.

## POINT III.

### PLAINTIFFS' SECOND AMENDED COMPLAINT SHOULD BE DISMISSED AS AGAINST MELISSA BENZEL BECAUSE PLAINTIFFS LACK STANDING TO ASSERT FRAUDULENT CONVEYANCE CLAIMS

The Second Amended Complaint should be dismissed as against Melissa Benzel for the additional reason that Plaintiffs lack standing to assert the fraudulent conveyance claims contained therein. The claims asserted against Ms. Benzel in the Second Amended Complaint are based on allegations that she participated in or benefitted from transfers of assets of Maurice

9

Enbar that were allegedly intended to hinder Plaintiffs' efforts to collect on judgments and/or debts owed to them by Mr. Enbar, or were allegedly made for inadequate consideration at a time when Mr. Enbar was insolvent. (See NYSCEF Doc. No. 172 at 11-14, 16-19, 26-27, 28-29). As such, Plaintiffs' fraudulent transfer claims under the Debtor and Creditor Law derive from their alleged status as creditors of Mr. Enbar.

However, under well-established federal bankruptcy law, Maurice Enbar's filing on August 16, 2016 of a petition for relief under Chapter 7 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Southern District of Florida (Sasson Aff. Ex. C) vested *exclusive* standing to pursue fraudulent transfer claims solely in the bankruptcy trustee for the benefit of the bankruptcy estate as a whole, and accordingly deprived Mr. Enbar's creditors, including Plaintiffs, of standing to pursue such claims for their own individual benefit. See 11 U.S.C. § 544(b)(1) ("the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim"); In re Tribune Co. Fraudulent Conveyance Litigation, 818 F.3d 98, 111 (2d Cir. 2016) ("Once Tribune entered bankruptcy, the creditors' avoidance claims were vested in the federally appointed trustee."); In re Barkany, 542 B.R. 662, 668 (Bankr. E.D.N.Y. 2015) ("Only the trustee has standing to pursue [claims seeking to avoid a transfer of the Debtor's property to third party defendants as a fraudulent conveyance under state debtor-creditor law] postpetition for the benefit of a debtor's bankruptcy estate. As such, creditors do not have standing postpetition to pursue a fraudulent conveyance action against the recipients of an avoidable transfer of a debtor's property."); Sears Petroleum & Transport Corp. v. Burgess Constr. Services, Inc., 417 F. Supp. 2d 212, 221 (D. Mass. 2006) ("It is well-established that creditors may not vie with the bankruptcy trustee for the right to pursue fraudulent conveyance

actions. To the contrary, the commencement of bankruptcy gives the trustee the right to pursue fraudulently conveyed assets to the exclusion of all creditors.") (citation omitted); <u>Pappas v. Freund</u>, 172 Misc. 2d 466, 471 (Sup. Ct. N.Y. Cty. 1997) (where a bankruptcy petition has been filed, the bankruptcy trustee alone has standing to assert third party fraudulent transfer claims to recover claims against the debtor); <u>In re Keene Corp.</u>, 164 B.R. 844, 850 (Bankr. S.D.N.Y. 1994) (bankruptcy trustee alone has standing, to the exclusion of creditors, to assert claims against third parties based on fraudulent transfer of debtor's assets).

<u>Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC</u>, 490 B.R. 59 (S.D.N.Y.2013), in which the court held that a proposed settlement of claims by investors in funds that themselves invested in the Madoff ponzi scheme was not barred by the automatic stay resulting from the Madoff bankruptcy, is inapposite. The investors' claims at issue in <u>Madoff</u> were only against the fund managers. The plaintiffs were not themselves customers of Madoff and therefore were not creditors of the Madoff bankruptcy estate. <u>Id.</u> at 66. The Madoff Trustee had asserted claims against the fund managers seeking the return of certain fraudulent conveyances allegedly transferred from Madoff to the fund managers. <u>Id.</u> at 65.

The <u>Madoff</u> court rejected the Trustee's contention that the investors' claims against the fund managers were derivative of those of the Trustee, and rejected the Trustee's reliance on cases that applied the automatic stay to claims by Madoff creditors against third parties, because the investors were not themselves Madoff creditors. <u>Id.</u> at 66. The court rejected the Trustee's reliance on <u>In re Colonial Realty Co.</u>, 980 F.2d 125 (2d Cir.1992), explaining: "The Second Circuit's holding was explicitly predicated on the derivative nature of the FDIC's fraudulent conveyance action and the premise that, '[a]bsent a claim against the debtor, there is no independent basis for the action against the transferee.' *Id.* (*quoting In re Saunders,* 101 B.R.

