Page 1

1              UNITED STATES BANKRUPTCY COURT
                SOUTHERN DISTRICT OF FLORIDA
2                  Judge A. Jay Cristol
3                              Case No.:  16-21262-AJC
4    In Re:
5    MOSHE ENBAR,
6         Debtor.
     _____/
7    MOSHE ENBAR, LINDA ENBAR, ADAM ENBAR
     and MELISSA BENZEL,
8
          Plaintiffs,
9
     vs.                         Adv. No:  20-1028-AJC
10
     FRED GOODSTEIN and MICHELLE GOODSTEIN,
11
          Defendants.
12   _____/
13
14                    ECF # 4, 7
15                    May 5, 2020
16
17         The above-entitled cause came on for a
18   remotely recorded hearing before the HONORABLE
19   A. JAY CRISTOL, one of the Judges of the UNITED
20   STATES BANKRUPTCY COURT, in and for the SOUTHERN
21   DISTRICT OF FLORIDA, in Miami-Dade County, Florida,
22   on Tuesday, May 5, 2020, commencing at or about 3:00
23   p.m., and the following proceedings were had:
24
25                    REPORTED BY:  Helayne Wills

1    APPEARANCES:

2

          FLORIDA BANKRUPTCY GROUP, LLC, by
3         KEVIN C. GLEASON, ESQ.
          on behalf of the Debtor/Plaintiffs

4

5         SIEGFRIED RIVERA, by
          JEFFREY S. BERLOWITZ, ESQ.,
6         and
          WEG & MYERS, P.C., by
7         JOSHUA L. MALLIN, ESQ.,
          on behalf of the Defendants

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    ECRO:  Good afternoon everyone.  Today is

2    Tuesday, May 5, 2020.  We're here on Judge Cristol's

3    3 o'clock calendar.  The next matter that we have at

4    3 o'clock is Case Number 20-1028, Enbar versus

5    Goodstein.

6                    We have two -- excuse me -- we have three

7    parties on the line.  Please state your appearance.

8    Please spell your last name and who you represent in

9    the case.

10                   The first attorney is Jeffrey Berlowitz.

11                   MR. BERLOWITZ:  Good afternoon, Your

12   Honor.  Jeff Berlowitz, B-E-R-L-O-W-I-T-Z. as local

13   counsel for the Goodsteins.

14                   ECRO:  Thank you.

15                   The next attorney is Mr. Gleason.

16                   MR. GLEASON:  Yes.  Good afternoon.  May

17   it please the Court.  This is Kevin Gleason,

18   G-L-E-A-S-O-N.  I represent Moshe Enbar, Linda

19   Enbar, Adam Enbar and Melissa Benzel, whom I will

20   refer to as the settling parties.

21                   ECRO:  Thank you.

22                   And I have Joshua Mallin on the line.

23                   MR. MALLIN:  Yes.  Good afternoon, Your

24   Honor.  May it please the Court.  My name is Joshua

25   Mallin, M-A-L-L-I-N, admitted pro hac vice in

1    connection with this bankruptcy proceeding,

2    representing the Goodsteins.

3            THE COURT:  Very well.  This is initially

4    a motion, Court Paper 7, by Mr. Gleason, for summary

5    judgment on Counts I and II.  Proceed, Mr. Gleason.

6            MR. GLEASON:  Thank you, Your Honor.

7            This case regards what was settled when

8    the plaintiffs, settling parties, paid Mr. Angueira,

9    the trustee of Mr. Enbar's case, $15,000, and

10   entered into a confidential settlement agreement,

11   which went out on notice to all parties, in which

12   defendants' counsel participated at the hearing.  No

13   objections were filed.

14           Your Honor approved a stipulation of

15   settlement, and Your Honor specifically provided in

16   the order that you retained exclusive jurisdiction

17   to interpret and enforce the order.  The order

18   released the settling parties from all causes of

19   action that were held by the estate under either

20   state or federal law.

21           After the entry of that order the

22   defendants went to New York and filed what I would

23   refer to as 550 series actions, avoidance of alleged

24   fraudulent transfers under New York law, and

25   prosecuted Linda Enbar, Adam Enbar and Melissa

1  Benzel as alleged recipients of alleged fraudulent

2  transfers.  That's exactly what Linda Enbar, Adam

3  Enbar and Melissa Benzel settled with Robert

4  Angueira.

5          And so they asked -- "they" being the

6  Goodsteins -- prevailed upon the non-bankruptcy

7  court in New York to interpret Your Honor's order,

8  which you had retained exclusive jurisdiction, and

9  the New York Court said, "Oh, Judge Cristol said

10  this settlement didn't have any affect on the rights

11  of other creditors."  So they were permitted to

12  proceed.