303, 305-06 (Bankr.N.D.Fla.1989)). Under a fraudulent conveyance theory, 'if [the debtor] were not liable to the FDIC ... the FDIC would have no independent claims against' the transferees. *Id.*" 490 B.R. at 67.

The court further explained that the investors' action in <u>Madoff</u> was "*not* 'a third-party action to recover fraudulently transferred property,' but rather an action wholly independent of the [Madoff] estate that alleges, among other things, violations by the [fund managers] of the federal securities laws and New York common law premised on alleged duties flowing directly from the Fairfield Defendants to the Anwar Plaintiffs. Therefore, unlike in *In re Colonial,* the [investors'] claims are in no way contingent on the [fund managers'] possible liability to the [Madoff] estate. Accordingly, the rationale set forth in *In re Colonial* is inapplicable." 490 B.R. at 67-68.

In the present case, by contrast, Plaintiffs' entitlement to recover property allegedly fraudulently transferred to Melissa Benzel is based entirely on Plaintiffs' status as creditors of Maurice Enbar, and Plaintiffs have not asserted independent claims against Ms. Benzel unrelated to such status. Therefore, <u>In re Colonial,</u> and not <u>SIPC v. Madoff,</u> is applicable.

Accordingly, Plaintiffs' fraudulent conveyance claims in the Second Amended Complaint, which are an attempt to recover on Plaintiffs' <u>individual</u> claims against Maurice Enbar, should be dismissed because once the bankruptcy petition was filed, the bankruptcy trustee was vested with <u>exclusive standing</u> to pursue such claims so as to ensure an equitable distribution of the debtor's assets among <u>all</u> creditors. <u>See</u> <u>In re Tribune Co. Fraudulent Conveyance Litigation</u>, 818 F.3d at 115.

## POINT IV.

### PLAINTIFFS' SECOND AMENDED COMPLAINT SHOULD BE DISMISSED AS AGAINST MELISSA BENZEL BECAUSE THE CLAIMS THEREIN WERE SETTLED BY THE STIPULATION FOR SETTLEMENT ENTERED INTO IN MAURICE ENBAR'S BANKRUPTCY CASE

The Second Amended Complaint should be dismissed as against Melissa Benzel on the further ground that the claims therein were settled by a Stipulation For Settlement entered into in Maurice Enbar's bankruptcy case. See Centro Empresarial Cempresa S.A. v. America Movil, S.A.B De C.V., 17 N.Y.3d 269, 276 (2011) ("a valid release constitutes a complete bar to an action on a claim which is the subject of the release").

The Stipulation For Settlement was entered into by and between Maurice Enbar (the "Debtor"); (b) Linda Enbar; (c) Adam Enbar; (d) Melissa Benzel (the foregoing collectively referred to as the "Settling Parties"); and (e) Robert A. Angueira, solely in his capacity as Chapter 7 trustee of the bankruptcy estate of the Debtor (the "Trustee") on August 3, 2017. (See Sasson Aff. Ex. D).

The Stipulation of Settlement provides in relevant part:

> WHEREAS, the Trustee has investigated, among other things, the propriety of the Debtor's claimed exemptions, the Debtor's financial condition, and the Debtor's business transactions;

> WHEREAS, the Trustee has found no evidence that the Debtor has transferred, removed, destroyed, mutilated, or concealed, or permitted to be transferred, removed, destroyed, mutilated, or concealed property of the debtor, within one year before the date of the filing of the petition;

> . . . .

> WHEREAS, the Debtor has not failed to explain satisfactorily any loss of assets or deficiency of assets to meet the Debtor's liabilities;

> WHEREAS, the Trustee has: investigated transactions related to- 210 174 St., #1716 Sunny Isles Beach, FL 33160, 345 Broadway Lawrence, NY 11559, and 19355 Turnberry Way #26A Aventura, FL 33180; investigated any transactions regarding the following trusts, which may or may not exist-

Lawrence Enbar Trust, Linda Enbar Asset Trust, Adam Enbar Trust, Melissa Benzel Trust; evaluated the Debtor's listed Household Goods and Furnishings, Electronics, Jewelry, Magnum Real Estate Services, Inc.; investigated the following entities- Magnum Realty Holdings LLC, Lawrence Moving and Storage, Inc., and 164 West 146 Street LLC, Enbar Investments LLC; and generally investigated the Debtor's financial condition and business transactions.