13          That begs the question then, at the date

14  of the filing of the -- the date you approved the

15  settlement with Mr. Angueira and the settling

16  parties, what were the rights of the Goodsteins?

17          Your Honor, in the Zwirn case cited in my

18  brief, and the cite is 13 years ago, it explicitly

19  held that upon the filing of a bankruptcy case, all

20  creditors are deprived of their individual rights to

21  pursue avoidance actions, which rights vest in the

22  Chapter 7 Trustee, and as Your Honor held, only the

23  Chapter 7 Trustee thereafter has standing to bring

24  them or settle them.  And so Robert Angueira settled

25  all federal and state law actions which could have

1  been brought against Linda Enbar, Adam Enbar and

2  Melissa Benzel, and that should be the end of the

3  story.

4          So I have filed a 75-page memo last week

5  in response to 111 pages filed by the defendants, in

6  which the defendants did not cite Your Honor's Zwirn

7  case, didn't distinguish it, didn't distinguish the

8  other over a hundred years of jurisprudence from the

9  Supreme Court to the Bankruptcy Court, unbroken law,

10 unbroken line of law, that says upon the filing of a

11 bankruptcy case, all of those causes of action vest

12 in the bankruptcy trustee.

13         What they cited were cases that had

14 nothing to do with the 500 series authority of the

15 bankruptcy trustee.  They cited cases for breach of

16 fiduciary obligation, negligence and so forth and so

17 on.  Not a single case that deals with whether, upon

18 filing a bankruptcy case, the 500 series causes of

19 action vest in the bankruptcy trustee.

20         And so we filed a motion for summary

21 judgment, because based upon the uncontested facts,

22 they've admitted most of the complaint by -- their

23 response says, "We're not going to admit it or deny

24 it.  We're going to leave it to the Court to decide

25 what the law is."  Plus, the failure to deny -- and

1    the failure to deny is an admission.

2              So they've admitted over 60 of the

3    paragraphs to the complaint.  They've denied a

4    handful, maybe four or five, and they've said

5    (inaudible.)

6              I went to -- in my memo and I demonstrated

7    to the Court where the record before this Court,

8    papers filed with this Court, support every

9    allegation of the complaint that were not admitted,

10   and even ones that were admitted.

11             So there's no dispute of fact here.

12   There's no dispute of law, because they haven't

13   talked about Your Honor's case or any of the other

14   dozens and dozens of cases that have held that a

15   bankruptcy trustee has exclusive standing to bring

16   or settle a 500 series cause of action.

17             And so we're asking Your Honor for summary

18   judgment on two counts of the complaint.  Count I is

19   for declaratory judgment that says that what was

20   settled included these New York State causes of

21   action under debtor and creditor law.  And Number 2,

22   Count II, is for injunctive relief.

23             And they say, "Oh, Your Honor can't enjoin

24   a New York court."  We're not asking you to enjoin

25   the New York Court.  We're asking you to enjoin the

1    Goodsteins, over whom Your Honor certainly has

2    jurisdiction.  They filed claims in this case and

3    received distributions in this case.  So their

4    points are in opposition.

5            Number one is, as I said, they said the

6    settlement didn't bar them.  Well, it did.  None of

7    the cases they cite stand for a contrary

8    proposition.

9            And number two, they're saying it's res

10   judicata, because a New York Court has already

11   decided that interpreting your order, which you

12   retained exclusive jurisdiction, and the New York

13   court disagrees with what we anticipate will be the

14   ruling here, so why would they ask you when they

15   wouldn't like the answer?

16           Number three, their point three is that

17   you can't enjoin a court.  We're saying we're not

18   trying to enjoin the court.  We're enjoining the

19   Goodsteins.

20           They say you don't have jurisdiction to

21   interpret your own order.  I don't even think I need

22   to make an argument about that.

23           And they're saying -- they made a good

24   case for abstention, but they haven't filed a motion

25   for abstention.