WHEREAS, in order to, among other things: (a) avoid the costs and uncertainties of further discovery and litigation; and (b) ensure that the totality of any recovery is not consumed by administrative expenses, without any of the Parties admitting any fault or liability, the Parties agreed to settle this matter amicably and without further litigation;

WHEREAS, the Parties wish to set forth the terms of their settlement in this Stipulation.

NOW, THEREFORE, in consideration of the foregoing, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties stipulate and agree as follows:

1. Recitals Incorporated. Recitals and prefatory phrases and paragraphs set forth above are hereby incorporated in full and made a part of the Stipulation.

2. Settlement Consideration. In full satisfaction, settlement and release of all fully scheduled and fully disclosed claims and assets in the bankruptcy case, the Settling Parties agree to pay to the Trustee, and the Trustee agrees to accept, the total sum of Fifteen Thousand and 0/100 dollars ($15,000.00) in cleared funds (the "Settlement Amount"), to be paid within 5 days after the order approving this Settlement becomes final and non-appealable.

3. Upon payment of the sum of $15,000:

   a.       the Settling Parties shall be released of any and all causes of action vested in the estate by operation of State or federal law; and

   b.       the Trustee shall forego objecting to the Debtor's exemptions, the value of nonexempt property, and the Debtor's discharge.

. . . .

(Sasson Aff. Ex. D).  On October 10, 2017, after the bankruptcy court approved the settlement, Maurice Enbar made the required $15,000 payment (Sasson Aff. Ex. E, p. 3,7), whereupon the release came into effect.

14

Under Section 544(b) of the Bankruptcy Code, the commencement of Maurice Enbar's bankruptcy case gave the Trustee the *exclusive* right to pursue claims to avoid allegedly fraudulent transfers to the exclusion of all creditors. See 11 U.S.C. § 544(b); In re Berg, 376 B.R. 303, 312 (Bankr. D. Kan. 2007) ("It is well-established that creditors may not 'vie with the bankruptcy trustee for the right to pursue fraudulent conveyance actions. To the contrary, the commencement of bankruptcy gives the trustee the right to pursue fraudulently conveyed assets to the exclusion of all creditors.'") (citations omitted); see also In re Tribune Co. Fraudulent Conveyance Litigation, 818 F.3d 98, 111 (2d Cir. 2016) ("Once Tribune entered bankruptcy, the creditors' avoidance claims were vested in the federally appointed trustee"); Smartmatic USA Corp. v. Dominion Voting Systems Corp., No. 13 Civ. 5349(KBF), 2013 WL 5798986, at *5 (S.D.N.Y. Oct. 22, 2013) (trustee has exclusive right to pursue fraudulent conveyance claims); In re Ryan, Bankruptcy No. 05–32933DM, 2008 WL 4829947, at *3 (Bankr. N.D. Cal. Oct. 29, 2008) ("the commencement of the bankruptcy case gave the Trustee the right under section 544(b) to pursue [the fraudulent conveyance] action to the exclusion of all creditors").

The Stipulation For Settlement, specifically states that the Trustee "investigated transactions related to- ... 345 Broadway Lawrence, NY 11559, and 19355 Turnberry Way #26A Aventura, FL 33180; [and] investigated any transactions regarding the following trusts, which may or may not exist- Lawrence Enbar Trust, Linda Enbar Asset Trust, Adam Enbar Trust, Melissa Benzel Trust." *These properties and trusts are precisely the subjects of Plaintiffs' claims against Melissa Benzel.* (See NYSCEF Doc. No. 172).

Paragraph 2 of the Stipulation For Settlement states that the $15,000 settlement payment is to be "[i]n full satisfaction, settlement and release of all fully scheduled and fully disclosed claims and assets in the bankruptcy case." Paragraph 3 provides that the Settling Parties, who

expressly include Linda Enbar, Adam Enbar and Melissa Benzel, "shall be released of any and all causes of action vested in the estate by operation of State or federal law."