1           Lastly, they say you should sanction me
2    for filing this complaint, when I've supported my
3    position with the facts and the law, and they've
4    just said, "There he goes again, being recalcitrant
5    and trying to avoid the Goodsteins."
6           That's our position, Your Honor.  We're
7    asking for entry of declaratory judgment saying that
8    what was settled included all of the actions that
9    the Goodsteins are now attempting to enforce in New
10   York, and number two, to enjoin them from doing that
11   further.
12          Thank you.
13          THE COURT:  Thank you, Mr. Gleason.
14          Who's going to speak on behalf of the
15   Goodsteins?
16          MR. MALLIN:  I will, Your Honor.  This is
17   Joshua Mallin.
18          I think we first have to begin with -- I'm
19   sorry, Your Honor.
20          THE COURT:  Proceed.
21          MR. MALLIN:  May I proceed?
22          THE COURT:  Yes.
23          MR. MALLIN:  Thank you.
24          I think we need to first start with the
25   facts -- some facts which sort of got worn over.

1   Mr. Gleason made a representation that subsequent to

2   the settlement, the Goodstein plaintiffs went and

3   started an action in New York.  That's actually

4   factually incorrect.

5              The New York action was started on

6   August 4th of 2016.  The bankruptcy petition was

7   filed, in fact, in response to that, on August 10th

8   of 2016, and this hearing that we're making

9   reference to, in which your Court -- in which Your

10   Honor approved the settlement, took place on

11   September 19, 2017.

12              What's important about that is that at the

13   time of that hearing, Your Honor was very cognizant

14   of the fact that the Goodsteins -- and you

15   specifically make reference in the transcript --

16   Michelle Goodstein had claims, and you went out of

17   your way in the transcript to make sure that those

18   claims would not be affected by the settlement.

19   That has very significant ramifications, as I'm

20   going to set forth and develop.  With those facts in

21   mind, we then have to look at the New York action

22   that they're seeking to enjoin.

23              Next in our opposition papers, the Judge's

24   decision in which the Judge rejected their

25   application or their argument that the Court in New

1   York did not have jurisdiction as a result of the

2   settlement agreement.

3           So first of all, if the Court were to look

4   at that decision, on Page 11 of the decision -- it's

5   Page 68 of the PDF -- the Court lays out the various

6   causes of action or hearings of causes of action

7   that are alleged, that have nothing to do with Moshe

8   Enbar.  It has to do with Linda Enbar, it has to do

9   with contract breaches and conversions by Linda and

10  Adam, and adding to that, Melissa Benzel, and

11  specifically makes a finding that these actions have

12  nothing to do with a fraudulent conveyance action

13  per se vis-a-vis Moshe Enbar.

14          It cites the Madoff case that was affirmed

15  by the Second Circuit, that basically says that

16  where you have -- where you have non-fraudulent

17  conveyance causes of action, those non-fraudulent

18  conveyance causes of action do not get estopped, or

19  do not get barred in the prosecution of those

20  claims, notwithstanding a bankruptcy proceeding.

21  And the Court, the New York Court, was very explicit

22  in making those findings.

23          It's also, I think, interesting to note

24  that it was the plaintiffs in this action, the

25  individuals who are represented by Mr. Gleason, who

1    used the New York Court to make this argument.  It

2    was in the context to the motion to amend the

3    complaint, and in opposition to the motion to amend

4    the complaint.  And this was all in Exhibit D.  This

5    was all in the Court's decision -- they were the

6    ones who, in essence, invoked the New York Court's

7    jurisdiction to make a determination that the Court

8    should, in essence, deny the application for the

9    amendment, and that this whole -- that all of these

10   allegations are barred as a result of the

11   bankruptcy.

12          So they went to -- they made the argument

13   in New York.  They didn't come back down to the

14   Bankruptcy Court and make the argument.  They made

15   the Court -- they made those arguments in New York,

16   the same arguments they're making here.  And they

17   lost.  After they lost, they're now back here making

18   very similar arguments to this Court, because they

19   didn't like the result that they got in New York.

20          So the New York Court specifically decides

21   that there are multiple actions going on in the New

22   York action, not specifically tied to per se

23   fraudulent conveyances vis-a-vis Maurice Enbar.

24          The second thing that we should point out

25   is that Mr. Gleason makes reference to the fact that

1   the trustee has exclusive jurisdiction, solely

2   exclusive jurisdiction to commence fraudulent

3   conveyance actions.  That is true for the first two

4   years, from the time that an action -- a petition is

5   commenced, is filed, but under 546(a), that -- after

6   that two-year period, other creditors then also have

7   the right, if not commenced by the trustee, to bring

8   fraudulent conveyance actions.