Relying on language in the bankruptcy court's order granting the Trustee's motion to approve the Stipulation of Settlement stating that "the Stipulation shall not be binding on any creditors, or otherwise affect the rights of any creditors, of the Estate" (NYSCEF Doc. No. 154 ¶ 10), Plaintiffs have asserted that the Stipulation For Settlement does not bar their claims on the basis that it covers only the estate's claims and not creditors' claims. However, the cases cited above demonstrate that after the commencement of bankruptcy proceedings, the Trustee had the exclusive right to pursue fraudulent conveyance claims to the exclusion of all creditors including Plaintiffs. Moreover, the Stipulation For Settlement does not exempt fraudulent conveyance claims against Adam Enbar, Linda Enbar and Melissa Benzel from the release, and specifically states that the Trustee investigated the transactions that are the subject of Plaintiffs' claims.

Accordingly, because the Trustee (1) had the exclusive right to pursue fraudulent conveyance claims on behalf of Maurice Enbar's bankruptcy estate to the exclusion of all creditors, including Plaintiffs, and (2) released all of the estate's causes of action against Adam Enbar, Linda Enbar and Melissa Benzel, Plaintiffs' claims against Ms. Benzel are barred. See Centro Empresarial Cempresa, 17 N.Y.3d at 276.

## POINT V.

### THE SECOND CAUSE OF ACTION IN PLAINTIFFS' SECOND AMENDED COMPLAINT FAILS TO STATE A CAUSE OF ACTION AGAINST MELISSA BENZEL

The second cause of action in Plaintiffs' Second Amended Complaint – for "Undiscovered Fraudulent Conveyances" – although asserted against Melissa Benzel (in addition to Adam Enbar and Linda Enbar), does not contain any factual allegations that support a claim

16

against Ms. Benzel.  Indeed, Ms. Benzel is not even mentioned in any of the paragraphs that comprise the second cause of action.  (See NYSCEF Doc. No. 172 ¶¶ 82-87).

In addition, in the November 7, 2019 Decision and Order, the Court specifically denied Plaintiffs leave to include claims based on "undiscovered fraudulent transactions" in the Second Amended Complaint because Plaintiffs failed to set forth sufficient factual allegations to support such claims:

> The proposed amended complaint does not sufficiently allege "undiscovered fraudulent transactions" as against Adam and Linda because there are no particularized facts alleged to support these claims. Accordingly, the second and fourth causes of action are dismissed in their entirety, because while the standard of review is "much less exacting" than that applied on a motion seeking summary judgment (see James v R & G Hacking Corp., 39 AD3d 385, 386 [1st Dept 2007]), where the court finds that a proposed claim or claims are not viable, it may properly deny leave to amend (see Lau v Human Resources Admin., 168 AD3d 565, 566 [1st Dept 2019]).

(NYSCEF Doc. No. 160 at 23).

Plaintiffs did not move to renew or reargue their motion to amend.  Nonetheless, the second cause of action in the Second Amended Complaint is materially indistinguishable from the second cause of action in Plaintiffs' proposed amended complaint that the Court held was "not viable" and subject to dismissal in its entirety for failure to state a cause of action.  (See NYSCEF Doc. No. 172 at 14-16; NYSCEF Doc. No. 155 at 14-15)

Accordingly, the second cause of action in the Second Amended Complaint must be dismissed in its entirety as against Melissa Benzel pursuant to CPLR 3211(a)(7).

## POINT VI.

### AS THIS COURT HAS ALREADY HELD IN THE NOVEMBER 7, 2019 DECISION AND ORDER, THE CLAIMS IN THE FIRST, SECOND, THIRD, EIGHTH AND NINTH CAUSES OF ACTION FAIL TO STATE A CAUSE OF ACTION TO THE EXTENT THEY ARE BASED ON DEBTOR AND CREDITOR LAW § 279

In the November 7, 2019 Decision and Order, the Court denied Plaintiffs leave to include claims based on alleged status as "a creditor whose claim has not matured" pursuant to Debtor and Creditor Law § 279 because Plaintiffs failed to make factual allegations that would support such claims:

> Similarly, there are no factual allegations to support the claim that plaintiffs have unmatured claims, unsecured or otherwise, pursuant to Debtor and Creditor Law § 279. Therefore, the claims based on section 279 in the 1st through 5th, 7th and 9th through 12th causes of action in the proposed amended complaint are dismissed without prejudice.

(NYSCEF Doc. No. 160 at 23).