9           And while the Court in C.D. Jones, a case

10  that neither party has cited, which cited the Zwirn

11  case -- and I'll just give the citation, 482 B.R.

12  449, 2012, coming out of the Northern District of

13  Florida -- comments to the fact that it does not

14  divest the trustee of jurisdiction.  In the same

15  token, it does not -- the trustee loses the

16  exclusive ability to commence a fraudulent

17  conveyance action.

18          So to the extent that the New York action,

19  both in the mixed bag with respect to fraudulent

20  conveyances stemming from Maurice Enbar, as well as

21  other causes of action having nothing to do with

22  that, the trustee no longer has any type of

23  exclusive jurisdiction, and the individuals in this

24  case, the Goodsteins, have that right.

25          I should also point out, with respect to

1    the Zwirn case, Your Honor's case, there was a bar

2    date in that case.  There was a -- in the facts of

3    that case, and in fact, counsel actually quotes from

4    it in their papers.  They quote you, and they point

5    out that the 9019 motion included a request for the

6    entry of a bar order, that if the settlement with

7    the Danjo defendants were approved, it would enjoin

8    and bar date for further prosecuting the Danjo claim

9    in New York.

10         So that was up front.  They knew from the

11   very beginning that there was this bar order, very

12   much in contrast to the hearing transcript that we

13   are making reference to here, in which the Court,

14   Your Honor, went out of its way to make sure that

15   the rights of Michelle Goodstein would not be

16   somehow swallowed by this settlement.

17         And that becomes even more important with

18   respect to my next argument, and that's as follows:

19   Even if this Court were to determine that at least

20   in part, that the New York action includes

21   fraudulent conveyance actions, even though there was

22   no permission initially sought for a relief from the

23   automatic stay, that the Court has the authority

24   under limited circumstances to grant such nun pro

25   tunc so as to allow this action to go forward.

1          Now, Mr. Gleason cited and attached the

2    Telles decision, in which it made reference to the

3    U.S. Supreme Court's decision in Acevedo, which

4    seems to in most instances bar a nun pro tunc

5    allowance with respect to avoidance or -- excuse

6    me -- an exception to 362 automatic stay.

7          However, in that same decision, in the

8    Telles decision which he attaches, on Page 11 of

9    that decision, the Court recognizes the case of

10   In re:  Goldberg as an exception to the prohibition

11   of nun pro tunc, and it says that where you have an

12   existing record that one can make reference to, then

13   the Court can still provide a nun pro tunc

14   application.  As long as the Court's not

15   re-inventing history or creating history, if there

16   is a proceeding that the Court can attach the nun

17   pro tunc to, it will not violate the U.S. Supreme

18   Court's decision in Acevedo.

19          And that's exactly what you have here.

20   The transcript and the proceeding in front of Your

21   Honor in 2017 was just such -- it provides the Court

22   with just such a record.  Because even if this Court

23   didn't explicitly talk about a 362 -- granting

24   relief of the automatic stay, to the extent that

25   Michelle Goodstein's rights would have been affected

1    by such an automatic stay, given the Court's very

2    explicit instruction that her rights would not be

3    affected, and instructed Mr. Gleason, who was there,

4    and didn't say anything about the 2016 action in New

5    York, that in his order he explicitly made sure that

6    her rights were exempted and protected, that

7    implicitly that reflects the desire to allow other

8    proceedings to take place.

9             So to the extent that that was technically

10   not laid out in the order as it relates to a relief

11   from the automatic stay, the Court can now go ahead

12   and do that, notwithstanding the decision in

13   Acevedo.

14            We were very clear with Mr. Gleason that

15   given the fact that counsel in New York made these

16   arguments in New York, lost in New York, that he

17   should then -- that he would turn around and make

18   these exact same arguments here to Your Honor,

19   knowing the transcript, what the attempt was, we

20   thought that that was violative of 9011 of the

21   Bankruptcy Code.  We asked him to withdraw the

22   complaint.  He refused to do so, and that's why --

23   that's the reason that we're seeking sanctions, Your

24   Honor.

25            But separate and apart from that, we would

1   ask the Court to not only deny the motion for

2   summary judgment, deny the injunction, but once

3   that's done, to dismiss this particular adversary

4   proceeding, and in a worst case scenario, Your

5   Honor, if there's any issue with respect to whether

6   there are any assets that belong to the debtor

7   estate coming out of the New York action, that the

8   New York action settled, that the New York action

9   results in a verdict in favor of the Goodsteins, the

10  Court can always issue an order requiring that the

11  Bankruptcy Court approve and review any payments

12  made until such time.