Nevertheless, Plaintffs included multiple claims against Melissa Benzel (and others) based on Debtor and Creditor Law § 279 – in the first, second, third, eighth and ninth causes of action of the Second Amended Complaint – that are materially indistinguishable from claims in the proposed amended complaint that the Court held were subject to dismissal for failure to state a cause of action. (See NYSCEF Doc. No. 172 at 11, 13, 14-15, 16, 18, 26, 28; NYSCEF Doc. No. 155 at 14-15, 17-19, 26, 28, 29-30, 31, 33, 34, 36).

Accordingly, the claims based on Debtor and Creditor Law § 279 in the first, second, third, eighth and ninth causes of action of the Second Amended Complaint must be dismissed under CPLR 3211(a)(7).

18

## CONCLUSION

For the foregoing reasons, the Court should grant Defendant Melissa Benzel's motion for an Order: (i) dismissing Plaintiffs' Second Amended Complaint in its entirety as against Ms. Benzel pursuant to CPLR 3211(a)(1), (2), (3), (5), (7) and (8), and for failure to comply with CPLR 305(a) and 1003; (ii) dismissing the second cause of action in Plaintiffs' Second Amended Complaint in its entirety pursuant to CPLR 3211(a)(7); (iii) dismissing the claims based on Debtor and Creditor Law § 279 in the first, second, third, eighth and ninth causes of action in Plaintiffs' Second Amended Complaint pursuant to CPLR 3211(a)(7); and (iv) awarding such other and further relief as the Court deems just and proper.

Dated: New York, New York
      January 6, 2020

Respectfully submitted,

SASSON LAW PLLC

*M Sasson*

_____
Moshe Sasson, Esq.
1350 Broadway, Suite 212
New York, New York 10018
(212) 949-7501

*Attorneys for Defendants*
*Adam Enbar and Melissa Benzel*

19

# EXHIBIT F

*Weg and Myers, P.C.*

ATTORNEYS AT LAW
FEDERAL PLAZA
52 DUANE STREET, NEW YORK, NEW YORK 10007
(212) 227-4210
FAX: 212-349-6702
WWW.WEGANDMYERS.COM

CONNECTICUT AFFILIATE
LAW OFFICE OF
**BRIAN D. ROSENFELD**
16 RIVER STREET
NORWALK CT 06850
(203) 853-3888

February 11, 2020

NEW JERSEY AFFILIATE
LAW OFFICE OF
**MASELLI-WARREN, P.C.**
600 ALEXANDER ROAD
PRINCETON, NJ 08540
(609) 452-8411

**VIA REGULAR MAIL AND EMAIL**
**BankruptcyLawyer@aol.com**
Florida Bankruptcy Group, LLC
4121 N. 31st Avenue
Hollywood, Florida 33021-22011
Attn: Kevin C. Gleason, Esq.

Re:    *In re: Moshe Enbar, Moshe Enbar et al. v. Fred Goodstein et al*
       Case No.: 16-21262-AJC, Adversary No.: 20-01028-AJC

Dear Mr. Gleason:

This office represents Defendants Fred Goodstein and Michele Goodstein ("Defendants" or the "Goodsteins") in the above referenced action (the "Bankruptcy Action"). This office also represents the Goodsteins in an action underway in the Supreme Court of the New York, New York County, *Fred Goodstein et al v. Adam Enbar et al*, Index No.: 65114/2016 (the "New York Action"). The purpose of this correspondence is to request that Bankruptcy Action Plaintiffs Moshe Enbar, Linda Enbar, Adam Enbar, and Melissa Benzel ("Plaintiffs") formally withdraw their Complaint for Declaratory Judgement, Injunctive Relief, and Damages (the "Complaint") (Doc. 240, filed January 28, 2020) and their Motion for Preliminary Injunction (the "Motion") (Doc. 4, filed January 29, 2020), on the grounds that such applications violate Fed.R.Bankr.P. 9011 ("Rule 9011"). Accordingly, should Plaintiffs not withdraw the Complaint and Motion, Defendants intend to move for sanctions pursuant to Rule 9011.