13          The fact of the matter is, I don't think

14  there are any other creditors in connection with

15  this bankruptcy, so it may be a moot point, but just

16  to dot every i and cross every t, the Court can

17  require that to make sure that there is no question

18  with respect to whether, in fact, there may be

19  moneys coming from the New York action that are part

20  of the, quote unquote, estate.

21          THE COURT:  Thank you, sir.

22          The matter before the Court raises two

23  questions.  First is Court Paper 7 on whether or not

24  there should be a summary judgment in the adversary

25  case, and on that question the Court will reserve

1  ruling and ask both parties to submit proposed

2  orders.  Of course, Mr. Gleason's order will be

3  granting summary judgment in his favor, saying that

4  the settlement did bar any other claim, and of

5  course, Mr. Mallin's order will be arguing that that

6  settlement did not bar other claims.

7          As to the matter of the preliminary

8  injunction, the Court is definitely and very

9  positively (inaudible) that it does not have the

10  authority to enjoin a New York Court in what it

11  does.  However, as I understand Mr. Mallin's

12  argument, he was saying that he didn't see the -- or

13  perhaps it was Mr. Gleason's argument, but this

14  wasn't an effort to enjoin the New York Court, but

15  to enjoin individuals.

16          And so there will be also a separate order

17  on whether or not the Court has jurisdiction to

18  enjoin individuals from proceeding in New York, and

19  of course, that will -- the lead factor of that will

20  depend upon what was settled in the settlement that

21  we're talking about under Court Paper 7.  So on

22  Court Paper 4, there will be a separate order

23  dealing with whether this Court could enjoin, and

24  should they enjoin.

25          How much time do you need to submit your

1    two orders, Mr. Mallin?

2              MR. MALLIN:  Thirty days, Your Honor.

3              THE COURT:  Is that enough for you,

4    Mr. Gleason?

5              MR. GLEASON:  More than enough, Your

6    Honor.

7              THE COURT:  Very well then.  This is the

8    5th of May, so we're talking about the 5th or the

9    6th of June.  I don't remember which is not a

10   weekend.

11             MR. MALLIN:  Since it's a Friday, Your

12   Honor, perhaps Monday, the 8th, would be kinder.

13             THE COURT:  Then we'll talk about the 8th

14   of June for proposed orders, two orders, one on

15   Court Paper 7, one on Court Paper 4.

16             Thank you, gentlemen.  You may not believe

17   this, but I don't remember from memory what the

18   settlement order provided, and it will be helpful

19   when I get the guidance of your proposed orders and

20   have a chance to review the record to determine

21   whether -- what was settled in that matter, and

22   then, of course, from there, if it does bar anyone

23   from barring in New York, that will sort of moot out

24   the injunction matter, but if it doesn't, then we

25   have a separate matter as to what's going on in New

Page 20

1    York, and who the Court can enjoin or cannot enjoin.

2              So I thank you all.  Be safe and stay

3    healthy, and I'll look for your orders on the 8th of

4    June as indicated.

5              MR. MALLIN:  Thank you, Your Honor.

6              MR. GLEASON:  Thank you, Your Honor.

7              (Thereupon, the hearing was concluded.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 21

1                        CERTIFICATION

2

3  STATE OF FLORIDA:

4  COUNTY  OF  DADE:

5

6              I, HELAYNE F. WILLS, Shorthand

7  Reporter and Notary Public in and for the State of

8  Florida at Large, do hereby certify that the

9  foregoing proceedings were taken by electronic

10 recording at the date and place as stated in the

11 caption hereto on Page 1; that the foregoing

12 computer-aided transcription is a true record of my

13 stenographic notes taken from said electronic

14 recording.

15              WITNESS my hand this 18th day of May,

16 2020.

17

18

19       _____

                    HELAYNE F. WILLS
20            Court Reporter and Notary Public
           In and For the State of Florida at Large
21         Commission No:  GG123092  Expires 8/2/2021

22

23

24

25