Rule 9011(b) sets forth, in pertinent part:

By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion,

*Weg and Myers, P.C.*

Florida Bankruptcy Group, LLC                    Page **2** of **4**                    February 11, 2020

> or other paper, an attorney or unrepresented party is certifying that
> to the best of the person's knowledge, information, and belief,
> formed after an inquiry reasonable under the circumstances,
>
> > (1) it is not being presented for any improper purpose, such
> > as to harass or to cause unnecessary delay or needless
> > increase in the cost of litigation;
> >
> > (2) the claims, defenses, and other legal contentions therein
> > are warranted by existing law or by a nonfrivolous argument
> > for the extension, modification, or reversal of existing law or
> > the establishment of new law…

Fed.R.Bankr.P. 9011(b). The rule further states that "If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation." Fed.R.Bankr.P. 9011(c).

The instant Complaint and Motion clearly violate Rule 9011. In paragraph 90 of the Complaint, as part of Plaintiffs' first cause of action for a Declaratory Judgment, Plaintiffs contend that "Upon finality of the Order Approving Stipulation, on October 6, 2017, the Settling Parties were released of any and all causes of action vested in the estate by operation of State or federal law, including, but not limited to, New York Debtor and Creditor Law, §§ 276, *et seq.*". Likewise, the Motion repeats the argument contained in the Complaint—that the Order Approving Stipulation released the Plaintiffs from vulnerability to the Goodstein's causes of action for fraudulent conveyance the New York Action.

In the first instance, the relief sought by Plaintiffs and its basis are in direct contradiction to the explicit language of the Stipulation Upon Order that the Complaint and Motion refer to. The Stipulation states: "The Stipulation shall be binding and upon and inure to the benefit of the Parties hereto and their respective successors and assigns. However, the Stipulation shall not be binding on any creditors, or otherwise affect the rights of any creditors, of the Estate." *See* Order Granting Trustee's Motion to Approve Stipulation to Compromise Controversy, ECF 173. Clearly, given this language, the Stipulation does not bind any third party creditors, such as the Goodsteins.

Moreover, the same legal contentions were previously considered and rejected in the New York Action (*see* Decision + Order on Motion, dated November 7, 2019, NYSCEF Doc. No. 160) (the "Order"). There, the Goodsteins made a motion to amend their pleadings in order to add fraudulent conveyance claims against Linda Enbar and Adam Enbar, and to add Melissa Benzel as a defendant. *See* Order at 1-2. In opposing the motion to amend, Adam Enbar claimed that, pursuant to Bankruptcy Code § 544(b), "the bankruptcy trustee has the exclusive right to pursue

*Weg and Myers, P. C.*

Florida Bankruptcy Group, LLC                Page **3** of **4**                February 11, 2020

claims to avoid or nullify allegedly fraudulent transfers…[and] because the trustee had the exclusive right to pursue fraudulent conveyance claims on behalf of Maurice Enbar's bankruptcy estate to the exclusion of all creditors, including plaintiffs [the Goodsteins], the Stipulation released all of the estate's causes of action against the children and wife of Maurice, thereby barring plaintiffs' [the Goodstein's] proposed causes of action." *Id.* at 13. In support of this contention, Adam Enbar emphasized "that the Stipulation specifically states that the trustee 'investigated transactions related to' Turnberry and 345 Broadway, as well as transactions concerning the Lawrence Enbar Trust and the Linda Enbar Asset Trust, and settled any claims concerning them…[and that] [t]he Stipulation explicitly provides that the settling parties 'shall be released of any and all causes of action vested in the estate by operation of State or federal law'". *Id.*

In granting the Goodstein's motion to amend, Justice Freed of the Supreme Court of New York, New York County, explicitly rejected this argument. Justice Freed explained that "An action claiming breach of contract and conversion as against one party is quite different from a suit alleging the fraudulent transfer of assets to and among the settling parties of a bankruptcy proceeding and other nonparty entities." *Id.* at 20. Linda and Adam Enbar's liability for making fraudulent conveyances "rests upon [their] own breach of duty" and can be separated from the claims encompassed by the Stipulation relating to Moshe Enbar's Bankruptcy Action. The court further stated that "the trustee specifically stated that he had found no evidence that Maurice had transferred or concealed property 'within one year before the date of the filing of the petition'… and although the trustee investigated 'transactions' related to Turnberry and 345 Broadway, and the Laura (*sic*) Enbar Asset Trust and the 'Lawrence Enbar Trust', it is unclear whether the 'Lawrence Enbar Trust' examined by the trustee is the 'Enbar Lawrence Trust' identified throughout plaintiffs' papers as allegedly consisting of both pieces of real property". *Id.*

As such, the "law of the case" in the New York Action is, per Justice Freed's Order, that the Stipulation entered into by the trustee had <u>no</u> preclusive effect on the fraudulent conveyance causes of action alleged by the Goodsteins against Linda and Adam Enbar in the New York Action under provisions of New York Debtor and Creditor Law. Despite Justice Freed's Order, Plaintiffs, in the Complaint and Motion, ask the bankruptcy court to blatantly ignore the New York court's holding and preclude the Goodsteins for prosecuting their fraudulent conveyance actions against Linda and Adam Enbar by issuing temporary and permanent injunctions to this effect. Should Plaintiffs oppose Justice Freed's Order, the proper action would be to appeal the Order, which was already done by Adam Enbar (*see* Notice of Appeal, NYSCEF Doc. No. 234) and Linda Enbar (*see* Notice of Appeal, NYSCEF Doc. No. 235) on December 23, 2019.

Because the argument proffered by Plaintiffs in the Complaint and Motion are duplicative with the argument previously rejected by Justice Freed in the New York action, it is clear that these applications to the court are frivolous and not supported by existing law. Likewise, Plaintiffs' repetitive arguments have harassed the Goodsteins and now cause them to undergo the increased costs of litigating the Complaint and Motion.

*Weg and Myers, P. C.*

Florida Bankruptcy Group, LLC                Page **4** of **4**                February 11, 2020

As such, should Plaintiffs not withdraw the Complaint and Motion, the Goodsteins will move for sanctions against Plaintiffs and/or their counsel for violations of Rule 9011. Please consider this correspondence the Goodstein's good-faith effort to induce compliance.

Very Truly Yours,

**WEG AND MYERS, P.C.**

By: _David B. Schlosser_
    David B. Schlosser, Esq.

cc:

**SIEGFRIED RIVERA**
201 Alhambra Circle, 11th Floor
Coral Gables, Florida 33134
(305) 442-3334
jberlowitz@siegfriedrivera.com
Attn: Jeffrey S. Berlowitz, Esq.

# EXHIBIT G

| | |
|---|---|
| **From:** | bankruptcylawyer@aol.com |
| **To:** | David B. Schlosser |
| **Cc:** | jberlowitz@siegfriedrivera.com; Joshua L. Mallin; Adam S. Cohen |
| **Subject:** | RE: In re Moshe Enbar, Moshe Enbar et al v Fred Goodstein et al |
| **Date:** | Wednesday, February 12, 2020 2:36:21 PM |

Dear Mr. Schlosser:

The Complaint to which you refer, being fully supported by the facts and the law, we have no intention of withdrawing same.

While we are chatting, do you have any objection to an ex-parte agreed motion to move the hearing set on March 4, 2020 (Preliminary Injunction) to March 18, 2020 to coincide with the hearing on partial summary judgment?

Regards,

Kevin C Gleason, Attorney
Member/Manager of
Florida Bankruptcy Group, LLC
4121 N 31st Ave
Hollywood, Fl  33021-2011
954-893-7670
Primary email address: bankruptcylawyer@aol.com
Service address: kgpaecmf@aol.com
(Title 11 of the United States Code, Section 528 requires the following statement.  "Florida Bankruptcy Group, LLC is a debt relief agency.  FBG helps people file for bankruptcy relief under the Bankruptcy Code.")

**From:** David B. Schlosser <DSchlosser@WegAndMyers.com>
**Sent:** Wednesday, February 12, 2020 11:17 AM
**To:** 'bankruptcylawyer@aol.com' <bankruptcylawyer@aol.com>
**Cc:** 'jberlowitz@siegfriedrivera.com' <jberlowitz@siegfriedrivera.com>; Joshua L. Mallin <jmallin@wegandmyers.com>; Adam S. Cohen <ACohen@WegAndMyers.com>
**Subject:** In re Moshe Enbar, Moshe Enbar et al v Fred Goodstein et al

Dear Mr. Gleason:

In reference to the case cited above, please see the attached correspondence.

Very Truly Yours,

David B. Schlosser, Esq.
**Weg & Myers, P.C.**

52 Duane Street 2nd Floor
New York, New York 10007
Telephone: (212) 227-4210
Facsimile: (212) 349-6702
Email: dschlosser@wegandmyers.com